

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

DARRELL CANNON,               )
                                    )
    Plaintiff,               )
                                      )
    vs.               )

Former Chicago Police Lt. JON BURGE; former )
Police Sergeant JOHN BYRNE, former CPD )
detectives PETER DIGNAN; MICHAEL BOSCO, )
DANIEL MCWEENY; RAY BINKOWSKI; and )
RAY MADIGAN; THE ESTATE of former )
detective CHARLES GRUNHARD; States Attorney)
RICHARD DEVINE; former CPD Superintendent )
TERRY HILLARD; former Chicago Police )
Superintendent LEROY MARTIN; former OPS )
Director GAYLE SHINES; aide to the )
the Superintendent, THOMAS NEEDHAM; the )
CITY OF CHICAGO; COOK COUNTY, )
ILLINOIS; and the COOK COUNTY STATE'S )
ATTORNEY'S OFFICE, )
                                      )
    Defendants.               )

JUDGE AMY ST. EVE

Case No. MAGISTRATE JUDGE ......

# 05C 2192

JURY DEMAND

# FILED

APR 1 3 2005

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## COMPLAINT

### I. INTRODUCTION

1.    This is a civil rights action brought pursuant to 42 U.S.C. § 1983 et seq.; the Judicial Code, 28 U.S.C. §§ 1331 and 1343(a); the Constitution of the United States; and pendent jurisdiction, as codified in 28 U.S.C. § 1367(a).

2.    This Court has jurisdiction of the action pursuant to 28 U.S.C. § 1331. Venue is proper under 28 U.S.C. § 1391(b). The parties reside, or, at the time the events took place, formerly resided in this judicial district, and the events giving rise to the claims asserted herein occurred here as well.

## II.    PARTIES

3.    Plaintiff Darrell Cannon is an African-American man, and a citizen of the United States.

4.    Defendant Jon Burge was a duly appointed and sworn Chicago Police Lieutenant and the commanding officer of Chicago Police Area 2 Detective Violent Crimes Unit. Burge was the commanding officer of Defendants John Byrne, Peter Dignan, Charles Grunhard, Michael Bosco, Ray Binkowski, Ray Madigan, and Daniel McWeeny; engaged in the conduct complained of in the course and scope of his employment; and is sued in his individual capacity. Defendant Burge engaged in a pattern and practice of torture and brutality himself, and also supervised, encouraged, sanctioned, condoned and ratified brutality and torture by other detectives, including, but not limited to, the police officer Defendants named herein. In 1988, Burge was promoted to Commander of Area 3 Detective Division by Defendant Martin and held this assignment until 1991, when he was suspended and, ultimately, fired by the Chicago Police Department for the torture and abuse of Andrew Wilson.

5.    Defendant John Byrne was a duly appointed and sworn Chicago Police Sergeant in the Chicago Police Area 2 Detective Violent Crimes Unit. Byrne was the supervisor of Defendants Peter Dignan, Charles Grunhard, Michael Bosco, Ray Binkowsi, Raymond Madigan, and Daniel McWeeny; engaged in the conduct complained of in the course and scope of his employment; and is sued in his individual capacity. Defendant Byrne, like Defendant Burge, engaged in a pattern and practice of torture and brutality himself, and also supervised, encouraged, sanctioned, condoned and ratified brutality and torture by other detectives, including, but not limited to, the police officer Defendants named herein.

2

6.    Defendants Peter Dignan, Charles Grunhard, Michael Bosco, Ray Madigan, and Daniel McWeeny (referred to herein collectively, with Defendants Burge and Byrne, as "the Defendant Officers") were duly appointed and sworn Chicago Police detectives who were assigned to the Detective Division at Area 2 Violent Crimes Unit under Defendant Burge's command; engaged in a pattern and practice of torture and brutality themselves; and engaged in the conduct complained of in the course and scope of their employment. The Defendant Officers are sued in their individual capacities.

7.    From 1987 to 1992, Defendant Leroy Martin was the Superintendent of Police for the City of Chicago, and as such was responsible for the policies, practices, and customs complained of herein. In 1983, he was Commander of the Area 2 Detective Division and was thereby Defendant Burge's direct supervisor, as well as the command supervisor of Defendant Byrne, and the other Defendant officers. He engaged in the conduct complained of in the course and scope of his employment and is sued in his individual capacity.

8.    From 1998 to 2004, Defendant Terry Hillard was the Superintendent of Police for the City of Chicago, and as such was responsible for the policies, practices, and customs complained of herein. He engaged in the conduct complained of in the course and scope of his employment and is sued in his individual capacity.

9.    From 1998 to 2002, Defendant Thomas Needham was counsel to, and administrative assistant for, Superintendent Terry Hillard, who was his direct supervisor. He engaged in the conduct complained of in the course and scope of his employment and is sued in his individual capacity.

3

10.     From 1990 to 1998, Defendant Gayle Shines was the Director of the Office of Professional Standards of the Chicago Police Department. Her direct supervisor was the Chicago Police Superintendent. She engaged in the conduct complained of in the course and scope of her employment and is sued in her individual capacity.

11.     Defendant City of Chicago is an Illinois municipal corporation, and as such is responsible for the policies, practices and customs of the Chicago Police Department, its Office of Professional Standards, its Personnel Division, its Detective Division, and its Superintendent of Police, as well as those of the Mayor and his office, the Corporation Counsel and her Office, and the Chicago Police Board. The City of Chicago is and/or was the employer of each of the Defendant Officers and Police officials. The City of Chicago is responsible for the acts of the Defendant Officers and police officials while employed by the City of Chicago and while acting within the scope of their employment.

12.     Defendant Richard Devine has been the State's Attorney of Cook County from 1997 to the present, and as such is responsible for the policies, practices and customs of the State's Attorneys' Office. He engaged in the conduct complained of in the course and scope of his employment and is sued in his individual capacity.

13.     Defendant Cook County is a governmental entity within the State of Illinois, which consists in part of its Cook County State's Attorney's Office (hereinafter referred to as the "SAO"). At all times relevant to this action, Cook County and the Cook County State's Attorney's Office were the employers of Defendant Devine, and are necessary parties to this lawsuit.

14. At all times relevant to this action, each of the named defendants acted in the scope of employment, and under the color of the laws, regulations, and customs of the State of Illinois. Each defendant's actions constituted "state action" as defined under federal law.

