IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DARRELL CANNON,                      )
                                     )
            Plaintiff,               )        No. 05 C 2192
                                     )
    v.                               )
                                     )
FORMER CHICAGO POLICE LT.            )
JON BURGE, *et al.*,                 )
                                     )
            Defendants.              )

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

        Plaintiff Darrell Canon asserts twelve causes of action against multiple Defendants

alleging various constitutional and state law violations resulting from or related to the torture he

allegedly endured on November 2, 1983. Cannon brings this suit against Jon Burge, John Byrne,

Peter Dignan, Michael Bosco, Ray Binkowski, Ray Madigan, Daniel McWeeny, Leroy Martin,

Terry Hillard, Thomas Needham, Gayle Shines, the City of Chicago (collectively, the "City

Defendants")[1], Richard Devine, the Cook County State's Attorney's Office, and Cook County

(collectively, the "County Defendants"). Plaintiff asserts the following six civil rights violations

under 42 U.S.C. § 1983: deprivation of the right to a fair trial and wrongful conviction (Count I),

false arrest and false imprisonment (Count II), torture and physical abuse (Count III), coercive

interrogation (Count IV), due process violation for deprivation of access to courts (Count V), and

_____

        [1] Canon also sues the Estate of Charles Grunhard. Charles Grunhard was a Chicago
Police Detective assigned to the Detective Division at Area 2 Violent Crimes Unit. (R. 1-1;
Compl. at ¶ 6.) His commanding officer was Jon Burge and his supervisor was John Byrne. (*Id.*
at ¶¶ 4-5.) The Estate of Charles Grunhard, however, does not join the City Defendants' motion
to dismiss. Accordingly, the Court does not refer to the Estate of Charles Grunhard as one of the
City Defendants.

a *Monell* policy claim (Count VI). Plaintiff also asserts the following six state law violations: false arrest and imprisonment (Count VII), malicious prosecution (Count VIII), intentional infliction of emotional distress (Count IX), conspiracy (Count X), *respondeat superior* (Count XI), and an indemnification claim pursuant to 745 ILCS 10/9-102 (West 2005) (Count XII). The City and County Defendants both move to dismiss the complaint Canon filed on April 13, 2005 (the "Complaint"). For the reasons set forth below, the Court grants in part and denies in part the City Defendants' motion to dismiss, and the Court grants in part and denies in part the County Defendants' motion to dismiss.

## BACKGROUND

### I.     The Parties

#### A.     Plaintiff

Plaintiff Darrell Cannon ("Plaintiff") is a United States citizen. (R. 1-1; Compl. at ¶ 3.)

#### B.     The City Defendants

Defendant John Burge ("Burge") was a Chicago Police Lieutenant and the commanding officer of the Chicago Police Area 2 Detective Violent Crimes Unit. (*Id*. at ¶ 4.) Burge served as the commanding officer of Defendants John Byrne, Peter Dignan, Charles Grunhard, Michael Bosco, Ray Binkowski, Ray Madigan, and Daniel McWeeny. (*Id*.) In 1988, Leroy Martin promoted Burge to the position of Commander of Area 3 Detective Division. (*Id*.) According to Plaintiff, Burge held this position until 1991, when the Chicago Police Department fired him for the torture and abuse of Andrew Wilson. (*Id*.) Plaintiff alleges that Burge both "engaged in a pattern and practice of torture and brutality himself, and also supervised, encouraged, sanctioned, condoned and ratified brutality and torture by other detectives." (*Id*.) Defendant John Byrne

("Byrne") was Chicago Police Sergeant in the Chicago Police Area 2 Detective Violent Crimes Unit. (*Id*. at ¶ 5.) Byrne was the supervisor of Peter Dignan, Charles Grunhard, Michael Bosco, Ray Binkowski, Ray Madigan, and Daniel McWeeny. (*Id*.) Plaintiff alleges that Byrne also engaged in and encouraged others to engage in the practice of torture and brutality. (*Id*.) Defendants Peter Dignan ("Dignan"), Charles Grunhard ("Grunhard"), Michael Bosco ("Bosco"), Ray Madigan ("Madigan"), Ray Binkowski ("Binkowski"), and Daniel McWeeny ("McWeeny") (collectively, the "Defendant Officers") were Chicago Police Detectives in the Detective Division at Area 2 Violent Crimes Unit who allegedly engaged in a pattern and practice of torture and brutality.[2] (*Id*. at ¶ 6.)

Defendant Leroy Martin ("Martin") was the Superintendent of Police for the City of Chicago between 1987 and 1992. (*Id*. at ¶ 7.) In 1983, Martin was Commander of the Area 2 Detective Division, Burge's direct supervisor, and Byrne's and the Defendant Officers' command supervisor. (*Id*.) Defendant Terry Hillard ("Hillard") was the Superintendent of Police for the City of Chicago between 1998 and 2004. (*Id*. at ¶ 8.) Hillard was also Thomas Needham's direct supervisor. (*Id*. at ¶ 9.) Defendant Thomas Needham ("Needham") was counsel to and administrative assistant for Hillard between 1998 and 2002. (*Id*.) Defendant Gayle Shines was the Director of the Office of Professional Standards of the Chicago Police Department from 1990 to 1998. (*Id*. at ¶ 10.) Defendant City of Chicago (the "City") is an Illinois municipal corporation and is and/or was the employer of Burge, Byrne, the Defendant

---

[2] Although Plaintiff does not set forth Binkowski's job description in the section of the Complaint labeled "Parties," the case caption on the Complaint indicates that Binkowski is a Chicago Police Detective.

Officers, Martin, Hillard, Needham, and Shines.  (*Id*. at ¶ 11.)

### C. The County Defendants

Defendant Richard Devine ("Devine") was counsel to the City of Chicago and represented Burge from 1988 to 1996.  (*Id*. at ¶¶ 51, 53.)  As counsel for Burge, Plaintiff alleges that Devine received evidence that Burge tortured suspects.  (*Id*. at ¶ 53.)  In 1997, Devine became the State's Attorney of Cook County, a position he currently holds.  (*Id*. at ¶ 12.) Plaintiff alleges that after becoming the State's Attorney of Cook County, Devine: (1) made false public statements discrediting evidence of torture; (2) refused to investigate allegations regarding Area 2 and Area 3 detectives' use of torture and abuse; (3) suppressed evidence of torture, including evidence of Plaintiff's torture; and (4) used his position to maintain the wrongful conviction and imprisonment of Plaintiff and other victims of torture.  (*Id*. at ¶54.)

Defendant Cook County (the "County") is a governmental entity within the State of Illinois.  (*Id*. at ¶ 13.)  Defendant Cook County State's Attorney's Office is a part of Cook County and it, along with the County, employ Devine.  (*Id*.)

## II. Plaintiff's Allegations

### A. Plaintiff's Underlying Arrest, Interrogation, Confession, and Prosecution

On or about October 26, 1983, A.D. McChristian shot and killed Darrin Ross.  (*Id*. at ¶ 15.)  The Area 2 Violent Crimes Unit, under the supervision and control of Burge and Byrne and with the participation of the Defendant Officers, investigated the homicide.  (*Id*.)  According to Plaintiff, Burge and Byrne directed McWeeny and Madigan to threaten and coerce A.D. McChristian's brother, Tyrone McChristian, to falsely implicate Plaintiff as an accomplice to the Ross homicide.  (*Id*. at ¶ 16.)  McWeeny included Tyrone McChristian's statement in a police

report.  (*Id*. at ¶ 17.)  Plaintiff alleges that on the morning of November 2, 1983, Byrne, Dignan,

Bosco, and Binkowski, together with three other Area 2 detectives, went to an apartment on the

south side of Chicago and arrested Plaintiff without probable cause.  (*Id*. at ¶ 18.)  During the

arrest, Byrne used profanity towards Plaintiff and his fiancé and pointed guns at their heads, and

Grunhard assaulted Plaintiff with a crowbar.  (*Id*. at ¶ 19.)

Following Plaintiff's arrest, Dignan, Byrne and Grunhard drove Plaintiff to the area of

80th and Phillips Streets.  (*Id*. at ¶ 20.)  During the ride, Plaintiff alleges that Dignan said, among

other things, "nigger, where's A.D.," and hit Plaintiff on his knee with a flashlight.  (*Id*.)  Next,

they took Plaintiff to an interrogation room at Area 2, suggested inculpatory answers, showed

Plaintiff an electrical cattle prod, and told him "nigger, you going to tell us where A.D.'s at,"

among other things.  (*Id*. at ¶ 21.)  Byrne, Dignan and Grunhard then took Plaintiff to a remote

area by 103rd and Torrence Streets, while Bosco and Binkowski followed.  (*Id*. at ¶ 22.)  At that

location, Byrne, Dignan and Grunhard took Plaintiff out of the car and questioned him about the

Ross homicide and A.D. McChristian's whereabouts.  (*Id*. at ¶ 23.)  According to Plaintiff,

Byrne, Dignan and Grunhard then subjected him to the following forms of torture: (1) performed

mock executions by placing a gun in his mouth and pulling the trigger; (2) attempted to suspend

Plaintiff in the air while he was handcuffed; and (3) used an electric cattle prod on Plaintiff.  (*Id*.

at ¶¶ 24-28.)  Throughout the torture, Byrne, Dignan and Grunhard continued to interrogate

Plaintiff about the Ross homicide.  (*Id*.)  Plaintiff alleges that as a result of the torture, he gave a

false and coerced statement to McWeeny and later to the assistant state's attorney, implicating

himself as an accomplice to the Ross homicide.  (*Id*. at ¶¶ 31, 32.)

Plaintiff alleges that his coerced confession served as evidence throughout his

prosecution. (*Id.* at ¶ 35.) Additionally, Byrne, Dignan, Grunhard, Bosco, Binkowski, McWeeny, and two other Area 2 detectives committed perjury at the suppression hearings and at trial. (*Id.* at ¶ 36.) Burge, Byrne, Dignan, Grunhard, McWeeny, Bosco, and Binkowski, along with others, allegedly suppressed the fact that Plaintiff's confession was false and the product of a pattern and practice of torture at Area 2, and destroyed the instruments used in the torture. (*Id.* at ¶ 37.) According to Plaintiff, his coerced statement resulted in his 1984 conviction for the murder of Darrin Ross. (*Id.* at ¶ 39.)

