IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DARRELL CANNON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 05 C 2192 |
| | ) | |
| FORMER CHICAGO POLICE LT. | ) | |
| JON BURGE, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Before the Court is Plaintiff Darrell Cannon's Motion to Compel the Deposition Testimony of Chicago Mayor Richard M. Daley. In his original Complaint, Cannon alleged that certain personnel with the City of Chicago, the Cook County State's Attorney's Office, Cook County, and the City itself violated his civil rights by torturing him during interrogations held at the Chicago Police Department's Area 2 Detective Division under the direction of Former Chicago Police Lieutenant Jon Burge. In a recent order, the Court granted in part and denied in part Cannon's Motion for Leave to File an Amended Complaint. Relevant to this motion, the Court denied Cannon's motion to add Mayor Daley and former Chicago Mayor Jane Byrne as Defendants to this lawsuit, and Cannon's attempt to add a claim under the federal Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 *et seq.* For the following reasons, the Court denies Cannon's Motion to Compel the Deposition of Mayor Daley without prejudice with leave to refile if and when the Court lifts the stay of *Monell* discovery in this matter.

## LEGAL STANDARD

"Parties may obtain discovery regarding any matter, not privileged, *that is relevant to the claim or defense of any party*.... Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1) (emphasis added). In the context of motions to compel, the Seventh Circuit instructs that a "district court may grant or deny the motion in whole or in part, and similar to ruling on a request for a protective order under Rule 26(c), the district court may fashion a ruling appropriate for the circumstances of the case." *Gile v. United Air Lines, Inc.,* 95 F.3d 492, 496 (7th Cir. 1996) (citing Fed.R.Civ.P. 37(a)(4)(B), (C)). "Thus, a district court is not limited to either compelling or not compelling a discovery request; in making its ruling, a district court should independently determine the proper course of discovery based upon the arguments of the parties." *Id*. As with all discovery matters, district courts have broad discretion in determining motions to compel. *See id*.; *see also Reynolds v. Jamison,* 488 F.3d 756, 761 (7th Cir. 2007).

## BACKGROUND

On November 13, 2006, the Court granted in part and denied in part the City's motion to bar discovery and trial of policy claims brought pursuant to *Monell v. Department of Soc. Servs. of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). (R. 163-1, 11/13/06, *Monell* Discovery Order.) Specifically, the Court stayed "'purely *Monell*' fact and expert discovery through the resolution of any summary judgment motions on the liability of the individual defendants." (*Id.* at 1.) The Court also reasoned:

> The Court is confident in the ability of parties' counsel to differentiate between "*Monell*" discovery and discovery directed at the claims against the other

> defendants. While some blurring may occur at the outer boundaries – and
> Defendants are advised to give Plaintiff leeway in investigating those areas – it
> generally is not difficult to discern whether discovery is directed at violations
> committed against Cannon by specific named defendants or at the broad policies
> and practices of the City of Chicago. The Court accordingly finds that a stay on
> *Monell* discovery will provide significant efficiency benefits in this case.

(*Id.* at 3.)

On November 10, 2006, Cannon noticed Mayor Daley for a deposition to take place on December 18, 2006. (R. 188-2, Mot. Compel, Ex. A.) The City objected to the deposition notice based on the Court's order staying *Monell* discovery, among other factors. (Mot. Compel, Ex. B, 12/12/06 letter.) Meanwhile, on February 21, 2007, Magistrate Judge Brown ordered Mayor Daley to sit for a deposition concerning *Monell* discovery in a similar matter, *Hobley v. Burge*, No. 03 C 3678, 2007 WL 551569 (N.D. Ill. Feb. 22, 2007). Thereafter, Cannon wrote the City seeking reconsideration of its objection based on Judge Brown's decision, as well as Cannon's unsuccessful attempt to add Mayor Daley as a Defendant to this action. (Mot. Compel, Ex. C, 2/26/07 letter.) The City maintains its objection to Mayor Daley's deposition.

## ANALYSIS

**I.     Depositions of Public Officials**

As the Seventh Circuit has recognized, "depositions of public officials create unique concerns." *Stagman v. Ryan,* 176 F.3d 986, 994-95 (7th Cir. 1999); *see also Crawford-El v. Britton,* 523 U.S. 574, 597-98, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998) (district court "must exercise its discretion so that officials are not subjected to unnecessary and burdensome discovery or trial proceedings."). Specifically, public officials "should not have to spend their time giving depositions in cases arising out of the performance of their official duties unless there is some reason to believe that the deposition will produce or lead to admissible evidence."