## III. FACTUAL ALLEGATIONS

15. On or about October 26, 1983, Darrin Ross was shot and killed by A.D. McChristian in A.D.'s car, and the Area 2 Violent Crimes Unit, under the direct supervision and control of Defendants Burge and Byrne, and with the participation of Defendants Dignan, Grunhard, Bosco, Binkowski, Madigan, and McWeeny, commenced an investigation into this homicide.

16. In pursuit of this investigation, Defendants McWeeny and Madigan, at the direction and under the supervision of Defendants Burge and Byrne, threatened and coerced A.D. McChristian's brother, Tyrone McChristian, to falsely implicate Plaintiff as a possible accomplice in the homicide.

17. Despite the fact that the Defendant Officers knew that Tyrone McChristian's statement was false and coerced, Defendant McWeeny reduced this statement to an official police report. McChristian has subsequently recanted his statement.

18. In the early morning hours of November 2, 1983, Defendants Byrne, Dignan, Bosco and Binkowski, together with co-conspirator Area 2 detectives Edmund Leracz, Donald Degmon, and Francis Gitrich, went to an apartment on the south side of Chicago and arrested the Plaintiff without probable cause.

5

19. During the arrest, Defendant Byrne called Plaintiff's fiancé a "bitch" and a "motherfucker;" Defendants Byrne and Dignan pointed guns at her head; Defendant Dignan called Plaintiff a "nigger," placed a shotgun to Plaintiff's head and threatened to blow his head off; and Defendant Grunhard assaulted Plaintiff with a crowbar.

20. Plaintiff was then placed in a detective car with Defendants Dignan, Byrne and Grunhard and transported to the area of 80th and Phillips Streets. During the ride, Defendant Dignan said, "nigger, where's A..D.;" told Plaintiff that they had "scientific ways" of getting him to talk, and that he was in for "the hardest day of his life;" and hit Plaintiff on the knee with his flashlight.

21. Plaintiff was then taken to Area 2, placed in an interrogation room and interrogated about the Ross homicide by Defendants McWeeny and Grunhard. During this interrogation, McWeeny and Grunhard suggested inculpatory answers. Defendant Bosco entered the room with an electrical cattle prod in a bag, showed it to Plaintiff, said "nigger, you going to tell us where A.D.'s at;" Bosco then pointed the cattle prod at Plaintiff and said that he would "talk before the day was over."

22. Plaintiff was then transported through a viaduct or tunnel to a remote area near a body of water in the vicinity of 103rd and Torrence Streets by Defendants Byrne, Dignan and Grunhard. They were followed in another police car by Defendants Bosco and Binkowski, who blocked the entrance to the viaduct with their police vehicle.

23. Defendants Byrne, Dignan and Grunhard then took Plaintiff out of the car, questioned him about the Ross homicide and the whereabouts of A.D. McChristian.

24. When Plaintiff refused to answer, the Defendants performed a mock execution.

6

After appearing to place a shell in his shotgun, Dignan placed the shotgun in Plaintiff's mouth, and said "nigger, where's A.D.?" After Plaintiff did not reply, Grunhard said "shoot him,"and Dignan pulled the trigger, causing the gun to click rather than discharge. They then repeated this mock execution two more times.

25.    Defendants Byrne, Dignan and Grunhard then attempted to suspend Plaintiff, who was handcuffed behind his back, in the air by his handcuffs, while they questioned him and called him "nigger."

26.    Defendant Byrne then forced Plaintiff at gunpoint into the back seat of the police vehicle, and, while Plaintiff lay there handcuffed, Byrne pulled down Plaintiff's pants, again called him "nigger" and questioned him about the murder and the whereabouts of A.D. When Plaintiff again refused to cooperate, Byrne electric shocked him on the testicles and penis with the cattle prod.

27.    Byrne repeated the shocking over and over while Dignan restrained Plaintiff's feet, and they continued to interrogate Plaintiff about A. D.'s location and the Ross homicide.

28.    Finally, after Byrne called Plaintiff a "strong nigger," threatened to turn the cattle prod on "high," and shocked Plaintiff again, Plaintiff finally broke, agreed to say anything the Defendants wanted him to say, and answered their questions with information that they had previously supplied him during their questioning.

29.    Defendants Byrne, Dignan and Grunhard then transported Plaintiff to the auto pound in an attempt to obtain his identification of A.D.'s car and to further question Plaintiff about the homicide. Again, Defendants Bosco and Binkowski followed in their police auto.

7

30.    En route to the pound, Plaintiff was threatened with the cattle prod, so he

described A.D.'s car. At the pound, Plaintiff refused to answer further questions, and after

Defendants Byrne, Dignan and Grunhard forced him back into the police car, Byrne again

shocked him on the testicles while Dignan held his hand over Plaintiff's mouth to keep him from

screaming out.

31.    Plaintiff then gave a false and coerced statement to Defendant McWeeny,

repeating the information previously supplied to him by Defendants Byrne, Dignan, Grunhard

and McWeeny, and thereby falsely implicating himself as an accomplice to A.D. McChristain.

32.    Plaintiff then repeated this false and coerced statement to assistant state's attorney

Henry Simmons, in the presence of Defendant McWeeny, at Area 2.

33.    The interrogation and torture of Plaintiff in pursuit of a confession which was

constructed by the Defendant torturers and interrogators and fed to him after he was broken, was

part of a long-standing pattern and practice of similar acts of racially motivated torture, including

electric shock, mock executions and Russian roulette, suspensions, and baggings under the

supervision, and with the encouragement, participation and ratification of Defendant Burge.

Burge was present at Area 2 as the commanding officer of the Defendants on November 2, 1983,

was in charge of the Ross homicide investigation and the interrogation of the Plaintiff; and

thereby supervised, encouraged, participated in, failed to prevent, and ratified the actions of the

Defendants herein, as alleged more specifically above, as part of said pattern and practice.

34.    Additionally, Defendant Martin, as Commander of Area 2 on November 2, 1983,

was Burge's direct supervisor, was, on information and belief, present at Area 2 on November 2,

1983; was aware of the pattern and practice of torture at Area 2, which included at least six other

8

cases of torture from September of 1983 through November of 1983; and thereby encouraged, approved, failed to prevent, and/or ratified Plaintiff's torture and false and constructed confession.

35.     Plaintiff's false admissions, which were coerced, constructed and manufactured by the Defendant Officers, were memorialized in false official reports, and presented to prosecuting attorneys who relied upon and presented this false, coerced and manufactured evidence throughout Plaintiff's prosecution.