### B. Plaintiff's 42 U.S.C. § 1983 Action Against Byrne, Dignan and Grunhard

In 1986, Plaintiff filed a 42 U.S.C. § 1983 action against Defendants Byrne, Dignan and Grunhard alleging violations of Plaintiff's constitutional rights in connection with the alleged excessive force used against Plaintiff on November 2, 1983.[3] (*Id.* at ¶ 41) (R. 28-1; City Defs.' Mot. to Dismiss, Ex. C.) On February 8, 1988, Plaintiff entered into a settlement agreement with the City of Chicago,[4] Byrne, Dignan and Grunhard, whereby Plaintiff, who had legal representation, accepted $3,000 in exchange for dismissing the 1986 action (the "1988

---

[3] Although Plaintiff did not attach the 1986 complaint to the Complaint, the Court may nevertheless consider the 1986 complaint, which the City Defendants attached to their motion, as part of the pleadings because Plaintiff refers to the 1986 action in the Complaint and it is central to his claim. *See Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993) ("Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim."); *Continental Cas. Co. v. American Nat.'l Ins. Co.*, 417 F.3d 727, 731 n.2 (7th Cir. 2005) (same). Also, as the City Defendants note, Plaintiff filed his prior action in September of 1986, not in 1987, as Plaintiff alleges in the Complaint.

[4] According to the settlement agreement, the City of Chicago "agree[d] to be made a party-defendant to this lawsuit for the sole purpose of having a judgment entered against it." (R. 28-1; City Defs.' Mot. to Dismiss, Ex. B at 1.)

Stipulation").[5]  (R. 1-1; Compl. at ¶ 41.) (R. 28-1; City Defs.' Mot. to Dismiss, Ex. B.)  Plaintiff alleges that he only accepted the $3,000 settlement because "Defendants successfully suppressed, destroyed, and covered up their torture of Plaintiff, numerous other cases of torture, and the implements of torture."  (R. 1-1; Compl. at ¶ 41.)

### C.        Investigations into Pattern and Practice of Torture at Area 2

On November 7, 1983, the Office of Professional Standards of the Chicago Police Department (the "OPS") opened an investigation into Plaintiff's allegations of torture.  (*Id*. at ¶ 38.)  The OPS entered "not sustained" findings approximately a year later and neither Martin nor the OPS took disciplinary actions against the Defendant Officers.  (*Id*.)  According to Plaintiff, in November 1984 and February 1985, OPS Director David Fogel ("Fogel") secretly provided to Police Superintendent Fred Rice ("Rice") summaries of numerous cases of torture that Burge committed.  (*Id*. at ¶ 40.)  Rice took no action.  (*Id*.)  Rice, Fogel, their successors, the City and the City's lawyers allegedly suppressed these summaries.  (*Id*.)  They were ultimately discovered in an inspection in August 2004.  (*Id*.)

In 1990, after Plaintiff was convicted and entered into the 1988 Stipulation, the OPS completed an investigation into allegations of torture of suspects, including Plaintiff, at Area 2.  (*Id*. at ¶ 42.)  In a secret report that Martin received, the OPS set forth its findings that from 1973 to 1985, there was a practice of systematic abuse of suspects, including Plaintiff, at Area 2.  (*Id*.)  This report also stated that Burge and two other Area 2 detectives tortured Andrew Wilson and

---

[5] The Court will consider the 1988 Stipulation, which the City Defendants attached to their motion, as part of the pleadings because Plaintiff refers to this release in the Complaint and it is central to his claim.  *See Venture Assocs.*, 987 F.2d at 431; *Continental Cas.*, 417 F.3d at 731 n.2.

recommended removing Burge from his position.  (*Id*. at ¶ 43.)  In February 1992, a federal court

ordered the release of the secret report.  (*Id*. at ¶ 45.)  Plaintiff alleges that following the release

of the report, Martin and the Mayor attempted to publically discredit the report.  (*Id*. at ¶ 46.)

According to Plaintiff, the Mayor, who served as State's Attorney of Cook County from 1981 to

1988, had notice of the abuse at Area 2, but refused to prosecute any Area 2 detectives in

connection with such abuse.  (*Id*. at ¶ 47.)  Additionally, Plaintiff alleges that Martin, Shines and

others refused to investigate other allegations of torture.  (*Id*. at ¶ 48.)

In January 1992, Martin and the City admitted that Burge and those under his command

tortured suspects.  (*Id*. at ¶ 49.)  According to Plaintiff, in February 1993, the Chicago Police

Board fired Burge for torturing Andrew Wilson.  (*Id*. at ¶ 50.)  Also in 1993, the OPS reopened

investigations into approximately 10 Area 2 torture cases, included Plaintiff's.  (*Id*. at 55.)  The

OPS then found that Byrne, Dignan and Grunhard "racially abused and tortured Plaintiff."  (*Id*.)

Shines allegedly suppressed these findings from 1993 to 1998, when she left office.  (*Id*. at ¶ 57.)

According to Plaintiff, in 1998, Hillard and Needham, among other things, overturned the OPS

findings regarding the torture of Plaintiff and five other individuals and suppressed the OPS

findings from Plaintiff.  (*Id*. at ¶ 58.)

**D.**	**Dismissal of Charges Against Plaintiff**

In 1997, an Illinois appellate court ordered that Plaintiff receive a new suppression

hearing so that he could present the newly discovered evidence of torture.  (*Id*. at ¶ 59.)  This

hearing commenced in 1999.  (*Id*. at ¶ 60.)  At the hearing, Plaintiff presented such evidence of

torture.  (*Id*.)  According to Plaintiff, "[t]he State's Attorney's Officer, rather than to again elicit

the knowingly false and perjured testimony of the Defendant Officers, dismissed Plaintiff's case

on April 14, 2004." (*Id.*)  At the time of his release, Plaintiff had spent twenty-one years in prison for the murder of Darrin Ross.  (*Id*. at ¶ 63.)

## ANALYSIS

### I.    Legal Standard

The City and County Defendants bring their motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  A Rule 12(b)(6) motion tests whether plaintiff has "state[d] a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  When deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court views "the complaint in the light most favorable to the plaintiff, taking as true all well-pleaded factual allegations and making all possible inferences from those allegations in his or her favor."  *Lee v. City of Chicago*, 330 F.3d 456, 459 (7th Cir. 2003).  The Court, however, is "not obliged to accept as true legal conclusions or unsupported conclusions of fact."  *Hickey v. O'Bannon*, 287 F.3d 656, 658 (7th Cir. 2002).  The Court will dismiss a complaint under Rule 12(b)(6) only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."  *Hishon v. King & Spaulding*, 467 U.S. 69, 73, 104 S. Ct. 2229, 2232, 81 L. Ed. 2d 59 (1984).

### II.    City Defendants

#### A.    1988 Settlement Agreement

The City Defendants ask the Court to dismiss the Complaint on various grounds.  The Court turns first to the purported preclusive effect of a settlement agreement that Plaintiff entered into with some of the City Defendants approximately seventeen years prior to filing the Complaint.  In 1986, Plaintiff filed a 42 U.S.C. § 1983 action against Byrne, Dignan and Grunhard alleging violations of Plaintiff's constitutional rights in connection with the alleged

excessive force used against Plaintiff on November 2, 1983. (R. 1-1; Compl. at ¶ 41) (R. 28-1; City Defs.' Mot. to Dismiss, Ex. C.) On February 8, 1988, Plaintiff entered into a settlement agreement whereby Plaintiff, who was represented by counsel, accepted $3,000 in exchange for dismissing the 1986 action against Byrne, Dignan and Grunhard. (R. 1-1; Compl. at ¶ 41) (R. 28-1; City Defs.' Mot. to Dismiss, Ex. B.) The City Defendants argue that "Plaintiff's claims in this action are barred by the settlement of his 1986 lawsuit, which was based upon the same events that underlie his present complaint." (R. 26-1; City Defs.' Mot. to Dismiss at 4.) Plaintiff argues that the 1988 Stipulation does not cover the claims he asserts in the Complaint and that the 1988 Stipulation is not valid or enforceable. The Court addresses the scope and the enforceability of the 1988 Stipulation individually.

### 1. Scope of the 1988 Stipulation

Plaintiff and the City Defendants agree that Illinois law governs the interpretation of the 1988 Stipulation. In Illinois, "[i]t is well settled that a release, being a contract whereby a party abandons a claim to a person against whom that claim exists, is subject to rules governing the construction of contracts." *Chubb v. Amax Coal Co., Inc.*, 125 Ill. App. 3d 682, 685, 466 N.E.2d 369, 372, 80 Ill. Dec. 917, 920 (5th Dist. 1984); *see also Laserage Tech. Corp. v. Laserage Labs., Inc.*, 972 F.2d 799, 802 (7th Cir. 1992). "The intention of the parties, therefore, controls the scope and effect of the release, and this intent is discerned from the language used and the circumstances of the transaction." *Chubb*, 125 Ill. App. 3d at 686, 466 N.E.2d at 372, 80 Ill. Dec. at 920. "A release cannot be construed to include claims not within the contemplation of the parties." *Carlile v. Snap-on Tools*, 271 Ill. App. 3d 833, 838, 648 N.E.2d 317, 321, 207 Ill. Dec. 861, 865 (4th Dist. 1995) (citations omitted). "Where a written agreement is clear and

explicit, a court must enforce the agreement as written.  Both the meaning of the instrument, and

the intention of the parties must be gathered from the face of the document without the assistance

of parol evidence or any other extrinsic aids."  *Rakowski v. Lucente*, 104 Ill.2d 317, 323, 472

N.E.2d 791, 794, 84 Ill. Dec. 654, 657 (Ill. 1984).

> The 1988 Stipulation, on its face, is clear and unambiguous.  It provides that
>
> Plaintiff understands, upon advice of his counsel, and agrees that such Judgment is a final and total settlement of all claims he has, or may have in the future, arising either directly or indirectly out of the incident which was the basis of this litigation, and that such finality is applicable to the remaining Defendant, the City of Chicago, its officers, agents and employees.