3

*Olivieri v. Rodriguez*, 122 F.3d 406, 409-10 (7th Cir. 1997). Thus, the Court must determine whether Mayor Daley's deposition will produce or lead to admissible evidence in this matter within the parameters of the Court's order staying *Monell* discovery. *See Bagley v. Blagojevich,* 486 F.Supp.2d 786, 789 (C.D. Ill. 2007); *see also Hobley,* 2007 WL 551569, at *2 ("A party seeking the deposition of a high ranking official should first demonstrate that there is some reason to believe that the deposition will produce or lead to admissible evidence.").

## II.     Magistrate Judge Brown's Decision

Because Cannon relies on Magistrate Judge Brown's decision in *Hobley*, a summary of the underlying facts and the court's decision concerning Hobley's "Renewed Motion to Compel the Consolidated *Monell* Deposition of Richard M. Daley" is helpful:

> Mr. Daley was the State's Attorney during the time when Hobley, an African-American, alleges he was subjected to constitutional violations by Chicago police, including defendant Jon Burge. The State's Attorney and his assistants prosecute criminal charges brought by Chicago police. There is evidence that in February 1982, the State's Attorney's office, and perhaps Mr. Daley personally, was put on notice of allegations of physical abuse of suspects by Chicago police through a letter to Mr. Daley from the then-Superintendent of Police Richard Brzeczek. Mr. Brzeczek's letter states that he is enclosing a letter from the Medical Director of Cermak (Prison) Health Services which describes injuries appearing on defendant Andrew Wilson, an African-American suspected in the murder of Chicago police officers. Apparently, nothing was done to follow up on the issues raised by the two letters. Mr. Wilson's conviction was reversed by the Illinois Supreme Court. *People v. Wilson,* 116 Ill.2d 29, 106 Ill.Dec. 771, 506 N.E.2d 571 (Ill. 1987). Recently, the Special Prosecutor who investigated allegations of abuse by Chicago police officers concluded that there was enough evidence of mistreatment of Andrew Wilson by Jon Burge to establish guilt beyond a reasonable doubt. The Special Prosecutor's report also stated, "There are many other cases which lead us to believe or suspect that the claimants were abused, but proof beyond a reasonable doubt is absent."
>
> Since the release of the Special Prosecutor's report, Mr. Daley has stated that he believes Mr. Brzeczek's letter was referred at the time to the appropriate professionals within the State's Attorney's Office. Testimony obtained by the Special Prosecutor from other witnesses suggests that the Brzeczek letter was

4

received and considered by highly-placed members of the State's Attorney's staff, possibly including Mr. Daley. Notably, after Mr. Wilson was convicted, Mr. Daley, in his position as State's Attorney, publicly honored Burge and other police officers for their work on the case. These facts, among other circumstances cited in Hobley's motion, support a conclusion that Mr. Daley may have information about the activities of Burge and other police officers, about who in the City and police administration knew about those activities, and about whether any action was taken on the basis of such knowledge. ***Such information could well lead to potentially admissible evidence regarding whether the mistreatment of the African-American suspects reflected a policy or practice by the City that denied equal protection of the laws to those suspects.***

*Id.*, 2007 WL 551569, at *2-3 (internal citations omitted) (emphasis added). Not only did Hobley's motion concern *Monell* discovery, the *Hobley* court did not stay *Monell* fact and expert discovery through the resolution of the parties' summary judgment motions on the liability of the individual defendants.

### III. Cannon's Motion to Compel

In Cannon's motion to compel, he argues that Mayor Daley is an important fact witness, although Cannon did not identify Mayor Daley as a fact witness in his Federal Rule of Civil Procedure 26(a)(1) initial disclosures.[1] (*See* R. 205-1, City's Resp. Brief, Ex. 3.) Nonetheless, Cannon bases his motion to compel upon information disclosed since the release of the July 19, 2006, Special Prosecutor Investigation Report concerning torture at Chicago Police Department

---

[1] In the *Monell* discovery order, the Court noted:

> The recent self-serving effort in Cannon's Amended 26(a) Disclosures to categorize witnesses previously described as *Monell* witnesses as also qualifying as "fact witnesses" or "404(b) witnesses" – a clear effort to create a perception of overlap among *Monell* issues and other issues in the case – does not change the analysis. In fact, the amended disclosures merely underscore how Cannon and other similarly situated plaintiffs clearly classified these witnesses before the present motion clouded their perspective.