36.     Defendants Byrne, Dignan, Grunhard, Bosco, Binkowski, McWeeny, and conspirators Gitrich and Simmons also presented this fabricated, coerced and totally unreliable evidence at Plaintiff's motion to suppress hearings and trials through false and perjured testimony.

37.     Defendants Burge, Byrne, Dignan, Grunhard, McWeeny, Bosco, Binkowski and Martin, together with their co-conspirators, also suppressed from the prosecutors who prosecuted Plaintiff, from the judges and juries who heard his case, and from the prosecutors and judges who prosecuted and heard Plaintiff's appeals and motions to suppress, that the admissions they attributed to Plaintiff were false and totally unreliable, coerced through torture, constructed and manufactured by them, and were a product of a pattern and practice of torture and abuse at Area 2 which they commanded, supervised and implemented; additionally they suppressed, committed perjury about, and destroyed the physical implements of this pattern and practice of torture, including the cattle prod and shotgun used against Plaintiff, and the electric shock box, plastic bags, typewriter covers, and handguns used by them against numerous other victims of their pattern and practice of torture.

9

38. On November 7, 1983, the Office of Professional Standards of the Chicago Police Department ("the OPS") opened an "investigation" into Plaintiff's allegations of torture. The complaint was forwarded to Commander Martin. Neither Martin nor the OPS took any disciplinary action against any of the Defendant Officers, and nearly a year later, the OPS entered "not sustained" findings.

39. Prior to Plaintiff's criminal trial in 1984, the trial judge, relying on the police Defendants' and their co-conspirators' false and perjured testimony denying torture, denied Plaintiff's motion to suppress his coerced statement; this coerced and fabricated "confession" was presented by the prosecution as the only evidence against him at the 1984 trial and provided the basis for his conviction on an accountability theory for the murder of Darrin Ross. Absent the Defendants' coercion, torture and fabrication, Plaintiff would neither have been prosecuted for, nor convicted of, a crime he did not commit.

40. In November of 1984 and February of 1985, OPS Director David Fogel, secretly provided summaries of numerous OPS cases of electric shock torture, including those of Plaintiff and Andrew Wilson, who was electric shocked, bagged and otherwise tortured by Defendant Burge, to Police Superintendent Fred Rice, who took no action. Rice, Fogel, and successive Superintendents and OPS Directors, including Defendants Martin and Shines, and the Defendant City and its lawyers, suppressed these summaries and most of the files themselves from the Plaintiff and all other criminal and civil litigants until they were discovered in boxes produced for inspection by the City in August of 2004.

41. In 1987, Plaintiff filed a 42 U.S.C. § 1983 action alleging excessive use of force by Defendants Byrne, Dignan, and Grunhard for their torture and abuse on November 2, 1983.

Solely and exclusively because the Defendants successfully suppressed, destroyed, and covered up their torture of Plaintiff, numerous other cases of torture, and the implements of torture, Plaintiff accepted a nuisance value settlement of $3000, a tiny fraction of what the claim was truly worth.

42.     In 1990, after Plaintiff was convicted, and after the Plaintiff accepted the settlement, the OPS completed an investigation into allegations of torture of suspects, including Plaintiff, at Area 2. In a secret report which was approved by the Director of the OPS and forwarded to Defendant Superintendent Leroy Martin, the OPS found that from 1973 to 1985 there was a practice of systematic abuse of suspects held in custody at Area 2, including Plaintiff, and that certain Area 2 command personnel were aware of such abuse and condoned it. The OPS further found that this practice included psychological techniques and planned torture, and that Area 2 command personnel were aware of the systematic abuse and encouraged it either by actively participating in it or by failing to take any action to stop it. Command personnel at Area 2 during part or all of that time included Defendants Burge and Martin. This report also collected, identified, and detailed numerous cases of torture and abuse at Area 2.

43.     In another section of this Report, the OPS also found that Burge and two other Area 2 detectives tortured Andrew Wilson, *inter alia*, with electric shock, and recommended that Burge and two of his men be fired.

44.     Defendant Superintendent Martin and other command personnel delayed, obstructed, and otherwise undermined the OPS investigation, report, findings and conclusions set forth above, *inter alia*, by suppressing the findings that Wilson was tortured and by refusing to suspend, transfer or remove Burge either before, or for nearly a year after, the findings of the OPS

11

were first made known to them in November of 1990.

45.     Defendant Martin and other command personnel further delayed, obstructed, and otherwise undermined the OPS investigation, report, findings and conclusions set forth above, *inter alia*, by suppressing the findings that there was systematic abuse at Area 2, which implicated Defendants Martin, Burge, the Officer Defendants, and other Area 2 detectives. This suppression prevented Plaintiff from obtaining highly exculpatory evidence for use in his criminal proceedings and in civil litigation.

46.     This report and its findings were ordered publicly released by Federal Court order in February of 1992, and Defendant Martin, together with Mayor Richard M. Daley, publicly attempted to discredit and undermine the report and its findings as "unsubstantiated rumors," and did not discipline Defendants Byrne, Dignan, and Grunhard for their role in this pattern and practice of torture, or otherwise act to implement the Report's findings.

47.     As States Attorney of Cook County from 1981 through 1988, Richard M. Daley had specific notice of a pattern and practice of torture and abuse at Area 2 by Burge, Byrne, Dignan, and others, (including Plaintiff's and more than 50 other cases) and refused to prosecute Burge, Byrne, Dignan or any other Area 2 detective, despite being presented with specific evidence of torture by Police Superintendent Richard Brzeczek well before Plaintiff was tortured.

48.     Additionally, Defendant Martin, Defendant OPS Director Shines, and other command personnel, in violation of police regulations, refused to investigate numerous other allegations of police torture which were brought to their attention, including allegations of electric shock and abuse made by electric shock victim Melvin Jones against Defendants Burge, and McWeeny, despite the findings made in the Goldston Report, and other specific requests to do so.

49.     In January of 1992, Defendant Martin and the City judicially admitted before the Police Board that Burge and others under his command engaged in an "astounding pattern and plan" of torture, particularly including the use of electric shock.

50.     In February of 1993, the Chicago Police Board fired Jon Burge for torturing Andrew Wilson, *inter alia*, with electric shock. These findings became final in December of 1995.