(R. 28-1; City Defs.' Mot. to Dismiss, Ex. B at ¶ 12.)  Because the 1988 Stipulation is clear,

unambiguous and specific, the Court will look to the document itself to determine its meaning

and the parties' intent.  *See Rakowski*, 104 Ill.2d at 323, 472 N.E.2d at 794, 84 Ill. Dec. at 657;

*see also Ainsworth Corp. v. Cenco Inc.*, 158 Ill. App. 3d 639, 650, 511 N.E.2d 1149, 1156, 110

Ill. Dec. 829, 836 (1st Dist. 1987); *Crown Corr, Inc. v. Wil-Freds Constr., Inc.*, No. 94-6535,

2000 WL 1809996, at *3 (N.D. Ill. Dec. 11, 2000); *Rail-Ways, Inc. v. Indiana & Kensington R.R.

Co.*, No. 95-1526, 1998 WL 792481, at *4 (N.D. Ill. Nov. 9, 1998).  The 1988 Stipulation, on its

face, releases all claims that arise directly or indirectly from the "incident."  The 1986 complaint

makes clear that the "incident" is Byrne's, Dignen's and Grunhard's treatment of Plaintiff on

November 2, 1983.[6]  (R. 28-1; City Defs.' Mot. to Dismiss, Ex. C at 3.)  Likewise, Plaintiff's

---

[6] Specifically, the 1986 complaint alleges that on November 2, 1983: (1) Byrne, Grunhard and Dignen damaged Plaintiff's apartment and personal possessions, and arrested Plaintiff; (2) Dignen forced Plaintiff to play "Russian Roulette" while he asked Plaintiff questions; (3) Byrne, Grunhard and Dignen lifted Plaintiff in the air while he was handcuffed; (4) Byrne used an electric cattle prod on Plaintiff while he asked Plaintiff about a murder case; and (5) Byrne used racial slurs when he addressed Plaintiff.  (R. 28-1; City Defs.' Mot. to Dismiss, Ex. C at 3.)

treatment on November 2, 1983 serves as the basis for the Complaint. (*See*, *e.g.*, R. 1-1; Compl. at ¶¶ 18-30.) Because the "incident" serves as the basis for the Complaint, the twelve causes of action Plaintiff asserts in it necessarily arise either directly or indirectly from the "incident." Therefore, the 1988 Stipulation, on its face, purports to cover those causes of action.

Plaintiff does not argue that the 1988 Stipulation is ambiguous, nor does he contest that the twelve causes of action he alleges in the Complaint arise directly or indirectly from the "incident." Instead, Plaintiff argues that an examination of the circumstances surrounding the execution of the 1988 Stipulation reveals that the parties did not intend to release the claims that are currently before the Court. As addressed above, the Court does not look to extrinsic evidence to determine the parties' intent because the 1988 Stipulation, on its face, is clear and explicit. *See*, *e.g.*, *Rakowski*, 104 Ill.2d at 323, 472 N.E.2d at 794, 84 Ill. Dec. at 657.

Plaintiff also argues that "Illinois courts have repeatedly and unequivocally held that a release 'will not be extended to cover claims that may arise in the future.'" (R. 54-1; Pl.'s Resp. to City Defs.' Mot. to Dismiss at 5) (citing *Chubb*, 125 Ill. App. 3d at 686, 466 N.E.2d at 372, 80 Ill. Dec. at 920.) Plaintiff's quote from the *Chubb* case is incomplete. *Chubb* states that "*where the language of the release is directed to claims then in existence*, it will not be extended to cover claims that arise in the future." 125 Ill. App. 3d at 686, 466 N.E.2d at 372, 80 Ill. Dec. at 920 (emphasis added). At issue in *Chubb* was whether a release, which purported to cover only causes of action that existed as of the date of the release, applied to an injury that occurred approximately two years after the execution of the release.[7] Here, the 1988 Stipulation

---

[7] Plaintiff also cites to *Carona v. Illinois Central R.R. Co.*, 203 Ill. App. 3d 947, 561 N.E.2d 239, 148 Ill. Dec. 933 (5th Dist. 1990), which is similarly distinguishable from this case. In *Carona*, "the plaintiff ha[d] filed a claim based upon a separate and distinct accident from the

specifically states that it applies to claims that Plaintiff may have in the future. Plaintiff's arguments, therefore, are unavailing. For the reasons set forth above, the 1988 Stipulation covers the twelve causes of action Plaintiff currently brings before the Court.

## 2. Enforceability of the 1988 Stipulation

Plaintiff argues that even if the 1988 Stipulation does, on its face, purport to release all of the claims set forth in the Complaint, his claims nevertheless survive because the 1988 Stipulation is invalid an unenforceable. Under Illinois law, "[o]nce the defendant establishes the existence of a release, legal and binding on its face, the burden shifts to the plaintiff to prove it invalid by clear and convincing evidence." *Simmons v. Blauw*, 263 Ill. App. 3d 829, 832, 635 N.E.2d 601, 603, 200 Ill. Dec. 262, 264 (1st Dist. 1994). A release is invalid, and the Court will not enforce it, if "there has been fraud, duress, mutual mistake, or, at least in some cases, unconscionability." *Carlile*, 271 Ill. App. at 839, 648 N.E.2d at 322, 207 Ill. Dec. at 866. Plaintiff alleges sufficient allegations of fraud to render the 1988 Stipulation invalid at this stage of the litigation. Specifically, Plaintiff alleges that his tortured confession was the prosecution's only evidence against him at the 1984 criminal trial, and served as the basis for his underlying conviction. (R. 1-1; Compl. at ¶ 39.) Plaintiff further alleges that at the time of his criminal trial, certain of the City Defendants acted individually and together to suppress evidence of his torture and the torture of other suspects in Area 2, and to deceive the prosecuting attorneys and judges. (*Id*. at ¶¶ 37, 65.) Additionally, Plaintiff alleges that in November 1984 and February 1985 Fogel, the OPS Director, secretly provided to Rice, the Police Superintendent, summaries

---

incident particularized in the executed release." 203 Ill. App. 3d at 952, 561 N.E.2d at 243, 148 Ill. Dec. at 937.

of numerous cases of torture that Burge committed.  (*Id*. at ¶ 40.)  According to Plaintiff, Rice,

Fogel, their successors, the City, and the City's lawyers acted individually and together to

suppress that exculpatory evidence.  (*Id*.)  Therefore, at the time Plaintiff brought his 1986

action, he did not have access to the suppressed evidence of his torture or the torture of other

Area 2 suspects.  Accepting Plaintiff's allegations as true and drawing all inferences in his favor,

as the Court must, these allegations of fraud are sufficient to invalidate the 1988 Stipulation.

     *Bell v. City of Milwaukee*, 746 F.2d 1205 (7th Cir. 1984) (*rev'd on other grounds*, *Russ v.*

*Watts*, 414 F.3d 783 (7th Cir. 2005)) lends support.  In *Bell*, the Seventh Circuit affirmed the

district court's holding that a settlement agreement did not bar a cause of action where the record

was "'replete with allegations of fraud, concealment and a broad-based cover-up on the part of

the defendants Milwaukee Police Department, Howard Johnson, Edwin Shaffer, Thomas Grady,

and the Office of the Milwaukee County District Attorney.'"  *Id*. at 1227 (citing *Bell v. City of*

*Milwaukee*, 514 F. Supp. 1363, 1368-69 (E.D. Wis. 1982)).  The district court in *Bell*, in ruling

on a summary judgment motion, explained that

> the fraud in this case is sufficient to nullify an otherwise valid settlement and
> dismissal.   This is not a case in which the defendant simply lied and thereby
> made the plaintiff's proof of his case difficult.   Rather, this is a case of massive
> conspiracy by high ranking Milwaukee officials to prevent the disclosure of the
> true facts of the shooting of Daniel Bell.   Given the monopoly on force held by
> the government, this conspiracy prevented the proper functioning of the judicial
> system.

*Bell v. City of Milwaukee*, 536 F. Supp. 462, 465-66 (E.D. Wis. 1982).  This reasoning, with

which the Seventh Circuit agreed, applies with equal force to this case.  Accordingly, the City

Defendants' argument that the 1988 Stipulation bars Plaintiff's claims fails.

**B.     Statute of Limitations**

**1.      Section 1983 Claims**

The City Defendants argue that the applicable statute of limitations bars Counts I (§ 1983 due process claim), II (§ 1983 false arrest and false imprisonment claim), III (§ 1983 excessive force claim), and IV (§ 1983 coercive interrogation claim), and Plaintiff's § 1983 conspiracy claims.  Because § 1983 does not set forth a limitations period, "a federal court must adopt the forum state's statute of limitations for personal injury claims." *Ashafa v. City of Chicago*, 146 F.3d 459, 461 (7th Cir. 1998) (citing *Wilson v. Garcia*, 471 U.S. 261, 276, 105 S. Ct. 1938, 1947, 85 L. Ed. 2d 254 (1985)).  "[T]he appropriate statute of limitations for § 1983 cases filed in Illinois is two years as set forth in 735 ILCS § 5/13-202." *Id*.  Although state law governs the length of the statute of limitations period, federal law governs when § 1983 claims accrue. *Wilson v. Giesen*, 956 F.2d 738, 740 (7th Cir. 1992).  The City Defendants argue that Plaintiff's § 1983 claims accrued when the alleged misconduct occurred and are, therefore, time-barred. Their analysis, however, completely overlooks the impact of *Heck v. Humphrey*, 512 U.S. 477, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994), on Plaintiff's § 1983 claims.  In *Heck*, the Supreme Court held that

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.  A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983.  Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.  But if the district court determines that the plaintiff's action,

even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

512 U.S. at 486-87, 114 S. Ct. 2372-73 (footnotes omitted) (emphasis in original). Under *Heck*, if a judgment in favor of Plaintiff on his § 1983 claims "would necessarily imply the invalidity of his conviction or sentence," Plaintiff's claims would be timely because he could not have brought those claims before April 14, 2004, the date the Cook County State's Attorney's Office dismissed charges against him.[8]  512 U.S. at 487, 114 S. Ct. at 2372.

### (i)    Due Process Claim (Count I)

In this case, a judgment in favor of Plaintiff on his § 1983 due process claim would "necessarily imply the invalidity of his conviction." *Heck*, 512 U.S. at 487, 114 S. Ct. at 2372. Plaintiff's due process claim alleges a deprivation of a right to a fair trial and wrongful conviction. On its face, this claim directly contests the validity of Plaintiff's underlying conviction. Therefore, in accordance with *Heck*, Plaintiff's due process claim is timely because it did not accrue until April 14, 2004. *See id*. at 489-90, 114 S. Ct. at 2374 ("a § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated"); *see also Howard v. City of Chicago*, No.

_____

[8] For the first time in their reply, the City Defendants argue that *Heck* is not applicable because Plaintiff already brought certain constitutional claims before Judge Hart in his 1986 suit. The City Defendants do not support this argument with citations to any case law. Their failure to support this argument with any legal authority waives it. *See United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991) ("We repeatedly have made clear that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived."); *see also Estate of Moreland v. Dieter*, 395 F.3d 747, 759 (7th Cir. 2005) ("Perfunctory or undeveloped arguments are waived."). Moreover, this argument is waived because it was raised for the first time on reply. *See Luellen v. City of East Chicago*, 350 F.3d 604, 612 n.4 (7th Cir. 2003).

03-8481, 2004 WL 2397281, at *8 (N.D. Ill. Oct. 25, 2004) (holding that "the accrual of

Plaintiff's claim under due process was postponed by *Heck* until Howard was pardoned").