(R. 163-1, 11/13/06, *Monell* Discovery Order, at 3.)

5

Area 2. Specifically, Cannon sets forth the Brzeczek letter in the Wilson matter arguing that Mayor Daley's deposition would produce or lead to admissible evidence that Mayor Daley knew about exculpatory evidence in Wilson's arrest, and that this evidence is central to Cannon's *Brady* violation claim. (R. 188-1, Pl.'s Mot. Compel, at 3-4.) Cannon, however, fails to explain how exculpatory evidence in the Wilson matter would lead to admissible evidence concerning the facts surrounding his individual *Brady* claim. Cannon also argues that the new evidence uncovered by the Special Prosecutor's report concerns Mayor Daley's decision, as the State's Attorney of Cook County, to seek the death penalty against him. (*Id.* at 5.) Again, Cannon fails to argue how Mayor Daley's decision to seek the death penalty against him implicates Cannon's claims against the individual Defendants in this matter.

Cannon lists additional areas of inquiry regarding the proposed deposition of Mayor Daley, including:

> (1) Daley's and Devine's role in deciding not to prosecute Burge for the torture of Andrew Wilson;
>
> (2) Daley's and Devine's role in the disappearance of the original file stamped copy of the Brzeczek letter;
>
> (3) Daley's and Devine's role in suppressing the Brzeczek letter and the torture evidence contained therein from Wilson, Plaintiff Cannon, and other criminal defendants who alleged torture by Burge and his men;
>
> (4) Daley's and Devine's knowledge of the numerous other torture cases that arose when Daley was State's Attorney and their role in refusing to prosecute Burge, Byrne, Dignan, and other Area 2 torturers for any of these acts of torture;
>
> (5) Daley's public statements concerning the Plaintiff after his November 1983 arrest;
>
> (6) Daley's May 1983 public commendation of Burge for his role in the Wilson case;
>
> (7) Daley's role in prosecuting Plaintiff and his and Devine's role in prosecuting the numerous other victims of torture; his decision to seek the death penalty in Cannon's case

and his and Devine's decision to seek the death penalty in numerous other torture victims' cases;

(8) Daley's role in deciding not to investigate or prosecute Burge for the torture of Andrew Wilson after the 1987 Illinois Supreme Court reversal of Wilson's conviction and death sentence on the basis of evidence that he was tortured;

(9) Daley's role in the appointment of Devine's law firm to re-prosecute Wilson after the Supreme Court decision;

(10) Daley's listing by Devine's law firm as a witness for Jon Burge in the 1989 Wilson civil torture trials;

(11) Daley's role, with Defendants Martin and Shines, in suppressing, then subsequently attempting to publicly discredit, *inter alia*, by making press statements, the Goldston Report which found that Burge, Byrne, Dignan, and other Area 2 detectives engaged in "systematic" torture and abuse at Area 2, that those cases included Plaintiff's, and that command officials, including Defendant Martin, were aware of, condoned, and participated in the torture and abuse;

(12) Daley's and Martin's role in refusing to investigate or prosecute Burge, Byrne, Dignan, and other Area 2 detectives for this "systematic" torture after they received the Goldston Report findings;

(13) Daley's 1996 meritorious promotion of Defendant Dignan to Lieutenant, despite the findings of several OPS investigators that Dignan and Byrne had electric shocked and otherwise tortured and abused Plaintiff and several other African American suspects;

(14) Daley's and Devine's involvement in the Special Prosecutors' investigation and their issuance of a report which attempted to discredit Plaintiff and other victims of torture while absolving Daley and Devine of responsibility;

(15) Daley's role in deciding to continue to defend Burge, Byrne, and Dignan in *Cannon* and the other civil torture cases against the advice of his Chief of Staff and even after they took the Fifth Amendment in their Answers, in their interrogatories, and at their original depositions;

(16) Daley's 2006 statements to the Special Prosecutor, and his June 2006 meeting with Devine and Police Superintendent Cline during which he briefed Devine, who was to give his statement to the Special Prosecutor in the next few days, as to what he had told the Special Prosecutor; and

(17) Daley's July 21, 2006 public statements condemning the "pattern" of torture and abuse at Area 2 as "shameful," accepting his "share of the responsibility," and offering to

apologize to the victims.