51.     In September of 1988, Defendant Devine, together with law partner William Kunkle, and their law firm, were retained by the Defendant City of Chicago to represent Defendant Jon Burge and several Area 2 detectives, including John Yucaitis and Patrick O'Hara, in the civil rights lawsuit brought against them and the City of Chicago by Area 2 torture victim Andrew Wilson.

52.     For the next eight years, Defendant Devine, Mr. Kunkle, and their law firm continued to represent Defendant Burge, John Yucaitis, Patrick O'Hara and the other Area 2 defendants in the *Wilson* civil cases, as well as in the Police Board Proceedings against Burge, Yucaitis and O'Hara, having been retained by the Fraternal Order of Police (FOP). Additionally, Defendant Devine, Mr. Kunkle and their law firm were retained by the Defendant City of Chicago to represent Defendants Burge, Byrne and Dignan in several other civil rights torture cases where a pattern and practice of torture was alleged. As a result of this representation, Defendant Devine, Mr. Kunkle and their law firm received over one million dollars in attorney's fees from the City of Chicago and the FOP.

53.     From 1988 to 1996, Defendant Devine, Mr. Kunkle, and their law firm were informed of a wealth of compelling evidence that their clients, including Burge, Byrne and

13

Dignan, were centrally involved in a pattern and practice of torturing suspects, including Plaintiff, at Area 2, and Devine, Kunkle, and their co-counsel, together with Defendants Burge, Byrne, Dignan, and Area 2 detectives Yucaitis and O'Hara, made numerous litigation decisions designed to protect Burge, Yucaitis, and O'Hara from criminal, civil and administrative liability in the face of that evidence.

54.     In 1997, Defendant Devine became the State's Attorney of Cook County.  Acting with a clear conflict of interest and acting under the color of his authority of State's Attorney, Defendant Devine has continued, from 1997 to the present, to protect the interests of his Area 2 clients, particularly Defendant Burge, and to cover up their central role in the pattern and practice of torture, *inter alia,* by:

    a.    making false public statements in which he discredited evidence of torture committed by his clients and other Area 2 Defendants, including evidence presented by Plaintiff and other Area 2 victims, whereby they sought suppression of their confessions, new suppression hearings, new trials, new sentences, pardons and/or clemency on the basis that false confessions were tortured from them;

    b.    making false statements to public officials in which he discredited the evidence of torture committed by his clients and other Area 2 Defendants;

    c.    refusing to investigate the allegations that his clients and other Area 2 and Area 3 detectives were central actors in a pattern and practice of torture and abuse which included the torture of Plaintiff, and obstructing all attempts to so investigate;

    d.    suppressing evidence that further established that his clients, and other Area 2 and Area 3 detectives were central actors in the pattern and practice of torture which

included Plaintiff's torture; and

e.     otherwise using his influence and decision-making power as State's Attorney of
       Cook County to continue the wrongful conviction and imprisonment of Plaintiff and
       other torture victims.

55.     In 1993, the OPS reopened investigations into approximately 10 Area 2 torture
cases, including Plaintiff's. After an exhaustive re-investigation, which uncovered substantial new
evidence in support of the allegations, the OPS investigator sustained numerous allegations that
Byrne, Dignan and Grunhard racially abused and tortured Plaintiff with the cattle prod at the
torture site, and at the auto pound, and subjected him to a mock execution and suspension by his
handcuffs.

56.     The OPS also entered sustained findings of torture and abuse against Byrne and
Dignan in five other re-opened cases, including that of death row inmate Stanley Howard.

57.     From 1993 until 1998, when she left office, Defendant OPS Director Gayle Shines
suppressed these findings and the evidence which supported them by secreting the files in her
personal office.

58.     In 1998, Defendants Hillard and Needham, with full knowledge that Defendants
Burge, Byrne and Dignan, the other Defendant Officers, and other Area 2 and Area 3 detectives
participated in a pattern and practice of torture and abuse of suspects, including Plaintiff, violated
police regulations and obstructed justice by overturning the OPS sustained findings in Plaintiff's
and the other five re-opened cases; by refusing to investigate other torture victims' claims that they
had been tortured; by refusing to investigate OPS Director Gayle Shines' suppression of evidence,
and by suppressing these OPS files and findings from Plaintiff and other criminal defendants.

15

59.     In 1997, the Illinois Appellate Court ordered that Plaintiff receive a new motion to suppress hearing at which he be permitted to present all the newly discovered evidence of torture and abuse which had been uncovered since his 1984 motion to suppress hearing.

60.     At this remand hearing, which commenced in 1999, the Plaintiff presented a wealth of newly discovered evidence of torture and abuse. The State's Attorneys' Office, rather than to again elicit the knowingly false and perjured testimony of the Defendant Officers, dismissed Plaintiff's case on April 14, 2004.

61.     On January 10, 2003, Illinois Governor George Ryan granted four Illinois death row inmates pardons on the basis of innocence. In granting Burge death row torture victims Madison Hobley, Aaron Patterson, Leroy Orange, and Stanley Howard innocence pardons, the Governor found that:

> The category of horrors was hard to believe. If I hadn't reviewed the cases myself, I wouldn't believe it. We have evidence from four men, who did not know each other, all getting beaten and tortured and convicted on the basis of the confessions they allegedly provided. They are perfect examples of what is so terribly broken about our system.

62.     In August and September of 2004, Defendants Burge, Byrne, Dignan, Bosco, McWeeny and Madigan invoked the Fifth Amendment as to all questions concerning the torture of Plaintiff, the coercion, construction and manufacture of Plaintiff's false confession, the coercion of Tyrone McChristian, and the torture of numerous other victims as a part of a pattern and practice of torture and abuse.

63.     Plaintiff spent twenty one years in prison for a crime he did not commit. This time was emotionally, physically, and psychologically grueling and Plaintiff suffered from constant fear and anxiety, deep depression, despair, rage, boredom and loneliness. Plaintiff suffered from the

16

loss of sustained contact with his children. He continues to live under the effect of his isolation, incarceration, and depression. Additionally, Plaintiff suffered and continues to suffer, egregious pain and suffering, humiliation, constant fear, anxiety, deep depression, despair, rage, and post traumatic stress disorder from his torture and abuse.