### (ii) False Arrest and False Imprisonment Claims (Count II)

Similarly, Plaintiff could not have raised his § 1983 false arrest and false imprisonment

claims without challenging the validity of his underlying conviction. Plaintiff alleges that

certain of the City Defendants falsely arrested and falsely imprisoned him, and that following his

arrest, they tortured him until he provided a confession. According to Plaintiff, this coerced

confession was the sole basis for his 1984 conviction. Therefore, Plaintiff's false arrest and false

imprisonment claims are timely because Plaintiff would have impugned the validity of his

underlying conviction if he had raised these claims prior to April 14, 2004. *See Gauger v.

Hendle*, 349 F.3d 354, 361 (7th Cir. 2003) ("For Gauger to mount an attack based on 42 U.S.C. §

1983 on his arrest was implicitly to challenge the legality of his conviction, which rested

crucially on the statements that he made to the police when he was questioned after being

arrested.").

### (iii) Excessive Force and Coercive Interrogation Claims (Counts III, IV)

*Heck* likewise applies to Plaintiff's excessive force and coercive interrogation claims. As

stated above, Plaintiff alleges that his "coerced and fabricated 'confession' was presented by the

prosecution as the only evidence against him at the 1984 trial and provided the basis for his

conviction." (R. 1-1; Compl. at ¶ 39.) Accordingly, Plaintiff could not have raised claims

regarding the excessive force and coercion used during his interrogation without necessarily

implying the invalidity of his underlying conviction. *See Howard*, 2004 WL 2397281, at *7

("Since Howard's conviction rested almost entirely on his involuntary confession plus the

17

alleged coerced witness testimony, we conclude that Howard could not have challenged Defendants' acts of torturing him and fabricating his confession without necessarily implying the invalidity of his conviction."); *Patterson v. Burge*, 328 F. Supp. 2d 878, 897 (N.D. Ill. 2004) (same); *Orange v. Burge*, No. 04-0168, 2005 WL 742641, at *7 (N.D. Ill. Mar. 30, 2005) (same). Therefore, Plaintiff's § 1983 due process, false arrest, false imprisonment, excessive force, and coercive interrogation claims are timely because under *Heck*, Plaintiff could not have brought these claims prior to April 14, 2004.

### (iv)    Conspiracy Claims (Counts I-V)

In Counts I through V, Plaintiff alleges that certain of the City Defendants acted "individually, jointly, and in conspiracy" to cause the violations underlying these § 1983 claims. (R. 1-1; Compl. at ¶¶ 68, 71, 74, 78, 81.)  Because the Court finds that these underlying causes of action are timely, Plaintiff's conspiracy claims based on the causes of action are also timely.  *See Hobley v. Burge*, No. 03-3678, 2004 WL 1243929, at *8 (N.D. Ill. June 3, 2004) ("*Hobley I*") (citing *Castillo v. Zuniga*, No. 01-616, 2002 WL 398519, at *10 (N.D. Ill. Mar. 14, 2002)) ("because we found that both Hobley's false arrest claim and his due process claim for the deprivation of his right to a fair trial were timely, the conspiracy to deprive him of those rights is also timely"); *Howard*, 2004 WL 2397281, at *11 (same).  Moreover, *Heck* applies to Plaintiff's § 1983 conspiracy claims.  *Howard*, 2004 WL 2397281, at *11; *Hobley I*, 2004 WL 1243929, at *8.  Plaintiff's § 1983 conspiracy claims allege that the City Defendants conspired to, among other things, deprive him of his right to a fair trial, falsely arrest and imprison him and coercively interrogate him.  Therefore, under *Heck*, Plaintiff could not have pursued his conspiracy claims without implying the invalidity of his underlying conviction.

18

### 2.      State Law Claims

#### (i)      False Arrest and False Imprisonment Claims (Count VII)

The City Defendants argue that Plaintiff's state law false arrest and false imprisonment claims are time-barred.  They make no effort, however, to separate their arguments regarding Plaintiff's § 1983 claims and his state law claims, and they do not provide the Court with any pertinent case law.  As such, the City Defendants waive their argument that Plaintiff's state law false arrest and false imprisonment claims are untimely.  *See Berkowitz*, 927 F.2d at 1384 ("We repeatedly have made clear that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived."); *see also Estate of Moreland*, 395 F.3d at 759 ("Perfunctory or undeveloped arguments are waived.")

#### (ii)      Intentional Infliction of Emotional Distress Claim (Count IX)

The City Defendants argue that Plaintiff's intentional infliction of emotional distress claim is time-barred.  The Court disagrees.  Courts in the Northern District of Illinois "have consistently held that the statute of limitations on an [intentional infliction of emotional distress] claim does not begin to run until the state criminal proceedings are terminated."  *Hobley v. Burge*, No. 03-3678, 2004 WL 2658075, at *9 (N.D. Ill. Oct. 13, 2004) ("*Hobley II*") (citing *Hobley I*, 2004 WL 1243929, at *9 (citing cases)); *see also Orange*, 2005 WL 742641, at **8-9; *Howard*, 2004 WL 2397281, at **14-15.  The City Defendants ask the Court to reexamine this body of case law in light of the Seventh Circuit's decision in *Leavell v. Kieffer*, 189 F.3d 492 (7th Cir. 1999).  The court in *Orange* correctly rejected this argument.  In *Orange*, Judge Holderman explained that *Leavell* is distinguishable because it "discusses the applications of statute of limitations in a *Bivens* action brought by taxpayers against the IRS employee who conducted an

audit of the taxpayers." *Orange*, 2005 WL 742641 at *9 (citation omitted). Judge Holderman further noted that because the tort of intentional infliction of emotional distress is an Illinois state law tort, the court must follow the decisions of the Illinois Supreme Court, such as *Feltmeier v. Feltmeier*, 207 Ill. 2d 263, 798 N.E.2d 75, 278 Ill. Dec. 228 (Ill. 2003). *Id.* In *Feltmeier*, the Illinois Supreme Court held that "the continuing tort rule should be extended to apply in cases of intentional infliction of emotional distress," and as such, "a plaintiff's cause of action accrues, and the state of limitations begins to run, at the time the last injurious act occurs or the conduct is abated." 207 Ill. 2d at 284-85, 798 N.E.2d at 88-89. The Court agrees with the analysis set forth in *Orange* and declines the City Defendants' request that it reexamine the case law in the Northern District of Illinois regarding accrual of intentional infliction of emotional distress claims. Because Plaintiff's intentional infliction of emotional distress claim did not accrue until the Cook County State's Attorney's Office dismissed the charges against Plaintiff on April 14, 2004, it is timely.

### (iii)     Conspiracy Claim (Count X)

The City Defendants argue that the Court should dismiss Plaintiff's state law conspiracy claim as untimely. The only case they cite to support this argument is *Pitts v. City of Kankakee, Illinois*, 267 F.3d 592 (7th Cir. 2001). *Pitts* is a case involving a § 1983 claim of defamation to retaliate for exercising First Amendment rights. It does not address the issue of when an Illinois state law conspiracy claim accrues for statute of limitation purposes. The City Defendants' failure to provide the Court with a developed legal argument or pertinent case law waives their argument that Count X is untimely. *See Berkowitz*, 927 F.2d at 1384 ("We repeatedly have made clear that perfunctory and undeveloped arguments, and arguments that are unsupported by

pertinent authority, are waived.").

## C. Deprivation of Access to the Courts (Count V)

Count V alleges that "Plaintiff has lost his Fourth, Fifth, and Fourteenth Amendment claims of torture and coercive interrogation against some or all of the Defendants by accepting a settlement of his 42 U.S.C. § 1983 claim for a tiny fraction of what his claim is actually worth." (R. 1-1; Compl. at ¶ 81.) In his response, Plaintiff asserts that if the Court finds that the 1988 Stipulation bars some or all of the causes of action Plaintiff currently brings before the Court, such a finding would deny him his constitutional right of access to the courts. Therefore, according to Plaintiff, his denial of access claim as to the City Defendants is only viable if the Court finds that the 1988 Stipulation bars his current claims. As stated above, the Court holds that the 1988 Stipulation does not bar any of the claims he asserts in the Complaint. For this reason, and the reasons stated below in section III, F of the argument section of the Opinion, the Court dismisses Count V as to the City Defendants.

## D. Due Process Claim (Count I)

Count I alleges that certain of the City Defendants "unconstitutionally depriv[ed] Plaintiff of his liberty and violat[ed] his right to a fair and impartial trial and not to be wrongfully convicted, as guaranteed by the Fourteenth Amendment." (R. 1-1; Compl. at ¶ 68.) The City Defendants move to dismiss Count I for two reasons. First, the City Defendants assert that Plaintiff cannot base his due process claim on the existence of a *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), violation because no such violation occurred. Second, they argue that Plaintiff's allegations in support of Count I only allege malicious prosecution and false imprisonment claims, not a violation of Plaintiff's constitutional right to due process.

1.      ***Brady* Violation**

"In practical terms, a *Brady* violation has three components: (1) the evidence at issue must be favorable to the accused, meaning either exculpatory or impeaching; (2) the evidence must have been suppressed by the state, either willfully or inadvertently; and (3) prejudice must have ensued." *Patterson*, 328 F. Supp. 2d at 889 (citing *Strickler v. Greene*, 527 U.S. 263, 281-82, 119 S. Ct. 1936, 1948, 114 L. Ed. 2d 286 (1999)). *Brady* violations may occur not only during a trial, but also before and after trial. *Id*. (citations omitted). The failure to comply with *Brady* results in a due process violation. *See Newsome v. McCabe*, 256 F.3d 747, 752 (7th Cir. 2001).