(Mot. Compel, at 6-7.) The Court notes that the overwhelming majority of Cannon's specific areas of inquiry and arguments in his opening brief are the same arguments made in Hobley's Renewed Motion to Compel the Consolidated *Monell* Deposition of Richard M. Daley. (*See* 03 C 3678, *Hobley v. Burge*, R. 680-1, Mot. Compel, at 5-16.) In fact, Cannon's arguments in support of his motion to compel mainly focus on Mayor Daley's involvement in the Wilson matter and not Cannon's individual case. (*See* Mot. Compel, at 2-7.)[2]

Cannon argues that these areas of examination are relevant to his allegations against Mayor Daley in the First Amended Complaint, but, as discussed, Mayor Daley is not a Defendant in this lawsuit. Meanwhile, Cannon admits that "some" of these areas are also relevant to his *Monell* claims. (Mot. Compel, at 8.) Actually, the majority of these inquiries are strictly *Monell* related, including inquires 1, 2, 4, 6, 8, 9, 10, 11, 12, 16, and 17. The other inquiries – in which Cannon attempts to inject his case into factual matters concerning the Wilson case – are questionable at best, especially in light of Cannon's failure to explain how these areas of inquiry will produce or lead to admissible evidence concerning his claims against the individual Defendants in this lawsuit. *See Chicago Reader, Inc. v. Sheahan,* 192 F.R.D. 586, 587 (N.D. Ill. 2000) (question is whether there is "real need" to take deposition in plaintiff's effort to prove case). As such, the information Cannon seeks is not relevant to any of his non-*Monell* claims. *See* Fed.R.Civ.P. 26(b)(1).

Finally, Cannon argues that the Mayor's deposition is appropriate because he was a

---

[2] In his motion to compel, Hobley argued that the Wilson case was the "bedrock" of his *Monell* claims. (03 C 3678, *Hobley v. Burge*, R. 680-1, Mot. Compel, at 5.)

"*Monell* policymaker" which is in direct contradiction with the Court's order staying *Monell* discovery. As discussed, the overwhelming majority of Cannon's arguments focus on *Monell* discovery and not fact discovery relevant to his other claims. Without more, the Court cannot grant Cannon's motion to compel merely because Mayor Daley is Chicago's Mayor and the former Cook County State's Attorney.[3]

As the Seventh Circuit directs, there must be some reason to believe that the deposition of Mayor Daley will lead to or produce admissible evidence in Cannon's claims against the individual Defendants. *See Olivieri*, 122 F.3d at 410. Based on the parties' arguments, *see Gile*, 95 F.3d at 496, as well as Cannon's allegations against the individual Defendants and the Court's stay of *Monell* discovery, Cannon's proposed areas of inquiry would not lead to or produce admissible evidence concerning his claims against the individual Defendants. Cannon's present motion is an obvious attempt to obtain *Monell* discovery. Therefore, the Court denies Cannon's motion to compel Mayor Daley's deposition without prejudice with leave to refile if and when the Court lifts the *Monell* discovery stay. The Court's denial without prejudice is not an indication that Cannon's areas of inquiry are discoverable after the Court lifts the *Monell* discovery stay.

## **CONCLUSION**

For these reasons, the Court denies Cannon's Motion to Compel the Deposition

---

[3] The Court recognizes that Mayor Daley's position as a public official cannot be the basis for denying Cannon's motion to compel. *See Clinton v. Jones,* 520 U.S. 681, 703-04, 117 S.Ct. 1636, 137 L.Ed.2d 945 (1997); *United States v. Nixon,* 418 U.S. 683, 706, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974).

9

Testimony of Chicago Mayor Richard M. Daley without prejudice.

Dated: August 20, 2007

                                                     **ENTERED**

                                        _____
                                        **AMY J. ST. EVE**
                                        **United States District Court Judge**