64.     Defendants Burge, Byrne, Dignan, Grunhard, McWeeny, Bosco, Binkowski Madigan, Martin, Devine, Shines, Hillard, and Needham, acting jointly and with other police and prosecutorial investigative, supervisory, and command personnel, together and under color of law, reached an understanding, engaged in a course of conduct, engaged in a joint action and otherwise conspired among and between themselves to deprive Plaintiff of his constitutional rights, and did deprive Plaintiff of those rights, including his right to be free from unreasonable arrest and seizure, from wrongful confinement and imprisonment, from involuntary incrimination, from interrogation techniques which "shock the conscience," and his right to access to the Courts and to a fair and impartial trial, as protected by the First, Fourth, Fifth, Sixth Eighth, and Fourteenth Amendments to the United States Constitution. Because these actions were done with the knowledge and purpose of depriving Plaintiff, who is African-American, of the equal protection of the laws and/or of equal privileges and immunities under the law, and with racial animus toward the Plaintiff, they also deprived Plaintiff of his right to equal protection of the laws under the Fourteenth Amendment, and 42 U.S.C. §§ 1983 and 1985.

65.     In furtherance of this conspiracy or conspiracies, Defendants Burge, Byrne, Dignan, Grunhard, McWeeny, Bosco, Binkowski, Madigan, Martin, Devine, Shines, Hillard, and Needham, together with their co-conspirators, each committed one or more of overt acts set forth above, including, but not limited to: the wrongful arrest, imprisonment, charging and prosecution

17

of Plaintiff and other torture victims; the fabrication and coercion of false and totally unreliable

inculpatory evidence against Plaintiff and other torture victims; the coercion and manufacture of

false and totally unreliable evidence from Plaintiff; the failure to stop the coercive interrogations of

Plaintiff, despite having knowledge that he was being tortured and abused; the unconstitutional

torture and coercion of Plaintiff and other torture victims in order to compel them to make false

inculpatory statements against themselves and/or others; the coercion of a false statement from

Tyrone McChristian; the repeated deception of prosecuting attorneys and judges, by, *inter alia,*

making knowing misstatements and the presentation of this knowingly false and incomplete

evidence to prosecutors and judges; the giving of false testimony and the filing of false and

incomplete statements and reports; the suppression of favorable, exculpatory evidence; the failure

to come forward with a truthful account of the events; the refusal to investigate and the subversion

and quashing of good faith investigations and findings; the abuse of public office and the

exploitation of a blatant conflict of interest to cover-up the acts of torture and abuse; and the other

acts set forth above.

      66.    This conspiracy or conspiracies, joint actions and overt acts continue to this date.

They have caused and continue to cause Plaintiff's constitutional rights to be violated and the

injuries, pain, suffering, fear, mental anguish, detention, imprisonment, humiliation, and loss of

freedom and companionship, as set forth more fully above and below.

**COUNT I**
**(42 U.S.C. § 1983 Claim for Deprivation of Right to Fair Trial and for Wrongful Conviction)**

      67.    Plaintiff re-alleges paragraphs 1 through 66.

18

68.     Defendants Burge, Burge, Byrne, Dignan, Grunhard, McWeeny, Bosco, Binkowski

Madigan, and Martin, individually, jointly, and in conspiracy, caused the wrongful charging,

prosecution, and conviction of Plaintiff. These same Defendants, together with Defendants

Martin, Devine, Shines, Hillard, and Needham, individually, jointly, and in conspiracy, caused the

continuation of that wrongful conviction, by coercing, constructing and/or fabricating the false and

totally unreliable statements which formed the basis for Plaintiff's charging, prosecution and

conviction; by withholding from the prosecutors, judges and defense attorneys involved in

Plaintiff's prosecution the fact that these admissions were false, totally unreliable, constructed, and

coerced; by suppressing additional exculpatory and exonerating torture findings and evidence, as

well as other exculpatory evidence; by giving a false and incomplete version of events to

prosecutors; by writing false reports and giving false testimony; by improperly influencing the

judges hearing Plaintiff's case, *inter alia*, by obstructing investigations which would have led to

discovery of further exculpatory evidence; and by the additional wrongdoing set forth above,

thereby unconstitutionally depriving Plaintiff of his liberty and violating his right to a fair and

impartial trial and not to be wrongfully convicted, as guaranteed by the Fourteenth Amendment to

the U.S. Constitution.

69.     The actions of Defendants Burge, Byrne, Dignan, Grunhard, McWeeny, Bosco,

Binkowski, Madigan, Martin, Devine, Shines, Hillard, and Needham, in depriving Plaintiff of his

right to a fair trial and not to be wrongfully convicted, were the direct and proximate cause of the

injuries to Plaintiff which are set forth above.

WHEREFORE, Plaintiff demands judgment against Defendants Burge, Byrne, Dignan,

Grunhard, McWeeny, Bosco, Binkowski, Madigan, Martin, Devine, Shines, Hillard, and

Needham, for substantial compensatory damages, and, because these Defendants acted

maliciously, willfully, wantonly, and/or with reckless disregard for Plaintiff's constitutional rights,

for substantial punitive damages, plus the costs of this action, attorneys' fees and such other relief

as this Court deems equitable and just.

## COUNT II
### (42 U.S.C. § 1983 Claim for False Arrest and Imprisonment)

70.     Plaintiff re-alleges paragraphs 1 through 69.

71.     The actions of Defendants Burge, Byrne, Dignan, Grunhard, McWeeny, Bosco,

Binkowski, Madigan, and Martin, individually, jointly, and in conspiracy, in falsely arresting and

imprisoning Plaintiff, and of these same Defendants, together with Defendants Devine, Shines,

Hillard, and Needham, individually, jointly, and in conspiracy, in continuing Plaintiff's

imprisonment for twenty-one years, without probable cause, violated Plaintiff's Fourth and

Fourteenth Amendment rights to be free from unreasonable seizures, and deprived Plaintiff of

liberty without due process` of law.

72.     The actions of the Defendants in falsely arresting and imprisoning Plaintiff,

continuing his false arrest and imprisonment, and covering up their own misconduct were the

direct and proximate cause of Plaintiff's injuries and damages as more fully set forth above.

WHEREFORE, Plaintiff demands judgment against Defendants Burge, Byrne, Dignan,

Grunhard, McWeeny, Bosco, Binkowski, Madigan, Martin, Devine, Shines, Hillard, and

Needham, for substantial compensatory damages, and, because these Defendants acted

maliciously, willfully, wantonly, and/or with reckless disregard for Plaintiff's constitutional rights,

20

for substantial punitive damages, plus the costs of this action, attorneys' fees and such other relief as this Court deems equitable and just.