The City Defendants, relying on *Gauger*, argue that Plaintiff cannot assert a *Brady* violation because Plaintiff was aware of the allegedly suppressed exculpatory evidence, namely the fact that certain of the City Defendants tortured him and coerced him into providing a confession. Under the City Defendants' theory, *Brady* does not require the disclosure of evidence of which Plaintiff is already aware. In *Gauger*, the plaintiff argued that *Brady* "required the detectives to give truthful versions of Gauger's statements at the interrogation to the prosecutors to be forwarded to his counsel at his criminal trial." *Gauger*, 349 F.3d at 360. The Seventh Circuit, however, held that the obligation under *Brady* to provide criminal defendants with exculpatory evidence "falls out, because Gauger knew what he had said at the interrogation." *Id*. *Gauger*, however, is distinguishable from this case because in *Gauger*, the alleged *Brady* violation "was based entirely on evidence obtained during the state's interrogation of the accused." *Howard*, 2004 WL 2397281, at *9. In this case, as in *Patterson*, *Orange* and *Howard*, Plaintiff alleges that the purported *Brady* violation results from obstructions of justice

that took place both inside and outside of the interrogation room.  *See Orange*, 2005 WL 742641, at *11; *Patterson*, 328 F. Supp. 2d at 889; *Howard*, 2004 WL 2397281, at *9.  Specifically, Plaintiff alleges that certain of the City Defendants, acting individually, jointly and in conspiracy,

> caused the wrongful charging, prosecution, and conviction of Plaintiff . . . [and] caused the continuation of that wrongful conviction, by coercing, constructing and/or fabricating the false and totally unreliable statements which formed the basis for Plaintiff's charging, prosecution and conviction; by withholding from the prosecutors, judges and defense attorneys involved in Plaintiff's prosecution the fact that these admissions were false, totally unreliable, constructed, and coerced; by suppressing additional exculpatory and exonerating torture findings and evidence, as well as other exculpatory evidence; by giving a false and incomplete version of events to prosecutors; by writing false reports and giving false testimony; by improperly influencing the judges hearing Plaintiff's case, *inter alia*, by obstructing investigations which would have led to discovery of further exculpatory evidence

(R. 1-1; Compl. at ¶ 68.)  Accordingly, Plaintiff's knowledge of what transpired in the interrogation room does not relieve the City Defendants of their obligation under *Brady* to disclose exculpatory evidence regarding what transpired outside the interrogation room, or preclude the Court from finding the existence of a *Brady* violation.[9]  *See Orange*, 2005 WL 742641, at *11; *Patterson*, 328 F. Supp. 2d at 890; *Howard*, 2004 WL 2397281, at *10.

### 2.     State Remedies

The City Defendants argue that Plaintiff's allegations in Count I only allege claims of false imprisonment and malicious prosecution.  They further assert that *McCann v. Mangialardi*, 337 F.3d 782 (7th Cir. 2003), which relied on *Newsome*, prevents Plaintiff from converting his

---

[9] On reply, the City Defendants argue that the Illinois Supreme Court's decision in *People v. Orange*, 195 Ill.2d 437, 749 N.E.2d 932, 255 Ill. Dec. 450 (Ill. 2001), precludes the Court from finding that Plaintiff has set forth sufficient allegations to find a *Brady* violation.  Because the City Defendants do not raise this argument until their reply, they waive the argument.  *See Luellen*, 350 F.3d at 612 n.4.

false imprisonment and malicious prosecution claims into a constitutional due process claim. *McCann* held that plaintiffs cannot "combin[e] what are essentially claims for false arrest under the Fourth Amendment and state law malicious prosecution into a sort of hybrid substantive due process claim under the Fourteenth Amendment." 337 F.3d at 786. *Newsome* and *McCann*, however, do not preclude Plaintiff from asserting his due process claim because they "do[] not bar § 1983 claims arising under the language of the constitution itself." *Patterson*, 328 F. Supp. 2d at 890 (citing *Newsome*, 256 F.3d at 751). In *Newsome*, the Seventh Circuit explained that even though "satisfying the elements of the state-law tort of malicious prosecution . . . *knocks out* any constitutional tort of malicious prosecution," the plaintiff did "have a due process claim in the original sense of the phrase-he did not receive a fair trial if the prosecutors withheld material exculpatory details." 256 F.3d at 751-52 (emphasis in original). In this case, Plaintiff alleges that Defendants coerced, constructed and/or fabricated false statements, withheld the fact that these statements were false from the prosecutors, judges and defense attorneys involved in Plaintiff's prosecution, and suppressed exculpatory and exonerating evidence in violation of his rights under the Fourteenth Amendment. These allegations are sufficient at this stage in the litigation to allege a deprivation of Plaintiff's right to a fair trial, which arises from the Constitution itself. *See Patterson*, 328 F. Supp. 2d at 891 ("Patterson's accusations in Count I assert a deprivation of his right to a fair trial which is derived directly from the constitution's guarantee of due process; as such, the clams are not barred by *Newsome*"); *Orange*, 2005 WL 742641, at * 13 (same); *Howard*, 2004 WL 2397281, at *9 ("Howard's claims . . . arise from allegations that Defendants concealed exculpatory evidence from prosecutors, thereby denying him the right to a fair trial. Because Defendants have not identified a state law claim that

addresses Howard's particular due process claims, he cannot be precluded from asserting a constitutional tort claim on this basis."); *Hobley I*, 2004 WL 1243929, at *10 (same). Accordingly, the Court denies the City Defendants' motion to dismiss Count I.

### E.  Malicious Prosecution Claim (Count VIII)

Count VIII alleges a malicious prosecution claim against Burge, Byrne, Dignan, Grunhard, McWeeny, Bosco, Binkowski, Madigan, Martin, Devine, Shines, Hillard, and Needham.  Under Illinois law, "to establish a malicious prosecution action, the plaintiff must allege facts showing: '(1) the commencement or continuance of an original criminal or civil judicial proceeding by the defendant; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for such proceeding; (4) the presence of malice; and (5) damages resulting to the plaintiff.'" *Swick v. Liautaud*, 169 Ill.2d 504, 512, 662 N.E.2d 1238, 1242, 215 Ill. Dec. 98, 102 (Ill. 1996) (quoting *Joiner v. Benton Cmty. Bank*, 82 Ill.2d 40, 45, 44 Ill. Dec. 260, 263, 411 N.E.2d 229, 232 (Ill. 1980) (quotation omitted)); *Fabiano v. City of Palos Hills*, 336 Ill. App. 3d 635, 641, 784 N.E.2d 258, 265, 271 Ill. Dec. 40, 47 (1st Dist. 2002).

The City Defendants challenge Count VIII only as to Martin, Shines, Hillard, and Needham. They argue that Plaintiff fails to assert an actionable malicious prosecution claim against these Defendants because Plaintiff does not allege that they investigated the underlying murder of Darrin Ross, took an active part in his prosecution, appeared as witnesses at Plaintiff's trial, demonstrated how they continued a prosecution against Plaintiff, or played the required prominent role in the alleged malicious prosecution.  In essence, the City Defendants argue that Plaintiff fails to adequately allege the first element of a malicious prosecution claim --

defendant's commencement or continuance of the underlying judicial proceeding.

In support of his malicious prosecution claim, Plaintiff specifically alleges that certain of the City Defendants, including "Martin, individually, jointly, and in conspiracy, initiated a malicious prosecution without probable cause against Plaintiff, and these same Defendants, together with Defendants Devine, Shines, Hillard, and Needham, individually, jointly, and in conspiracy, continued said prosecution, again without probable cause." (R. 1-1; Compl. at ¶ 93.) Furthermore, Plaintiff alleges that in 1983, Martin, along with other Defendants, "suppressed from the prosecutors who prosecuted Plaintiff, from the judges and juries who heard the case, and from the prosecutors and judges who prosecuted and heard Plaintiff's appeals and motions to suppress, that the admissions they attributed to Plaintiff were false and totally unreliable . . . [and] suppressed, committed perjury about, and destroyed the physical implements of [the] pattern and practice of torture." (*Id*. at ¶ 37.) Plaintiff also alleges that Martin undermined and suppressed the OPS report, which stated that from 1973 to 1985 there was a practice of abusing suspects, including Plaintiff, at Area 2. (*Id*. at ¶¶ 42, 44, 45.) Plaintiff further alleges that Martin and Shines refused to investigate allegations of police torture and that Shines suppressed evidence of torture. (*Id*. at ¶¶ 48, 57.) Additionally, Plaintiff alleges that Hillard and Needham "violated police regulations and obstructed justice by overturning the OPS sustained findings in Plaintiff's and the other five re-opened cases; by refusing to investigate other torture victims' claims that they had been tortured; by refusing to investigate OPS Director Gayle Shines' suppression of evidence, and by suppressing these OPS files and findings from Plaintiff and

other criminal defendants."[10]  (*Id*. at ¶ 58.)  These allegations satisfy Federal Rule of Civil Procedure 8(a)'s requirements.  Accordingly, the Court denies the City Defendants' motion to dismiss Count VIII.[11]

###  F.  Conspiracy Claims (Count X, I-V)

The City Defendants next move to dismiss Plaintiff's conspiracy claims.  As stated above, Count X specifically alleges a conspiracy claim under Illinois state law, and Counts I though V allege that certain of the City Defendants acted "individually, jointly and in conspiracy" to cause various § 1983 violations.  (R. 1-1; Compl. at ¶¶ 68, 71, 74, 78, 81.)  The City Defendants raise two main challenges to Plaintiff's conspiracy claims: (1) Plaintiff's allegations are insufficient to support any claim of conspiracy; and (2) the intra-corporate conspiracy doctrine bars Plaintiff's conspiracy claims.[12]

_____

[10] In a separate section of their motion to dismiss, the City Defendants argue that Plaintiff has not alleged sufficient allegations to hold Martin, Shines, Hillard, and Needham liable in their individual capacities.  These allegations, however, demonstrate to the contrary.  *See Patterson*, 328 F. Supp. 2d at 888 (declining to dismiss Byrne, Martin, Shines, Hillard, and Needham from the case where "the allegations in Patterson's complaint are more than adequate to put this court and defendants Byrne, Martin, Shines, Hillard, and Needham on notice of the claims against them"); *Orange*, 2005 WL 742641, at *13 (upholding claims against Martin, Shines, Hillard and Needham); *Howard*, 2004 WL 2397281, at *13 (same).  Therefore, the Court denies the City Defendants' request that it dismiss Martin, Shines, Hillard, and Needham from the case.

[11] In footnote seven of the City Defendants' reply brief, they purport to adopt the County Defendants' arguments challenging Plaintiff's malicious prosecution claim.  The City Defendants may not raise a new argument on reply and fail to develop it with legal or factual support without waiving it.  *See Berkowitz*, 927 F.2d at 1384 ("We repeatedly have made clear that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived."); *see also Luellen*, 350 F.3d at 612 n.4 (arguments raised for the first time on reply are waived).  Moreover, as discussed below, the Court upholds Count VIII as to the County Defendants.