## COUNT III
### (42 U.S.C. § 1983 Claim for Torture and Physical Abuse)

73.    Plaintiff re-alleges paragraphs 1 through 72.

74.    The actions of Defendants Burge, Byrne, Dignan, Grunhard, McWeeny, Bosco, and Binkowski, in torturing and physically abusing Plaintiff, and in threatening him with additional torture and physical abuse, individually, jointly and in conspiracy violated Plaintiff's Fourth and Fourteenth Amendment rights to be free from unreasonable seizures.

75.    Defendants Burge, Byrne, Dignan, Grunhard, McWeeny, Bosco, Binkowski, and Martin were aware of the torture and physical abuse of the Plaintiff, and participated in it by allowing the torture and abuse to continue while having the obligation and duty to stop it, and by failing to report the abuse to superiors in the Police Department and the State's Attorney's Office.

76.    The actions of the Defendants, individually, jointly and in conspiracy, in torturing and physically abusing the Plaintiff, threatening to inflict further torture and physical abuse, and/or failing to stop the torture and abuse while having the opportunity and duty to do so, were the direct and proximate cause of Plaintiff's injuries and damages as more fully set forth above.

WHEREFORE, Plaintiff demands judgment against Defendants Burge, Byrne, Dignan, Grunhard, McWeeny, Bosco, Binkowski, and Martin for compensatory damages, and, because these Defendants acted maliciously, willfully, wantonly, and/or with reckless disregard for Plaintiff's constitutional rights, for punitive damages, plus the costs of this action, attorneys' fees and such other relief as this Court deems equitable and just.

21

## COUNT IV
### (42 U.S.C. § 1983 Claim for Coercive Interrogation)

77.    Plaintiff re-alleges paragraphs 1 through 75.

78.    The actions of Defendants Burge, Byrne, Dignan, Grunhard, McWeeny, Bosco, and Binkowski, individually, jointly, and in conspiracy, in coercively interrogating Plaintiff, and in using torture techniques that "shock the conscience" during those interrogations, resulted in false, coerced, and fabricated admissions, and violated Plaintiff's Fifth and Fourteenth Amendment rights to be free from compulsory self-incrimination and deprivation of liberty without due process of law.

79.    The actions of these Defendants in using torture and other coercive techniques to interrogate Plaintiff, and/or condoning and permitting the use of those techniques, were the direct and proximate cause of Plaintiff's injuries and damages as more fully set forth above.

WHEREFORE, Plaintiff demands judgment against Defendants Burge, Byrne, Dignan, Grunhard, McWeeny, Bosco, and Binkowski for substantial compensatory damages, and, because these Defendants acted maliciously, willfully, wantonly, and/or with reckless disregard for Plaintiff's constitutional rights, for substantial punitive damages, plus the costs of this action, attorneys' fees and such other relief as this Court deems equitable and just.

## COUNT V
### (42 U.S.C. § 1983 Due Process Claim for Deprivation of Access to Courts)

80.    Plaintiff re-alleges paragraphs 1 through 79.

81.    Defendants Burge, Byrne, Dignan, Grunhard, McWeeny, Bosco, Binkowski, Madigan, and Martin, individually, jointly, and in conspiracy, by their wrongful charging, prosecution, conviction, and imprisonment, and (together with Defendants Devine, Shines, Hillard,

and Needham) by their obstruction of justice and suppression of evidence favorable to and

exonerating of the Plaintiff, as set forth above, violated Plaintiff's right to access to the courts. As

a result of Defendants' actions, Plaintiff has lost his Fourth, Fifth, and Fourteenth Amendment

claims of torture and coercive interrogation against some or all of the Defendants by accepting a

settlement of his 42 U.S.C. § 1983 claim for a tiny fraction of what his claim is actually worth now

that the suppressed evidence, has been uncovered, revealed , discovered and established. This

constituted a violation of Plaintiff's Fifth and Fourteenth Amendment rights to due process of law

and access to the courts.

WHEREFORE, Plaintiff demands judgment against Burge, Byrne, Dignan, Grunhard,

McWeeny, Bosco, Binkowski, Madigan, Martin, Devine, Shines, Hillard, and Needham for

substantial and fully compensatory and punitive damages, for his torture and coercive interrogation

to the extent said claims are deemed lost due to his acceptance of a nuisance  settlement before the

newly discovered evidence was revealed and obtained, plus an additional substantial compensatory

and punitive award against all these same Defendants, for violation of the right to access itself,

plus the costs of this action, attorneys' fees and such other relief as this Court deems equitable.

### COUNT VI
**(42 U.S.C. § 1983 *Monell* Policy Claim Against City of Chicago)**

82.     Plaintiff re-alleges paragraphs 1 through 81.

83.     The actions of Defendants Burge, Byrne, Dignan, Grunhard, McWeeny, Bosco,

Binkowski, Madigan, Martin, Devine, Shines, Hillard, and Needham, as alleged above, were done

pursuant to one or more interrelated *de facto* policies, practices and/or customs of the Defendant

City of Chicago, its Police Department, its OPS and Internal Affairs Division (IAD), its Personnel

23

Division, and/or its Superintendents, as well as its Police Board, the Mayor and his Office, and the Corporation Counsel and her Office.

84.     At all times material to this complaint, Defendant City of Chicago and its Police Department,

Superintendents, OPS, IAD, Personnel Division, and/or Detective Division, as well as the Mayor and his Office, the Corporation Counsel and her Office, and/or Police Board had interrelated *de facto* policies, practices, and customs which included, *inter alia*:

a)     conducting physically, psychologically or otherwise illegally or improperly coercive interrogations of witnesses, suspects and arrestees in order to obtain confessions and wrongful convictions, particularly the use of torture techniques under the command and supervision of Defendant Burge at Area 2, and later at Area 3;

b)     the filing of false reports, and giving false statements and testimony about said interrogations and confessions and fabricating or constructing parts or all of said confessions, suppressing evidence concerning said interrogations and confessions, pursuing and obtaining wrongful prosecutions and false imprisonments on the basis of confessions obtained during said interrogations, denying suspects their right to full and fair access to the courts, and otherwise covering up the true nature of said interrogations and confessions particularly in circumstances where torture techniques were used by Area 2 and Area 3 detectives under the command and supervision, and with the active participation of, Defendant Burge;