[12] The City Defendants also assert that "[t]o the extent the allegations in counts I through V and VII through IX fail to adequately assert the underlying causes of action, those same

27

### 1.    Sufficiency of Plaintiff's Conspiracy Allegations

The City Defendants argue that the Court should dismiss Plaintiff's conspiracy claims because Plaintiff fails to allege the form and the scope of the purported conspiracies. The Court disagrees. As Judge Holderman explained in *Orange*, "traditional notice pleading rules apply" to conspiracy claims. 2005 WL 742641, at *14 (citing *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168, 113 S. Ct. 1160, 1163, 122 L. Ed. 2d 517 (1993)). Indeed, the Seventh Circuit has explained that "it is enough in pleading a conspiracy merely to indicate the parties, general purpose, and approximate date, so that the defendant has notice of what he is charged with." *Walker v. Thompson*, 288 F.3d 1005, 1007 (7th Cir. 2002). Plaintiff's conspiracy allegations meet this standard. Plaintiff identifies each Defendant that was part of the purported conspiracy and the approximate time period each Defendant participated in the conspiracy. Plaintiff also alleges that the general purpose of the conspiracy was "to falsely imprison and/or to continue said imprisonment, to maliciously prosecute and/or continue said prosecution, and to intentionally inflict severe emotional distress on Plaintiff." (R. 1-1; Compl. at ¶ 99.) Additionally, Plaintiff specifies the conduct in which the City Defendants allegedly engaged in furtherance of the conspiracy, including, among other things, torturing Plaintiff, coercing a confession, testifying falsely, and suppressing and destroying evidence of the torture. Accordingly, Plaintiff's allegations are sufficient to "enable [the City Defendants] to prepare [their] defense or for the district court to determine whether the claim was within the ballpark of

---

allegations cannot support the derivative conspiracy claims." (R. 43-2; City Defs.' Mot. to Dismiss at 17.) Because the Court upholds Counts I through IV and Counts VII through IX as to the City Defendants, Plaintiff can properly base his conspiracy claims on those causes of action and the allegations underlying those causes of action.

possibly valid conspiracy claims." *Walker*, 288 F.3d at 1008; *see also Howard*, 2004 WL 2397281, at **12, 15 (upholding state law and § 1983 conspiracy claims); *Patterson*, 328 F. Supp. 2d at 903 (same).

## 2.    Intra-corporate Conspiracy Doctrine

The City Defendants also assert that the intra-corporate conspiracy doctrine bars Plaintiff's § 1983 conspiracy claims. In *Dombrowski v. Dowling*, 459 F.2d 190 (7th Cir. 1972), the Seventh Circuit recognized the intra-corporate conspiracy doctrine and held that "managers of a corporation jointly pursuing its lawful business do not become 'conspirators' when acts within the scope of their employment are said to be discriminatory or retaliatory." *Travis v. Gary Cmty. Mental Health Ctr., Inc.*, 921 F.2d 108, 110 (7th Cir. 1990). "In *Wright*, the Seventh Circuit applied the doctrine to claims brought under 42 U.S.C. § 1985 against governmental entities." *Hobley I*, 2004 WL 1243929, at *10 (citing *Wright v. Illinois Dept. of Children & Family Servs.*, 40 F.3d 1492, 1507-08 (7th Cir. 1994)). The City Defendants ask the Court to extend the intra-corporate conspiracy doctrine to Plaintiff's § 1983 conspiracy claims. Although the Seventh Circuit has not reached this issue, several courts in this District have addressed the applicability of the intra-corporate conspiracy doctrine in the context of § 1983 conspiracy claims against police officers. There is a split of opinion among the district courts addressing this issue. The courts in *David v. Village of Oak Lawn*, No. 95-7368, 1996 WL 210072, **3-4 (N.D. Ill. Apr. 29, 1996), and *Chavez v. Illinois State Police*, No. 94-5307, 1996 WL 66136, **7-8 (N.D. Ill. Feb. 13, 1996), for example, have applied the intra-corporate conspiracy doctrine, while various courts have declined to apply the doctrine. *See*, *e.g.*, *Hobley I*, 2004 WL 1243929, at **10-11; *Howard*, 2004 WL 2397281, at *12; *McDorman v. Smith*, No. 05-0448, 2005 WL

1869683, at *6 (N.D. Ill. Aug. 2, 2005); *Williams v. Brown*, 269 F. Supp. 2d 987, 994 (N.D. Ill. 2003), *vacated in part by Williams v. Brown*, No. 01-3228, 2003 WL 22454083 (N.D. Ill. Oct. 3, 2003); *Moreno v. Town of Cicero*, No. 01-1726, 2002 WL 31017932, at *3 (N.D. Ill. Sept. 5, 2002); *Newsome v. James*, No. 96-7680, 2000 WL 528475, **14-16 (N.D. Ill. Apr. 26, 2000); *Jefferson v. City of Harvey*, No. 98-5834, 2000 WL 15097, at ** 4-5 (N.D. Ill. Jan. 5, 2000); *Northen v. City of Chicago*, No. 93-7013, 1999 WL 342441, at **3-4 (N.D. Ill. May 17, 1999); *Cooper v. Harris*, No. 98-1623; 1999 WL 261742, at *3 (N.D. Ill. Apr. 13, 1999); *Salto v. Mercado*, No. 96-7168, 1997 WL 222874, at *1-2 (N.D. Ill. Apr. 24, 1997).

The Court declines to extend the intra-corporate conspiracy doctrine to Plaintiff's § 1983 conspiracy claims. The Court agrees with the reasoning set forth in *James*, upon which the courts in the related *Howard* and *Hobley* cases relied. In *James*, the court explained that

> [t]he intracorporate conspiracy doctrine was created to shield corporations and their employees from conspiracy liability for routine, collaborative business decisions that are later alleged to be discriminatory. The conduct plaintiff alleges here does not fit that mold. The decision to frame plaintiff for Cohen's murder, as plaintiff alleges it, is not the product of routine police department decision-making.

2000 WL 528475, at *15. In this case, Plaintiff alleges that the City Defendants conspired to: (1) falsely arrest and imprison Plaintiff; (2) torture and physically abuse Plaintiff; (3) coercively interrogate Plaintiff; and (4) cause the wrongful charging, prosecution and conviction of Plaintiff. Plaintiff's conspiracy claims stand.[13]

---

[13] In addition to Plaintiff's § 1983 conspiracy claims, the Complaint may also allege a conspiracy claim under § 1985. In his response, Plaintiff states that he "makes only one § 1985 conspiracy claim - - - for violation of his right to equal protection of law." (R. 54-1; Pl.'s Resp. to City Defs.' Mot. to Dismiss at 26 n.12.) Plaintiff, however, further states that "[s]ince this claim is also made under § 1983 . . . Plaintiff need not also pursue this claim under § 1985." (*Id.*) (citations omitted.) It is unclear whether Plaintiff, by making this statement, intends to waive his alleged conspiracy claim under § 1985. To the extent Plaintiff does not intend to

30

### G.    Collateral Estoppel

The City Defendants argue that the doctrine of collateral estoppel bars Plaintiff's claims because "Plaintiff's claim of innocence was extensively litigated before and adjudicated by the Illinois Prisoner Review Board."  (R. 43-2; City Defs.' Mot. to Dismiss at 22.)  Plaintiff, in his response, raises a number of issues of fact regarding, among other things, whether he had a full and fair opportunity to litigate before the Illinois Prisoner Review Board.  The parties' briefs make clear that the Court must look to information outside the pleadings to properly rule on this issue.  Therefore, the Court agrees with Judge Holderman's assessment in *Orange* that "[e]valuation of collateral estoppel requires the court to make factual determinations that are properly considered when the court can evaluate evidence outside the plaintiff's complaint such as through a Rule 56 motion for summary judgment."  *Orange*, 2005 WL 742641, at *5; *see also Patterson*, 328 F. Supp. 2d at 887 (declining to dismiss plaintiff's claims under the doctrine of collateral estoppel because "the court cannot rule on defendants' collateral estoppel arguments without considering facts and evidence outside the pleadings"); *Hobley I*, 2004 WL 1243929, at *3-4 (same).  Accordingly, at this stage in the litigation, the Court will not dismiss Plaintiff's claims under the doctrine of collateral estoppel.

---

waive this claim, the Court does not find that the intra-corporate conspiracy doctrine bars his claim.  As the Seventh Circuit has made clear, the intra-corporate conspiracy doctrine applies during the pursuit of "lawful business" when the purported conspirators act "within the scope of their employment."  *Travis*, 921 F.2d at 110.  At this stage, the Court cannot say that the City Defendants' conduct was within the scope of their employment and was engaged in during the pursuit of lawful business.   Moreover, the Seventh Circuit has stated that "except in egregious circumstances, intra-entity discussions that result in discriminatory or retaliatory actions lie outside the scope of § 1985."  *Wright*, 40 F.3d at 1508-09.  This case may very well present the type of "egregious circumstances" that exempt it from the reach of the intra-corporate conspiracy doctrine.

### H. Section 1983 *Monell* Policy Claim (Count VI)

Count VI alleges a § 1983 *Monell* policy claim against the City. The City Defendants argue that "[b]ecause plaintiff has failed to assert actionable § 1983 claims in counts I through V, his *Monell* claim against the City in Count VI fails as a result." (R. 43-2; City Defs.' Mot. to Dismiss at 22.) The Court, however, upholds Counts I though IV as to the City Defendants. Therefore, the Court denies the City Defendants' motion to dismiss Count VI.

### I. *Respondeat Superior* and Indemnification Claims (Counts XI, XII)

Counts XI and XII allege liability against the City on theories of *respondeat superior* and indemnification pursuant to 745 ILCS § 10/9-102. The City Defendants challenge these claims on the ground that the City cannot be liable for violations of Illinois state law where its employees are not liable. The Court, however, does not dismiss Counts VII through X as alleged against the City's employees. Accordingly, the Court denies the City Defendants' motion to dismiss Counts XI and XII.

## III. County Defendants

Plaintiff brings a number of causes of action against the County Defendants. Specifically, Plaintiff asserts seven claims against Devine in his individual capacity: (1) § 1983 claim for deprivation of the right to a fair trial and wrongful conviction (Count I); (2) § 1983 claim for false arrest and false imprisonment (Count II); (3) § 1983 due process claim for deprivation of access to courts (Count V); (4) state law false arrest and imprisonment claim (Count VII); (5) state law malicious prosecution claim (Count VIII); (6) state law intentional infliction of emotional distress claim (Count IX); and (7) state law conspiracy claim (Count X). Additionally, Plaintiff asserts a claim for indemnification pursuant to 745 ILCS 10/9-102 (Count

XII) against the County and the Cook County State's Attorney's Office.  The County Defendants seek to dismiss each of these claims.

### A.      Eleventh Amendment

The County Defendants argue, and Plaintiff does not contest, that the Eleventh Amendment bars Plaintiff's claims against the Cook County State's Attorney's Office.  "The Eleventh Amendment prohibits federal courts from deciding suits brought by private litigants against states or their agencies." *Garcia v. City of Chicago*, 24 F.3d 966, 969 (7th Cir. 1994). Because state's attorney's offices are state agencies, the Eleventh Amendment bars Plaintiff's claims against the Cook County State's Attorney's Office.  *See Hernandez v. Joliet Police Dep't*, 197 F.3d 256, 264-65 (7th Cir. 1999) (citing *Garcia*, 24 F.3d at 969); *Orange*, 2005 WL 742641, at *16-17; *Patterson*, 328 F. Supp. 2d at 899; *Webb v. City of Joliet*, No. 03-4436, 2004 WL 1179413, at *5 (N.D. Ill. May 26, 2004).  Accordingly, the Court dismisses Plaintiff's claims against the Cook County State's Attorney's Office with prejudice, and addresses the County Defendants' remaining arguments only as they relate to the County and Devine.