24

c) the failure to videotape the interrogation or questioning of suspects, arrestees, and witnesses, particularly in the circumstances set forth in a-b above;

d) the failure to properly train, supervise, discipline, transfer, monitor, counsel and/or otherwise control police officers, particularly those who are repeatedly accused of torture and related abuse of suspects; of false arrests, wrongful imprisonments, malicious prosecutions and wrongful convictions; of making false reports and statements; and/or of physically, psychologically or otherwise illegally or improperly coercive questioning or interrogation of witnesses, suspects and arrestees, particularly persons who were tortured and or physically and/or psychologically abused during questioning. This failure to properly train, supervise, discipline, transfer, monitor, counsel and/or otherwise control includes the "repeater" Defendants Burge, Burge, Byrne, Dignan, Grunhard, McWeeny, Bosco, Binkowski, Madigan, and all the other Area 2 and 3 detectives who were repeatedly accused of torturing and physically abusing suspects at Area 2 and Area 3;

e) the police code of silence, specifically in cases where officers engaged in the violations articulated in paragraphs a-d above (i.e., police torture and other unconstitutional and coercive interrogations at Area 2 and Area 3 under the command and supervision of Defendant Burge) whereby police officers refused to report or otherwise covered-up instances of police misconduct, and/or fabricated suppressed and destroyed evidence of which they were aware, despite their obligation under the law and police regulations to report. Said code of silence also includes police officers either remaining silent or giving false and misleading

25

information during official investigations in order to protect themselves or fellow

officers from internal discipline, civil liability, or criminal charges, and perjuring

themselves in criminal cases where they and their fellow officers have tortured or

otherwise coercively or otherwise unconstitutionally interrogated a suspect, arrestee

or witness, or falsely arrested, imprisoned and prosecuted a criminal defendant,

particularly in cases where torture techniques under the command and supervision

of Defendant Burge at Area 2, and later at Area 3, have been employed; and

f)     covering up and suppressing evidence and findings, refusing to properly investigate,

arrest and charge, continuing to finance Defendant Burge's defense and otherwise

attempting to both publicly and judicially defend his actions long after repeatedly

acknowledging that he had committed repeated acts of torture, and otherwise

obstructing justice in police torture cases, particularly those that arose at Area 2 and

Area 3 under the supervision, and with the participation of, Defendant Burge.

85.     The pattern and practice of torture and abuse at Area 2, the cover-up of that abuse

and the wrongful prosecutions and convictions which resulted therefrom, were well known within

Area 2 both well before and after Plaintiff was tortured and wrongfully convicted, including by the

command officers at Area 2, which included Defendants Burge and  Martin, and Burge's

successor, Phil Cline, as well as to the successive Police Superintendents, including Defendants

Martin, Hillard, and Cline, and to the successive Directors of OPS, including Defendant Shines,

the Chiefs of Detectives, including Defendant Hillard, and to other policy making, command, and

supervisory City and police personnel, who participated in the cover-up and suppression of

evidence, the wrongful prosecution and conviction of the Plaintiff and other torture victims, and

the denial of their full and fair access to the courts *inter alia*, in the manner set forth in this complaint.

86.     Said interrelated policies, practices and customs, as set forth above, both individually and together, were maintained and implemented with deliberate indifference; encouraged, *inter alia*, the coercing of statements from suspects, witnesses and arrestees, by torture and related abusive tactics and techniques, the construction and fabrication of confessions and other evidence, the suppression of evidence of torture and other exculpatory evidence, the intimidation of witnesses, the making of false statements and reports, the giving of false testimony, and the pursuit and continuation of wrongful convictions and false arrests and imprisonments; and were, separately and together, a direct and proximate cause of the unconstitutional acts and perjury committed by the named Defendants and their co-conspirators, and the injuries suffered by the Plaintiff.

87.     Additionally, the City of Chicago's said failure to properly train, discipline, monitor, control, assign,

transfer, supervise, and counsel Defendants Burge, Byrne, Dignan, Grunhard, McWeeny, Bosco, Binkowski, Madigan, Martin, Devine, Shines, Hillard, and Needham was also done with deliberate indifference and likewise acted as a direct and proximate cause of the injuries to Plaintiff.

88.     Additionally, and/or alternatively, the involvement in, and ratification of, the unconstitutional actions set forth above by Chicago police policymakers, including, but not limited to, Mayor Richard M. Daley, Defendants Leroy Martin and Terry Hillard, and their direct subordinates, including, but not limited to, Defendants Shines and Needham, establish that said

27

constitutional violations were directly and proximately caused by the City of Chicago and its
Police Department.

WHEREFORE, Plaintiff demands judgment against Defendant City of Chicago for
substantial compensatory damages, plus costs and attorneys' fees and whatever additional relief
this Court finds equitable and just.

**COUNT VII**
**(State Law Claim for False Arrest and Imprisonment)**

89.     Plaintiff re-alleges paragraphs 1 through 88.

90.     The arrest and imprisonment of Plaintiff, without probable cause, individually,
jointly, and in conspiracy by Defendants Burge, Byrne, Dignan, Grunhard, McWeeny, Bosco,
Binkowski, Madigan, and Martin, and its continuation by these Defendants, together with
Defendants Devine, Shines, Hillard, and Needham, individually, jointly, and in conspiracy,
constituted the torts of false arrest and imprisonment under Illinois law.

91.     Defendants' actions in arresting and imprisoning Plaintiff were willful and wanton.

WHEREFORE, Plaintiff demands compensatory damages against Defendants Burge,
Byrne, Dignan, Grunhard, McWeeny, Bosco, Binkowski, Madigan, Martin, Devine, Shines,
Hillard, and Needham and, because these Defendants acted in a malicious, willful and/or wanton
manner toward Plaintiff, punitive damages, and such other and additional relief as this Court
deems just and equitable.

**COUNT VIII**
**(State Law Claim for Malicious Prosecution)**

92.     Plaintiff re-alleges paragraphs 1 through 91.

93.     Defendants Burge, Byrne, Dignan, Grunhard, McWeeny, Bosco, Binkowski,

28

Madigan, and Martin, individually, jointly, and in conspiracy, initiated a malicious prosecution without probable cause against Plaintiff, and these same Defendants, together with Defendants Devine, Shines, Hillard, and Needham, individually, jointly, and in conspiracy, continued said prosecution, again without probable cause. Said prosecution was ultimately terminated in Plaintiff's favor. The Defendants' actions were done in a willful and wanton manner, and directly and proximately caused the injury and damage to Plaintiff set forth above.