### B.      Illinois Court of Claims

The County Defendants also argue that the Court should dismiss Plaintiff's state law tort claims against Devine because the Illinois Court of Claims has exclusive jurisdiction over those claims.  "In the Court of Claims Act, the General Assembly provided that the Court of Claims has the 'exclusive jurisdiction to hear and determine * * * [a]ll claims against the State for damages in cases sounding in tort, if a like cause of action would lie against a private person or corporation in a civil suit.'" *Price v. Illinois*, 354 Ill. App. 3d 90, 92, 820 N.E.2d 104, 106, 289

Ill. Dec. 596, 598 (1st Dist. 2004) (citing 705 ILCS 505/8(d) (West 1994)). "Whether an action is in fact one against the State, and hence one that must be brought in the Court of Claims, depends not on the formal identification of the parties but rather on the issues involved and the relief sought." *Healy v. Vaupel*, 133 Ill.2d 295, 308, 549 N.E.2d 1240, 1247, 140 Ill. Dec. 368, 375 (Ill. 1990). Regarding the issues involved, "an action is against the state when there are: '"(1) no allegations that an agent or employee of the State acted beyond the scope of his authority through wrongful acts; (2) the duty alleged to have been breached was not owed to the public generally independent of the fact of State employment; and (3) where the complained-of actions involve matters ordinarily within that employee's normal and official functions of the State * * *.'" *Jinkins v. Lee*, 209 Ill.2d 320, 330, 807 N.E.2d 411, 418, 282 Ill. Dec. 787, 794 (Ill. 2004) (citing *Healy*, 133 Ill.2d at 309, 549 N.E.2d at 1247, 140 Ill. Dec. at 375 (quotations omitted)). "Regarding the relief sought, a court must also consider whether the relief sought is such that 'a judgment for the plaintiff could operate to control the actions of the State or subject it to liability.'" *Id.* (citing *Currie v. Lao*, 148 Ill.2d 151, 159, 592 N.E.2d 977, 980, 170 Ill. Dec. 297, 300 (Ill. 1992)).

Plaintiff alleges that from 1988 to 1996, Devine served as counsel to the City of Chicago and represented Burge. (R. 1-1; Compl. at ¶¶ 51, 53.) As counsel for Burge, Plaintiff alleges that Devine received evidence that Burge tortured suspects. (*Id.* at ¶ 53.) According to Plaintiff, after receiving this evidence, Devine became the State's Attorney of Cook County and: (1) made false public statements discrediting evidence of torture; (2) refused to investigate allegations regarding Area 2 and Area 3 detectives' use of torture and abuse; (3) suppressed evidence of torture, including evidence of Plaintiff's torture; and (4) used his position to maintain the

wrongful conviction and imprisonment of Plaintiff and other victims of torture. (*Id*. at ¶54.)

These allegations are sufficient to establish that Devine acted in excess of his authority and in

violation of applicable laws such that the Illinois Court of Claims does not have exclusive

jurisdiction over Plaintiff's state law tort claims.[14] *See Healy*, 133 Ill.2d at 308, 549 N.E.2d at

1247, 140 Ill. Dec. at 375 (citing *Senn Park Nursing Ctr. v. Miller*, 104 Ill.2d 169, 188, 83 Ill.

Dec. 609, 618, 470 N.E.2d 1029, 1039 (Ill. 1984)) ( "[s]overeign immunity affords no protection

. . . when it is alleged that the State's agent acted in violation of statutory or constitutional law or

in excess of his authority, and in those instances an action may be brought in circuit court").

Moreover, the Court agrees with the reasoning set forth in *Patterson* and *Orange*, two cases

pending in the Northern District of Illinois that are based on practically identical allegations to

this case, where Judge Gottschall and Judge Holderman, respectively, held that the Illinois Court

of Claims did not have exclusive jurisdiction over comparable claims against Devine. *Patterson*,

328 F. Supp. 2d at 887 (holding that plaintiff's state law charges against Devine did "not belong

in the Court of Claims" because plaintiff "accuses [Devine] of acting intentionally and

maliciously in violation of Illinois state law"); *Orange*, 2005 WL 742641, at *18 (holding that

"the Illinois Court of Claims exclusive jurisdiction does not apply" because plaintiff's

---

[14] The County Defendants, in their reply, argue that Plaintiff's allegation that "Devine committed the acts alleged above under color of law and in the scope of their [sic] employment as an employee of Cook County and its State's Attorneys' Office," (R. 1-1; Compl. at ¶ 109), precludes Plaintiff from asserting that Devine acted in excess of his authority. The Court disagrees. Whether Devine acted within the scope of his authority as State's Attorney of Cook County is a legal conclusion that the Court need not accept as true on a motion to dismiss. *See Hickey*, 287 F.3d at 658. Accordingly, Plaintiff's allegation that Devine acted within the scope of his employment does not require the Court to find that sovereign immunity protects Devine. *See Bartholet v. Reishauer A.G.*, 953 F.2d 1073, 1078 (7th Cir. 1992) (a "complaint need not identify a legal theory, and specifying an incorrect theory is not fatal").

allegations against Devine "relate to actions clearly outside [his] authority" and Devine "participated in actions that deprived [plaintiff] of various constitutional rights"). For these reasons, the Illinois Court of Claims does not have exclusive jurisdiction over Plaintiff's state law tort claims against Devine.

### C. Devine's Personal Liability

Plaintiff alleges several causes of action against Devine in his individual capacity. The County Defendants assert that Plaintiff cannot sue Devine in his individual capacity because he does not allege that Devine "was personally involved in the alleged depravation of his constitutional rights." (R. 45-1; County Defs.' Mot. to Dismiss at 4.) They rely on *Wolf-Lillie v. Sonquist*, 699 F.2d 864 (7th Cir. 1983), for the proposition that "[a]n *individual* cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation." 699 F.2d at 869 (emphasis in original). According to the County Defendants, Plaintiff cannot make the requisite showing of participation in the alleged constitutional deprivations because "Mr. Devine was not in office at the time plaintiff was indicted, at the time plaintiff was tried, at the time he was convicted, or at the time the Illinois Supreme Court affirmed plaintiff's conviction."[15] (R. 45-1; County Defs.' Mot. to Dismiss at 5.)

The courts in *Patterson* and *Orange* correctly rejected this precise argument. In *Patterson*, the court found unpersuasive "Devine's argument that he cannot be held individually

---

[15] The County Defendants also argue on reply that "plaintiff does not allege that Devine knew any specific exculpatory information regarding Cannon." (R. 76-2; County Defs.' Reply at 3.) Contrary to the County Defendants' assertion, Plaintiff specifically alleges that Devine was "informed of a wealth of compelling evidence that [his] clients, including Burge, Byrne and Dignan, were centrally involved in a pattern and practice of torturing suspects, *including Plaintiff*." (R. 1-1; Compl. at ¶ 53) (emphasis added).

liable for depriving Patterson of his right to a fair trial because 'he was not in office when Patterson was indicted, when his trial occurred, or when the Illinois Supreme Court affirmed his conviction.'" 328 F. Supp. 2d at 893. The court in *Patterson* explained that allegations of Devine's suppression of exculpatory evidence and defamatory statements, which purportedly resulted in the denial of plaintiff's right to a fair post-conviction proceeding, were sufficient to support claims against Devine for individual liability under § 1983. *Id*. at 893-94. Similarly, in *Orange*, the court held that plaintiff "successfully state[s] claims against Devine in his personal capacity upon which relief may be granted" because plaintiff "alleged that Devine has made public statements defaming him . . . [and] took actions while he was in private practice during his representation of Burge and then later as the State's Attorney of Cook County to deny Orange his constitutional rights." 2005 WL 742641, at *19. In this case, as in *Patterson* and *Orange*, Plaintiff alleges that Devine suppressed evidence of torture – including evidence of Plaintiff's torture – made false public statements discrediting evidence of torture, refused to investigate allegations of torture and abuse, and used his position to maintain the wrongful conviction and imprisonment of Plaintiff and other victims of torture. (R. 1-1; Compl. at ¶54.) These allegations are sufficient to support claims against Devine in his individual capacity.

### D. Prosecutorial Immunity

The County Defendants assert that "Mr. Devine is absolutely immune from suit based upon any prosecutorial function that he performs, including the determination of the position of the State's Attorney's office in response to post-conviction petitions or appeals." (R. 45-1; County Defs.' Mot. to Dismiss at 1.) The County Defendants' failure to provide the Court with

any developed legal argument in support of their one-sentence conclusion waives their prosecutorial immunity argument. *See Berkowitz*, 927 F.2d at 1384 ("We repeatedly have made clear that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived."); *see also Estate of Moreland*, 395 F.3d at 759 ("Perfunctory or undeveloped arguments are waived.").

### E.      False Arrest and Imprisonment Claims (Counts II, VII)

Counts II and VII allege that Devine, along with the City Defendants, falsely arrested and falsely imprisoned Plaintiff in violation of the Fourth and Fourteenth Amendments and state law. In their opening brief, the County Defendants only address Plaintiff's § 1983 claim against Devine for false arrest. They argue that Devine did not participate in Plaintiff's arrest, and as such, Plaintiff cannot state a claim against Devine for false arrest. In his response, "Plaintiff concedes that Defendant Devine is not responsible for Plaintiff's false arrest." (R. 62-1; Pl.'s Resp. to County Defs.' Mot. to Dismiss at 8 n.4.) Accordingly, the Court dismisses Plaintiff's false arrest causes of action as to Devine.

The County Defendants do not develop any argument challenging Plaintiff's false imprisonment claim against Devine until their reply. Arguments raised for the first time in a reply, however, are waived. *Luellen*, 350 F.3d at 612 n.4. Therefore, the Court denies the County Defendants' motion to dismiss Plaintiff's false imprisonment claims as to Devine.

### F.      Deprivation of Access to the Courts (Count V)

Count V alleges that Devine, along with a number of City Defendants, deprived Plaintiff of his right of access to the courts by his "obstruction of justice and suppression of evidence

favorable to and exonerating of the Plaintiff."[16]  (R. 1-1; Compl. at ¶ 81.)  The Supreme Court

recognizes two categories of denial of access to courts claims: (1) "systemic official action [that]

frustrates a plaintiff or plaintiff class in preparing and filing suits at the present time"; and (2)

"specific cases that cannot now be tried (or tried with all material evidence), no matter what

official action may be in the future."  *Christopher v. Harbury*, 536 U.S. 403, 413-14, 122 S. Ct.