WHEREFORE, Plaintiff demands actual or compensatory damages against Defendants Burge, Byrne, Dignan, Grunhard, McWeeny, Bosco, Binkowski, Madigan, Martin, Devine, Shines, Hillard, and Needham and, because these Defendants acted in a malicious, willful and/or wanton manner toward Plaintiff, punitive damages, and such other and additional relief as this Court deems equitable and just.

## COUNT IX
### (State Law Claim for Intentional Infliction of Emotional Distress)

94.     Plaintiff re-alleges paragraphs 1 through 93.

95.     Defendants Burge, Byrne, Dignan, Grunhard, McWeeny, Bosco, Binkowski, Madigan, Martin, Devine, Shines, Hillard, and Needham, individually, jointly, and in conspiracy, by, *inter alia*, torturing a false confession from Plaintiff and/or by failing to stop said torture, by constructing and fabricating the details of said confession, and by procuring Plaintiff's prosecution, conviction, and life sentence for a murder he did not commit by means of said false confession, engaged in extreme and outrageous conduct. Additionally these same Defendants, together with Defendants Devine, Hillard, Shines, Martin and Needham, individually, jointly, and in conspiracy, by fabricating, coercing, and suppressing other evidence, by continuing Plaintiff's

29

false imprisonment after procuring his wrongful conviction, by refusing to investigate, and by otherwise abusing Plaintiff, engaged in additional extreme and outrageous conduct.

96.     Defendants Burge, Byrne, Dignan, Grunhard, McWeeny, Bosco, Binkowski, Madigan, Martin, Devine, Shines, Hillard, and Needham intended, by subjecting Plaintiff to such humiliating, degrading conduct, to inflict severe emotional distress on Plaintiff, and knew that their conduct would cause Plaintiff and his family severe emotional distress.

97.     As a direct and proximate result of Defendants' outrageous conduct, Plaintiff was injured, and has experienced, and continues to experience, severe emotional distress, including nightmares, sleep disruption, symptoms of post traumatic stress disorder, anxiety, depression, and inability to focus or concentrate.

WHEREFORE, Plaintiff demands judgment against Defendants Burge, Byrne, Dignan, Grunhard, McWeeny, Bosco, Binkowski, Madigan, Martin, Devine, Shines, Hillard, and Needham, for compensatory damages and, because these Defendants acted in a malicious, willful and/or wanton manner toward Plaintiff, for punitive damages, plus the costs of this action, and such other relief as this Court deems equitable and just.

## COUNT X
### (State Claim for Conspiracy)

98.     Plaintiff re-alleges paragraphs 1 through 97.

99.     Defendants Burge, Byrne, Dignan, Grunhard, McWeeny, Bosco, Binkowski, Madigan, Martin, Devine, Shines, Hillard, and Needham, with other unsued co-conspirators, including police and prosecutorial investigative, supervisory, and command personnel, together reached an understanding, engaged in a course of conduct, and otherwise jointly acted and/or

conspired among and between themselves to falsely imprison and/or to continue said imprisonment, to maliciously prosecute and/or continue said prosecution, and to intentionally inflict severe emotional distress on Plaintiff.

100. In furtherance of this conspiracy or conspiracies, the Defendants named above, together with their unsued co-conspirators, committed the overt acts set forth above, including, but not limited to, those set forth in paragraph 65 above.

101. Said conspirac(ies) and overt acts were and are continuing in nature.

102. Defendants' and their co-conspirators' overt acts, as set forth above, which were committed jointly and/or while conspiring together to falsely imprison, maliciously prosecute, and intentionally inflict emotional distress on the Plaintiff, constitute the tort of conspiracy as set forth above.

WHEREFORE Plaintiff demands compensatory damages, jointly and severally from Defendants Burge, Byrne, Dignan, Grunhard, McWeeny, Bosco, Binkowski, Madigan, Martin, Devine, Shines, Hillard, and Needham, and, because these Defendants acted in a malicious, willful and/or wanton manner toward Plaintiff, for punitive damages, plus the costs of this action and whatever additional relief this Court deems equitable and just.

### COUNT XI
#### (State Law Respondeat Superior Claim)

103. Plaintiff re-alleges paragraphs 1-102

104. Defendants Burge, Byrne, Dignan, Grunhard, McWeeny, Bosco, Binkowski, Madigan, Martin, Shines, Hillard, and Needham, were, at all times material to this complaint, employees of the Defendant City of Chicago, were acting within the scope of their employment,

31

and their acts which violated state law are directly chargeable to the Defendant City under state law pursuant to *respondeat superior*.

WHEREFORE, Plaintiff demands judgment against the City of Chicago for any and all compensatory damages awarded on Plaintiff's state law claims, plus the costs of this action and whatever additional relief this Court deems equitable and just.

**COUNT XII**
**(745 ILCS 10/9-102 and Common Law Claims Against the City, County and SAO)**

105.    Plaintiff re-alleges paragraphs 1 through 104.

106.    Defendant City of Chicago was the employer of Defendants Burge, Byrne, Dignan, Grunhard, McWeeny, Bosco, Binkowski, Madigan, Martin, Shines, Hillard, and Needham at all times relevant and material to this complaint.

107.    These Defendants committed the acts alleged above under color of law and in the scope of their employment as employees of the City of Chicago.

108.    Defendant Cook County and its State's Attorneys' Office was the employer of Defendant Devine at all times relevant and material to this complaint; additionally and/or alternatively, said County is responsible for any judgment entered against Defendant Devine, and is therefore a necessary party hereto.

109.    Defendant Devine committed the acts alleged above under color of law and in the scope of their employment as an employee of Cook County and its State's Attorneys' Office.

WHEREFORE, Plaintiff, pursuant to 745 ILCS § 10/9-102, and otherwise pursuant to law, demands judgment against the Defendants City of Chicago, Cook County and its State's Attorneys' Office, in the amounts awarded to Plaintiff against the individual Defendants as

32

damages, attorneys' fees, costs and interest, and for whatever additional relief this Court deems equitable and just.

Dated: April 13, 2005

Respectfully submitted,

One of Plaintiff's Attorneys

G. Flint Taylor
Joey L. Mogul
People's Law Office
1180 N. Milwaukee
Chicago, Illinois 60622
(773) 235-0070

Locke E. Bowman
MacArthur Justice Center
University of Chicago Law School
1111 E. 60th Street
Chicago, Illlinoi 60637
(312) 702-9622

Attorneys for Plaintiff

**Plaintiff demands trial by jury on all counts.**