2179, 2185-86, 153 L. Ed. 2d 413 (2002).  This case fits into the second category.  To allege a

claim for the denial of access, Plaintiff must plead allegations describing: (1) "the underlying

cause of action, whether anticipated or lost;" (2) "the official acts frustrating the litigation;" and

(3) in cases that "look[] backward," "a remedy that may be awarded as recompense but not

otherwise available in some suit that may yet be brought."  *Id*. at 415, 122 S. Ct. at 2187.

The County Defendants argue that Count V fails as a matter of law because "plaintiff is

able to bring his underlying claims" and "does not, and cannot, identify any claim which has

been lost, or for which he cannot receive recovery in the present lawsuit."  (R. 45-1; County

Defs.' Mot. to Dismiss at 8-9.)  The Court agrees.  In *Christopher*, the Supreme Court explained

that

> the underlying cause of action, whether anticipated or lost, is an element that must be
> described in the complaint, just as much as allegations must describe the official acts
> frustrating the litigation.  It follows, too, that when the access claim (like this one) looks
> backward, the complaint must identify a remedy that may be awarded as recompense but
> not otherwise available in some suit that may yet be brought.  There is, after all, no point
> in spending time and money to establish the facts constituting denial of access when a
> plaintiff would end up just as well off after litigating a simpler case without the denial-of-
> access element.

---

[16] The Court does not address the effect of the 1988 Stipulation on Plaintiff's denial of
access claim against the County Defendants because the 1988 Stipulation does not release any
claims against the County Defendants, and, as Plaintiff concedes, Devine was not involved with
obtaining the 1988 Stipulation.

536 U.S. at 415, 122 S. Ct. at 2187.  Accordingly, "the complaint should state the underlying claim in accordance with Federal Rule of Civil Procedure 8(a), just as if it were being independently pursued, and a like plain statement should describe any remedy available under the access claim presently unique to it."  *Id*. at 417, 122 S. Ct. at 2188 (footnote omitted). Plaintiff alleges that he has lost his claims of torture (Count III) and coercive interrogation (Count IV).  (R. 1-1; Compl. at ¶ 81.)  Plaintiff, however, does not allege these causes of action against the County Defendants.  Indeed, Plaintiff does not allege that the County Defendants' actions caused the loss of any underlying claim.  *See Patterson*, 328 F. Supp. 2d at 898 ("The allegations contained in Patterson's right of access claim are deficient, for they do not plead a short and plain statement of the underlying claims and do not establish that Patterson has been denied adequate legal redress for any legitimate claim.").  Therefore, the Court grants the County Defendants' motion to dismiss Count V.

### G.    Conspiracy Claim Against Devine (Count X)

The County Defendants request that the Court dismiss Plaintiff's conspiracy claim for two reasons.  First, the County Defendants argue that the Court lacks jurisdiction over Plaintiff's state law conspiracy claim because the Illinois Court of Claims has exclusive jurisdiction over Plaintiff's state law claims.  As discussed above, however, the Illinois Court of Claims does not have exclusive jurisdiction over Plaintiff's state law tort claims against Devine.  Second, the County Defendants argue that Plaintiff's conspiracy claim fails because Plaintiff does not state any viable underlying claims against Devine.  Because the Court upholds Counts I, II, VII, VIII, and IX as to Devine, this argument also fails.

### H.    Malicious Prosecution (Count VIII)

Count VIII alleges a state law claim for malicious prosecution against Devine.  As stated above, under Illinois law, "to establish a malicious prosecution action, the plaintiff must allege facts showing: '(1) the commencement or continuance of an original criminal or civil judicial proceeding by the defendant; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for such proceeding; (4) the presence of malice; and (5) damages resulting to the plaintiff.'"  *Swick*, 169 Ill.2d at 512, 662 N.E.2d at 1242, 215 Ill. Dec. at 102 (quoting *Joiner*, 82 Ill.2d at 45, 44 Ill. Dec. at 263, 411 N.E.2d at 232 (quotation omitted)).  "The absence of any one of these elements bars a plaintiff from pursuing the claim."  *Swick*, 169 Ill.2d at 512, 662 N.E.2d at 1242, 215 Ill. Dec. at 102 (citation omitted).

The County Defendants argue that Plaintiff fails to meet the second element – termination of the underlying proceeding in favor of the plaintiff.  The Illinois Supreme Court has explained that "[i]n regard to the second element, a malicious prosecution action cannot be predicated on underlying criminal proceedings which were terminated in a manner not indicative of the innocence of the accused."  *Id.*  At the pleading stage of the litigation, "it is sufficient for the court to find that it is possible for plaintiff to prove facts that establish his allegation that the 'charges were resolved in plaintiff's favor.'"  *Evans v. City of Chicago*, No. 00-7222, 2001 WL 1028401, at *12 (N.D. Ill. Sept. 6, 2001) (internal quotations omitted).  Here, Plaintiff specifically alleges that Devine, among others, "initiated a malicious prosecution without probable cause against Plaintiff" that "was ultimately terminated in Plaintiff's favor."  (R. 1-1; Compl. at ¶ 93.)  Plaintiff further alleges that

> In 1997, the Illinois Appellate Court ordered that Plaintiff receive a new motion to suppress hearing at which he be permitted to present all the newly discovered evidence of torture and abuse which had been uncovered since his 1984 motion to suppress hearing. At this remand hearing, which commenced in 1999, the Plaintiff presented a wealth of

newly discovered evidence of torture and abuse. The State's Attorney's Office, rather than to again elicit the knowingly false and perjured testimony of the Defendant Officers, dismissed Plaintiff's case on April 14, 2004.

(*Id*. at ¶¶ 59-60.) These allegations are sufficient.

The County Defendants' arguments, based on documents and pleadings from Plaintiff's underlying criminal case, do not require a different result. In essence, they are asking the Court to make a finding of fact that the underlying criminal case was not terminated in Plaintiff's favor because it resulted from an agreement or a compromise. In deciding a motion to dismiss, however, "the court cannot weigh the facts-the court must assume that plaintiff's allegations are true." *Evans*, 2001 WL 1028401, at *12. Accordingly, Plaintiff's malicious prosecution claim against Devine survives.[17]

### I.      Section 9-102 Indemnity Claim (Count XII)

Count XII is an indemnification claim that seeks judgment against the County and the State's Attorney's Office for any amount awarded to Plaintiff for Devine's alleged violations pursuant to the Illinois Tort Immunity Act, 745 ILCS 10/9-102. Because the Court holds that the Eleventh Amendment bars Plaintiff's claims against the Cook County State's Attorney's Office, the Court addresses the validity of Count XII only as to the County. *See Orange*, 2005 WL 742641, at *21.

The County Defendants argue that the Court cannot hold the County liable for indemnification because Devine is not an employee of the County. The Court agrees that Devine is an officer of the State, not an employee of the County. *See Biggerstaff v. Moran*, 284 Ill. App.

---

[17] The Court rules on this issue without relying on the documents the County Defendants attach to their brief and without addressing the propriety of attaching those documents to the brief.

3d 196, 199-200, 671 N.E.2d 781, 784, 219 Ill. Dec. 614, 617 (1ˢᵗ Dist. 1996) (citing *Ingemunson v. Hedges*, 133 Ill.2d 364, 367-70, 140 Ill. Dec. 397, 398-400, 549 N.E.2d 1269, 1270-72 (Ill. 1990)).  However, the fact that Devine is not an employee of the County is not dispositive. Indeed, as the County Defendants concede, "under the Seventh Circuit's decision in *Robinson v. Sappington*, 351 F.3d 317 (7ᵗʰ Cir. 2003), the County has a duty to indemnify claims brought against State officials where the County funds the office of that state official" and "the County funds the [State's Attorney's Office]."  (R. 45-1; County Defs.' Mot. to Dismiss at 14.) *Robinson* relied on the Illinois Supreme Court's decision in *Carver v. Sheriff of La Salle County*, 203 Ill.2d 497, 787 N.E.2d 127, 272 Ill. Dec. 312 (Ill. 2003), which, in answering a question the Seventh Circuit certified, held that "[b]ecause the office of the sheriff is funded by the county, the county is therefore required to pay a judgment entered against a sheriff's office in an official capacity."  *Carver*, 203 Ill.2d at 522, 787 N.E.2d at 141, 272 Ill. Dec. at 326.  Furthermore, in *Wallace v. Masterson*, 345 F. Supp. 2d 917 (N.D. Ill. 2004), the court found that "the *Carver* cases mandate that the County must pay for a tort judgement entered against Masterson [a Cook County Sheriff's Deputy Officer sued in his personal capacity] for which the Sheriff is directed to pay by § 9-102 or is found vicariously liable under the doctrine of *respondeat superior*."  345 F. Supp. 2d at 925.  Therefore, finding that Devine was not an employee of the County does not automatically release the County from liability for indemnification.

The County Defendants further argue that Plaintiff's indemnification claim against the County must fail because all of Plaintiff's underlying state and federal claims against the County Defendants fail as a matter of law.  The Court, however, does not dismiss all of Plaintiff's claims against the County Defendants.  The County Defendants' arguments, therefore, do not require

the Court to dismiss Count XII as to the County.[18]

**J.      Collateral Estoppel**

For the first time in their reply, the County Defendants raise the issue of collateral estoppel.  The County Defendants do not develop this argument.  Instead, they purport to adopt the City Defendants' arguments regarding collateral estoppel.  As an initial matter, "perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived."  *Berkowitz*, 927 F.2d at 1384; *see also Estate of Moreland*, 395 F.3d at 759.  Furthermore, arguments raised for the first time in a reply are waived.  *Luellen*, 350 F.3d at 612 n.4.  Accordingly, the County Defendants' collateral estoppel argument is waived.[19]

---

[18]   The Court notes that it does not hold as a matter of law that the County is liable for indemnification.  Instead, the Court holds only that based on the arguments before it, dismissing this cause of action as to the County at this stage is inappropriate.

[19] The Court notes that even if the County Defendants had properly raised the issue of collateral estoppel, for the reasons set forth above, the Court declines to address the purported applicability of the doctrine of collateral estoppel at this time.

## CONCLUSION

For these reasons, the Court grants in part and denies in part the City Defendants' motion to dismiss, and the Court grants in part and denies in part the County Defendants' motion to dismiss.

Dated: February 2, 2006                                    ENTERED:

_____
AMY J. ST. EVE
United States District Court Judge