## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| DARRELL CANNON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 05 C 2192 |
| | ) | |
| FORMER CHICAGO POLICE LT. JON | ) | Judge Amy St. Eve |
| BURGE, et al., | ) | |
| | ) | Magistrate Judge Marvin Ashman |
| Defendants. | ) | |

## DEFENDANT CITY OF CHICAGO'S ANSWER TO PLAINTIFF'S
## FIRST AMENDED COMPLAINT

Defendant, City of Chicago, by its attorneys, Terrence M. Burns of Dykema Gossett PLLC, for its answer to plaintiff's first amended complaint, states:

## I.    INTRODUCTION

1.    This is a civil rights action brought pursuant to 42 U.S.C. § 1983 et seq.; the Judicial Code, 28 U.S.C. §§ 1331 and 1343(a); the Constitution of the United States; and pendent jurisdiction, as codified in 28 U.S.C. § 1367(a).

**ANSWER:**    Defendant City admits plaintiff's first amended complaint includes claims that

invoke 42 U.S.C. Section 1983.  Defendant City denies any liability to plaintiff for any of the

claims asserted in the first amended complaint, including those invoking 42 U.S.C. Section 1983.

Defendant City admits 28 U.S.C. §1367(a) provides for supplemental jurisdiction over certain

claims, but denies that it codifies pendent jurisdiction.

2.    This Court has jurisdiction of the action pursuant to 28 U.S.C. § 1331.  Venue is proper under 28 U.S.C. § 1391(b).  The parties reside, or, at the time the events took place, formerly resided in this judicial district, and the events giving rise to the claims asserted herein occurred here as well.

**ANSWER:**    Defendant City admits that this Court has jurisdiction over this action.  Defendant

City further admits that venue is proper in the United States District Court, Northern District of

Illinois. Defendant City is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 2.

## II.    PARTIES

3.    Plaintiff Darrell Cannon is an African-American man, and a citizen of the United States.

**ANSWER:**    Defendant City admits plaintiff is an African American male, and that police reports from 1983 indicate he gave a home address in Chicago, Illinois. Defendant City is without knowledge or information sufficient to form a belief as to the truth or falsity of any information provided by plaintiff. Defendant City is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 3.

4.    Defendant Jon Burge was a duly appointed and sworn Chicago Police Lieutenant and the commanding officer of Chicago Police Area 2 Detective Violent Crimes Unit. Burge was the commanding officer of Defendants John Byrne, Peter Dignan, Charles Grunhard, Michael Bosco, Ray Binkowski, Ray Madigan, and Daniel McWeeny; engaged in the conduct complained of in the course and scope of his employment; and is sued in his individual capacity. Defendant Burge engaged in a pattern and practice of torture and brutality himself, and also supervised, encouraged, sanctioned, condoned and ratified brutality and torture by other detectives, including, but not limited to, the police officer Defendants named herein. In 1988, Burge was promoted to Commander of Area 3 Detective Division by Defendant Martin and held this assignment until 1991, when he was suspended and, ultimately, fired by the Chicago Police Department for the torture and abuse of Andrew Wilson.

**ANSWER:**    Defendant City admits plaintiff has sued Defendant Burge in his individual capacity. Defendant City admits that Defendant Burge was a duly appointed and sworn Chicago police officer at certain time periods alleged in the first amended complaint, including in and around November 1983. Defendant Burge was promoted to Lieutenant in approximately 1980, and he was assigned as commanding officer of Area 2 Violent Crimes in 1981. Defendant City states that John Byrne, Peter Dignan, Charles Grunhard, Michael Bosco, Ray Binkowski, Ray Madigan, and Daniel McWeeny were police officers assigned to Area 2 at certain time periods

2

alleged in the first amended complaint. In 1988, Defendant Burge became Commander of Area 3. The United States Court of Appeals, Seventh Circuit, has determined that a Chicago police officer, while engaged on police business, is "acting squarely within the scope of his employment" unless he "commits a wrong designed to advance his purely private interests." *Wilson v. City of Chicago*, 120 F.3d 681, 685 (7th Cir. 1997). To the extent the conduct alleged against Defendant Burge in plaintiff's first amended complaint is the same as or closely similar to the conduct at issue in *Wilson*, then the City admits such conduct would be deemed under *Wilson* to be within the officer's scope of employment. Defendant City admits it sought Defendant Burge's termination from the Chicago Police Department in proceedings before the Police Board of the City of Chicago, and that in 1993, Defendant Burge was separated from the Chicago Police Department by the Police Board for violations of departmental rules and regulations with respect to his conduct concerning Andrew Wilson. Defendant City is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained within paragraph 4.

5.      Defendant John Byrne was a duly appointed and sworn Chicago Police Sergeant in the Chicago Police Area 2 Detective Violent Crimes Unit. Byrne was the supervisor of Defendants Peter Dignan, Charles Grunhard, Michael Bosco, Ray Binkowsi, Raymond Madigan, and Daniel McWeeny; engaged in the conduct complained of in the course and scope of his employment; and is sued in his individual capacity. Defendant Byrne, like Defendant Burge, engaged in a pattern and practice of torture and brutality himself, and also supervised, encouraged, sanctioned, condoned and ratified brutality and torture by other detectives, including, but not limited to, the police officer Defendants named herein.

**ANSWER:**      Defendant City admits that plaintiff has sued Defendant Byrne in his individual capacity. Defendant City admits that Defendant Byrne at certain time periods was a duly appointed and sworn Chicago police officer, held the rank of sergeant, and was assigned to Area 2 Violent Crimes. The United States Court of Appeals, Seventh Circuit, has determined that a Chicago police officer, while engaged on police business, is "acting squarely within the scope of

his employment" unless he "commits a wrong designed to advance his purely private interests." *Wilson v. City of Chicago*, 120 F.3d 681, 685 (7th Cir. 1997). To the extent the conduct alleged against Defendant Byrne in plaintiff's first amended complaint is the same as or closely similar to the conduct at issue in *Wilson*, then the City admits such conduct would be deemed under *Wilson* to be within the officer's scope of employment. Defendant City is without knowledge or information sufficient to form a belief as to the truth or falsity of the alleged conduct attributed to Defendant Byrne in the first amended complaint. Defendant City is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 5.

6.    Defendants Peter Dignan, Charles Grunhard, Michael Bosco, Ray Madigan, and Daniel McWeeny (referred to herein collectively, with Defendants Burge and Byrne, as "the Defendant Officers") were duly appointed and sworn Chicago Police detectives who were assigned to the Detective Division at Area 2 Violent Crimes Unit under Defendant Burge's command; engaged in a pattern and practice of torture and brutality themselves; and engaged in the conduct complained of in the course and scope of their employment. The Defendant Officers are sued in their individual capacities.

**ANSWER:**    Defendant City admits Defendants Dignan, Grunhard, Bosco, Madigan, and McWeeney were duly appointed and sworn Chicago police officers in and around November 1983, at which time they were assigned to Area 2 Violent Crimes. Defendant City admits Defendant Burge was commanding officer of Area 2 Violent Crimes in November 1983. The United States Court of Appeals, Seventh Circuit, has determined that a Chicago police officer, while engaged on police business, is "acting squarely within the scope of his employment" unless he "commits a wrong designed to advance his purely private interests." *Wilson v. City of Chicago*, 120 F.3d 681, 685 (7th Cir. 1997). To the extent the conduct alleged against defendant police officers in plaintiff's first amended complaint is the same as or similar to the conduct at issue in *Wilson*, then the City admits such conduct would be deemed under *Wilson* to be within the officers' scope of employment. Defendant City is without knowledge or information

4

sufficient to form a belief as to the truth or falsity of the alleged conduct attributed to the defendant police officers in the first amended complaint. Defendant City admits the defendant police officers are sued in their individual capacities. Defendant City is without knowledge or information sufficient to form a belief as to the truth or falsity of any remaining allegations contained in paragraph 6.

7.      From 1987 to 1992, Defendant Leroy Martin was the Superintendent of Police for the City of Chicago, and as such was responsible for the policies, practices, and customs complained of herein. In 1983, he was Commander of the Area 2 Detective Division and was thereby Defendant Burge's direct supervisor, as well as the command supervisor of Defendant Byrne, and the other Defendant officers. He engaged in the conduct complained of in the course and scope of his employment and is sued in his individual capacity.

**ANSWER:**      Defendant City admits Defendant Martin was the Superintendent of Police from 1987 to 1992. Defendant City admits Defendant Martin served as Commander of Area 2 from February 1983 to December 1983, a period when Defendant Burge was assigned to Area 2. Defendant City admits plaintiff has sued Defendant Martin in his individual capacity. Further, Defendant City admits generally that Defendant Martin would have been acting within the scope of his employment when he was fulfilling his duties and responsibilities as Superintendent of Police for the City of Chicago, but Defendant City is without knowledge or information sufficient to form a belief as to the meaning or truth of the vague phrase "responsible for the policies, practices, and customs complained of herein" as it applies to Defendant Martin. To the extent that "responsible for" as alleged in this paragraph means Defendant Martin "may be held liable in damages for" policies, practices or customs of the Chicago Police Department, Defendant City denies those allegations. Defendant City denies any remaining allegations contained in paragraph 7.

8.      From 1998 to 2004, Defendant Terry Hillard was the Superintendent of Police for the City of Chicago, and as such was responsible for the policies, practices, and customs complained of herein. He engaged in the conduct complained of in the course and scope of his employment and is sued in his individual capacity.

5

**ANSWER:** Defendant City admits Defendant Hillard was the Superintendent of Police for the City of Chicago from 1998 to 2003, and that plaintiff has sued Defendant Hillard in his individual capacity. Defendant City admits generally that Defendant Hillard would have been acting within the scope of his employment in fulfilling his duties and obligations as Superintendent of Police, but Defendant City is without knowledge or information sufficient to form a belief as to the meaning or truth of the vague phrase "responsible for the policies, practices, and customs complained of herein" as it applies to Defendant Hillard. To the extent that "responsible for" as alleged in this paragraph means Defendant Hillard "may be held liable in damages for" policies, practices or customs of the Chicago Police Department, Defendant City denies those allegations. Defendant City denies any remaining allegations contained in paragraph 8.

9. From 1998 to 2002, Defendant Thomas Needham was counsel to, and administrative assistant for, Superintendent Terry Hillard, who was his direct supervisor. He engaged in the conduct complained of in the course and scope of his employment and is sued in his individual capacity.

**ANSWER:** Defendant City admits Defendant Needham was General Counsel to Superintendent Hillard from May 1998 through January 2000, and that Needham then held the position of Chief of Staff with the Chicago Police Department from January 2000 through January 2002. Defendant City admits Superintendent Hillard was Defendant Needham's immediate supervisor in both of those positions. Defendant City admits plaintiff has sued Defendant Needham in his individual capacity. Defendant City admits generally that Defendant Needham would have been acting within the scope of his employment in fulfilling his duties and obligations as general counsel to Superintendent Hillard, but Defendant City is without knowledge or information sufficient to form a belief as to the meaning or truth of the phrase "the conduct complained of" as it applies to Defendant Needham. Defendant City denies Defendant

Needham held a position of "administrative assistant" with the Chicago Police Department. Defendant City denies any remaining allegations contained in paragraph 9.

10.    From 1990 to 1998, Defendant Gayle Shines was the Director of the Office of Professional Standards of the Chicago Police Department.  Her direct supervisor was the Chicago Police Superintendent.  She engaged in the conduct complained of in the course and scope of her employment and is sued in her individual capacity.

**ANSWER:**    Defendant City admits Defendant Shines was the Chief Administrator of the Office of Professional Standards ("OPS") for the Chicago Police Department from 1990 to 1998, and that plaintiff has sued Defendant Shines in her individual capacity.  Defendant City admits the Superintendent of Police is the direct supervisor of the Chief Administrator of OPS. Defendant City admits generally that Defendant Shines would have been acting within the scope of her employment in fulfilling her duties and obligations as Chief Administrator of OPS, but Defendant City is without knowledge or information sufficient to form a belief as to the meaning or truth of the phrase "the conduct complained of" as it applies to Defendant Shines.  Defendant City denies any remaining allegations contained in paragraph 10.

11.    Defendant City of Chicago is an Illinois municipal corporation, and as such is responsible for the policies, practices and customs of the Chicago Police Department, its Office of Professional Standards, its Personnel Division, its Detective Division, and its Superintendent of Police, as well as those of the Mayor and his office, the Corporation Counsel and her Office, and the Chicago Police Board.  The City of Chicago is and/or was the employer of each of the Defendant Officers and Police officials.  The City of Chicago is responsible for the acts of the Defendant Officers and police officials while employed by the City of Chicago and while acting within the scope of their employment.

**ANSWER:**    Defendant City admits it is a municipal corporation duly incorporated under the laws of the State of Illinois.  Defendant City is unable to identify any specific allegations of wrongdoing in the first amended complaint against the Corporation Counsel, the Office of Corporation Counsel, or the Police Board; thus, the allegations that the City is "responsible for" those persons and/or entities are so vague that the City lacks knowledge or information sufficient to form a belief as to the truth of those allegations.  Defendant City admits that the Chicago

Police Department is an administrative department of the City, and that the Superintendent of Police, the Chief Administrator of the Office of Professional Standards, the Detective Division and the Personnel Division are positions, sections or divisions of the Chicago Police Department. Defendant City further states that the allegations in paragraph 11 as to what it is "responsible for" consist of conclusions of law so vague that Defendant City lacks knowledge or information sufficient to form a belief as to the truth of those allegations, other than to refer to the authority given to the Chicago Police Department and the Superintendent of Police in chapter 2-84 of the Municipal Code of Chicago. To the extent that "responsible for" as alleged in this paragraph means "may be held liable in damages for" policies, practices or customs of the Chicago Police Department, Defendant City admits that under certain circumstances, a municipality may be held liable in damages directly caused by its policies, practices, and customs pursuant to *Monell v. New York City Dept. of Social Services*, 436 U.S. 658 (1978) and its progeny. Defendant City further states that, because plaintiff does not identify the alleged "policies, practices and customs" referred to in paragraph 11, Defendant City is without knowledge or information sufficient to form a belief as to the truth or falsity of those allegations. To the extent plaintiff refers to the "policies, practices and customs" alleged elsewhere in the first amended complaint, Defendant City denies those allegations.

12. Defendant Richard Devine has been the State's Attorney of Cook County from 1997 to the present, and as such is responsible for the policies, practices and customs of the State's Attorneys' Office. He engaged in the conduct complained of in the course and scope of his employment and is sued in his individual capacity.

**<u>ANSWER:</u>** Defendant City admits Defendant Richard Devine served as Cook County State's Attorney from 1997 to 2008, and that plaintiff has sued him in his individual capacity. Defendant City denies Cook County State's Attorney Devine was its employee or that he was acting in the course and scope of employment for the City at the times alleged in the first

amended complaint. Defendant City is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in paragraph 12.

13.     Defendant Cook County is a governmental entity within the State of Illinois, which consists in part of its Cook County State's Attorney's Office (hereinafter referred to as the "SAO"). At all times relevant to this action, Cook County and the Cook County State's Attorney's Office were the employers of Defendant Devine, and Cook County is a necessary party to this lawsuit.

**ANSWER:**     Defendant City admits Cook County is a governmental entity within the State of

Illinois. Defendant City states generally that the powers and duties of State's Attorneys in the

State of Illinois are outlined in sections 5/3-9001 *et seq*. of the Illinois Compiled Statutes, but it

is without further knowledge or information sufficient to form a belief as to the truth or falsity of

the remaining allegations contained in paragraph 13.

14.     At all times relevant to this action, each of the named defendants acted in the scope of employment, and under the color of the laws, regulations, and customs of the State of Illinois. Each defendant's actions constituted "state action" as defined under federal law.

**ANSWER:**     Defendant City makes no answer to the allegations of paragraph 14 to the extent

they are directed against the Cook County defendants. Defendant City admits that, at various

times alleged in the first amended complaint, Defendants Burge, Byrne, Dignan, Grunhard,

Bosco, Binkowski, Madigan, McWeeny, Martin, Shines, Hillard, and Needham were employees

of the Chicago Police Department, and they would have been acting under color of law as

employees of the Chicago Police Department in the performance of the duties of their offices.

Defendant City denies each of the individual defendants acted as employees during the entire

time period as contemplated in the first amended complaint. Moreover, the blanket assertions

that the individual defendant police officers were acting within the scope of their employment "at

all times relevant to this action" and that the alleged conduct constituted "state action" as defined

by federal law are vague and confusing, potentially incorporating several legal theories and

different allegations of conduct against all the Defendant Officers without asserting specific

conduct against specific individuals. For example, some aspects of the alleged "acts" of the individual police officers may have been within the scope of their employment (*e.g.*, the arrest of plaintiff). On the other hand, if the alleged conduct solely was motivated by "racial animus toward the Plaintiff" (as alleged in paragraph 64), such misconduct would not be within the scope of a police officer's employment. The United States Court of Appeals, Seventh Circuit, has determined that a Chicago police officer, while engaged on police business, is "acting squarely within the scope of his employment" unless he "commits a wrong designed to advance his purely private interests." *Wilson v. City of Chicago*, 120 F.3d 681, 685 (7th Cir. 1997). To the extent the conduct alleged against Defendants Burge, Byrne, Dignan, Grunhard, Bosco, Binkowski, Madigan, and McWeeny in plaintiff's first amended complaint is the same as or closely similar to the conduct at issue in *Wilson*, then the City admits such conduct would be deemed under *Wilson* to be within the officers' scope of employment. Defendant City is without knowledge or information sufficient to form a belief as to the truth or falsity of the alleged conduct attributed to these defendant police officers in the first amended complaint. To the extent any acts alleged against the individual defendants occurred after the time of their employment with the Chicago Police Department, the allegations of this paragraph are denied. Defendant City admits generally that Defendants Martin, Shines, Hillard, and Needham would have been acting within the scope of their employment in fulfilling their duties and obligations in their respective positions with the Chicago Police Department. Defendant City denies State's Attorney Devine was its employee or that he was acting within the course and scope of employment for the City at the times alleged in the first amended complaint. Defendant City is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 14.

### III.    FACTUAL ALLEGATIONS

15.    On or about October 26, 1983, Darrin Ross was shot and killed by A.D. McChristian in A.D.'s car, and the Area 2 Violent Crimes Unit, under the direct supervision and control of Defendants Burge and Byrne, and with the participation of Defendants Dignan, Grunhard, Bosco, Binkowski, Madigan, and McWeeny, commenced an investigation into this homicide.

**ANSWER:**    Defendant City admits police department reports indicate Darrin Ross was shot

and killed on or about October 26, 1983.  Defendant City further admits the police department

records indicate plaintiff told police and Assistant State's Attorney Henry Simmons that A.D.

McChristian shot Darrin Ross in A.D. McChristian's car.  Defendant City admits that police

department reports related to the investigation of the Darrin Ross homicide indicate varying

levels of involvement by the individual defendants identified in paragraph 15, as well as other

Chicago police officers and personnel.

16.    In pursuit of this investigation, Defendants McWeeny and Madigan, at the direction and under the supervision of Defendants Burge and Byrne, threatened and coerced A.D. McChristian's brother, Tyrone McChristian, to falsely implicate Plaintiff as a possible accomplice in the homicide.

**ANSWER:**    Defendant City admits police department records indicate Tyrone McChristian

implicated plaintiff as an accomplice of A.D. McChristian in the Darrin Ross homicide.

Defendant City is without knowledge or information sufficient to form a belief as to the truth or

falsity of the remaining allegations contained in paragraph 16.

17.    Despite the fact that the Defendant Officers knew that Tyrone McChristian's statement was false and coerced, Defendant McWeeny reduced this statement to an official police report. McChristian has subsequently recanted his statement.

**ANSWER:**    Defendant City admits police department records include a report dated October

29, 1993, which reflects an interview of Tyrone McChristian in which he implicated plaintiff as

an accomplice in the Darrin Ross homicide.   Defendant City is without knowledge or

11

information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 17.

18.     In the early morning hours of November 2, 1983, Defendants Byrne, Dignan, Bosco and Binkowski, together with co-conspirator Area 2 detectives Edmund Leracz, Donald Degmon, and Francis Gitrich, went to an apartment on the south side of Chicago and arrested the Plaintiff without probable cause.

**ANSWER:**     Defendant City admits police department reports reflect plaintiff was arrested pursuant to a warrant on November 2, 1983, at the third floor apartment at 7445 S. Kingston, in Chicago.   The arrest report indicates that Chicago police officers Byrne, Dignan, Bosco, Binkowski, Leracz, Degmon and Gutrich, among others, had some level of involvement in the arrest of plaintiff on November 2, 1983.   Defendant City denies any remaining allegations contained in paragraph 18 inconsistent with the foregoing.

19.     During the arrest, Defendant Byrne called Plaintiff's fiancé a "bitch" and a "motherfucker;" Defendants Byrne and Dignan pointed guns at her head; Defendant Dignan called Plaintiff a "nigger," placed a shotgun to Plaintiff's head and threatened to blow his head off; and Defendant Grunhard assaulted Plaintiff with a crowbar.

**ANSWER:**     Defendant City is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained within paragraph 19.

20.     Plaintiff was then placed in a detective car with Defendants Dignan, Byrne and Grunhard and transported to the area of 80th and Phillips Streets.   During the ride, Defendant Dignan said, "nigger, where's A..D.;" told Plaintiff that they had "scientific ways" of getting him to talk, and that he was in for "the hardest day of his life;" and hit Plaintiff on the knee with his flashlight.

**ANSWER:**     Defendant City is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained within paragraph 20.

21.     Plaintiff was then taken to Area 2, placed in an interrogation room and interrogated about the Ross homicide by Defendants McWeeny and Grunhard.   During this interrogation, McWeeny and Grunhard suggested inculpatory answers.   Defendant Bosco entered the room with an electrical cattle prod in a bag, showed it to Plaintiff, said "nigger, you going to tell us where A.D.'s at;" Bosco then pointed the cattle prod at Plaintiff and said that he would "talk before the day was over."

**ANSWER:**    Defendant City admits police department reports indicate plaintiff was taken to Area 2 Violent Crimes headquarters and interviewed by Chicago Police Department detectives about the Darrin Ross homicide.  Defendant City is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 21.

22.    Plaintiff was then transported through a viaduct or tunnel to a remote area near a body of water in the vicinity of 103rd and Torrence Streets by Defendants Byrne, Dignan and Grunhard.  They were followed in another police car by Defendants Bosco and Binkowski, who blocked the entrance to the viaduct with their police vehicle.

**ANSWER:**    Defendant City admits police department reports indicate plaintiff provided a statement to police describing his involvement in the Darrin Ross homicide and that after giving the statement, he pointed out to Area 2 detectives the location where the body of Darrin Ross had been found.  Defendant City is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained within paragraph 22.

23.    Defendants Byrne, Dignan and Grunhard then took Plaintiff out of the car, questioned him about the Ross homicide and the whereabouts of A.D. McChristian.

**ANSWER:**    Defendant City is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained within paragraph 23.

24.    When Plaintiff refused to answer, the Defendants performed a mock execution. After appearing to place a shell in his shotgun, Dignan placed the shotgun in Plaintiff's mouth, and said "nigger, where's A.D.?"  After Plaintiff did not reply, Grunhard said "shoot him," and Dignan pulled the trigger, causing the gun to click rather than discharge.  They then repeated this mock execution two more times.

**ANSWER:**    Defendant City is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained within paragraph 24.

25.    Defendants Byrne, Dignan and Grunhard then attempted to suspend Plaintiff, who was handcuffed behind his back, in the air by his handcuffs, while they questioned him and called him "nigger."

**ANSWER:**    Defendant City is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained within paragraph 25.

26. Defendant Byrne then forced Plaintiff at gunpoint into the back seat of the police vehicle, and, while Plaintiff lay there handcuffed, Byrne pulled down Plaintiffs pants, again called him "nigger" and questioned him about the murder and the whereabouts of A.D. When Plaintiff again refused to cooperate, Byrne electric shocked him on the testicles and penis with the cattle prod.

**ANSWER:** Defendant City is without knowledge or information sufficient to form a belief as

to the truth or falsity of the allegations contained within paragraph 26.

27. Byrne repeated the shocking over and over while Dignan restrained Plaintiff's feet, and they continued to interrogate Plaintiff about A. D.'s location and the Ross homicide.

**ANSWER:** Defendant City is without knowledge or information sufficient to form a belief as

to the truth or falsity of the allegations contained within paragraph 27.

28. Finally, after Byrne called Plaintiff a "strong nigger," threatened to turn the cattle prod on "high," and shocked Plaintiff again, Plaintiff finally broke, agreed to say anything the Defendants wanted him to say, and answered their questions with information that they had previously supplied him during their questioning.

**ANSWER:** Defendant City is without knowledge or information sufficient to form a belief as

to the truth or falsity of the allegations contained within paragraph 28.

29. Defendants Byrne, Dignan and Grunhard then transported Plaintiff to the auto pound in an attempt to obtain his identification of A.D.'s car and to further question Plaintiff about the homicide. Again, Defendants Bosco and Binkowski followed in their police auto.

**ANSWER:** Defendant City is without knowledge or information sufficient to form a belief as

to the truth or falsity of the allegations contained within paragraph 29.

30. En route to the pound, Plaintiff was threatened with the cattle prod, so he described A.D.'s car. At the pound, Plaintiff refused to answer further questions, and after Defendants Byrne, Dignan and Grunhard forced him back into the police car, Byrne again shocked him on the testicles while Dignan held his hand over Plaintiff's mouth to keep him from screaming out.

**ANSWER:** Defendant City is without knowledge or information sufficient to form a belief as

to the truth or falsity of the allegations contained within paragraph 30.

31. Plaintiff then gave a false and coerced statement to Defendant McWeeny, repeating the information previously supplied to him by Defendants Byrne, Dignan, Grunhard and McWeeny, and thereby falsely implicating himself as an accomplice to A.D. McChristain.

**ANSWER:**    Defendant City admits police department reports indicate plaintiff gave a statement to Chicago Police Department detectives in which he implicated himself as an accomplice to A.D. McChristian in the Darrin Ross homicide.  Defendant City is without knowledge or information sufficient to form a belief as to the truth or falsity of any remaining allegations contained within paragraph 31.

31.    Plaintiff then repeated this false and coerced statement to assistant state's attorney Henry Simmons, in the presence of Defendant McWeeny, at Area 2.

**ANSWER:**    Defendant City admits that on November 2, 1983, plaintiff provided a court-reported, signed statement to Assistant State's Attorney Henry Simmons regarding his involvement in the Darrin Ross homicide, wherein plaintiff stated he had been treated "all right" by police and that no one forced him or beat him to make the statement.  Defendant City further admits Detective McWeeny was present on November 2, 1983, when plaintiff provided the court-reported, signed statement to Mr. Simmons.  Defendant City is without knowledge or information sufficient to form a belief as to the truth or falsity of any remaining allegations contained in paragraph 32.

33.    The interrogation and torture of Plaintiff in pursuit of a confession which was constructed by the Defendant torturers and interrogators and fed to him after he was broken, was part of a long-standing pattern and practice of similar acts of racially motivated torture, including electric shock, mock executions and Russian roulette, suspensions, and baggings under the supervision, and with the encouragement, participation and ratification of Defendant Burge. Burge was present at Area 2 as the commanding officer of the Defendants on November 2, 1983, was in charge of the Ross homicide investigation and the interrogation of the Plaintiff; and thereby supervised, encouraged, participated in, failed to prevent, and ratified the actions of the Defendants herein, as alleged more specifically above, as part of said pattern and practice.

**ANSWER:**    Defendant City admits Defendant Burge was the commanding officer at Area 2 Violent Crimes on November 2, 1983.  To the extent the allegations in paragraph 33 assert a "pattern and practice" on the part of the Chicago Police Department, those allegations are denied.

Defendant City is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained within paragraph 33.

34.     Additionally, Defendant Martin, as Commander of Area 2 on November 2, 1983, was Burge's direct supervisor, was, on information and belief, present at Area 2 on November 2, 1983; was aware of the pattern and practice of torture at Area 2, which included at least six other cases of torture from September of 1983 through November of 1983; and thereby encouraged, approved, failed to prevent, and/or ratified Plaintiff's torture and false and constructed confession.

**ANSWER:**     Defendant City admits that Defendant Martin served as Commander of Area 2 from February 1983 to December 1983, a period during which Defendant Burge was assigned as commanding officer of Area 2 Violent Crimes.  Defendant City is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegation in paragraph 34 that Defendant Martin was present at Area 2 on November 2, 1983.  Defendant City denies the remaining allegations contained in paragraph 34.

35.     Plaintiff's false admissions, which were coerced, constructed and manufactured by the Defendant Officers, were memorialized in false official reports, and presented to prosecuting attorneys who relied upon and presented this false, coerced and manufactured evidence throughout Plaintiff's prosecution.

**ANSWER:**     Defendant City admits plaintiff provided a court-reported, signed statement to then-ASA Henry Simmons on November 2, 1983, regarding his involvement in the fatal shooting of Darrin Ross, wherein plaintiff stated he had been treated "all right" by police and that no one forced him or beat him into providing the statement.  Defendant City is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 35.

36.     Defendants Byrne, Dignan, Grunhard, Bosco, Binkowski, McWeeny, and conspirators Gitrich and Simmons also presented this fabricated, coerced and totally unreliable evidence at Plaintiff's motion to suppress hearings and trials through false and perjured testimony.

**ANSWER:**   Defendant City admits plaintiff provided a court-reported, signed statement to then-ASA Henry Simmons on November 2, 1983, regarding his involvement in the fatal shooting of Darrin Ross, wherein plaintiff stated he had been treated "all right" by police and that no one forced him or beat him into providing the statement.  Defendant City is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 36.

37.    Defendants Burge, Byrne, Dignan, Grunhard, McWeeny, Bosco, Binkowski and Martin, together with their co-conspirators, also suppressed from the prosecutors who prosecuted Plaintiff, from the judges and juries who heard his case, and from the prosecutors and judges who prosecuted and heard Plaintiff's appeals and motions to suppress, that the admissions they attributed to Plaintiff were false and totally unreliable, coerced through torture, constructed and manufactured by them, and were a product of a pattern and practice of torture and abuse at Area 2 which they commanded, supervised and implemented; additionally they suppressed, committed perjury about, and destroyed the physical implements of this pattern and practice of torture, including the cattle prod and shotgun used against Plaintiff, and the electric shock box, plastic bags, typewriter covers, and handguns used by them against numerous other victims of their pattern and practice of torture.

**ANSWER:**   Defendant City denies the allegations of paragraph 37 pertaining to an alleged "pattern and practice of torture and abuse."  Defendant City admits plaintiff provided a court-reported, signed statement to then-ASA Henry Simmons on November 2, 1983, regarding his involvement in the fatal shooting of Darrin Ross, wherein plaintiff stated he had been treated "all right" by police and that no one forced him or beat him into providing the statement.  Defendant City is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 37.

38.    On November 7, 1983, the Office of Professional Standards of the Chicago Police Department ("the OPS") opened an "investigation" into Plaintiff's allegations of torture.  The complaint was forwarded to Commander Martin. Neither Martin nor the OPS took any disciplinary action against any of the Defendant Officers, and nearly a year later, the OPS entered "not sustained" findings.

**ANSWER:**   Defendant City admits that on or around November 7, 1983, OPS opened a Complaint Register investigation (No. 134723) pertaining to allegations of physical abuse made

on behalf of plaintiff. Defendant City admits an OPS report in Complaint Register No. 134723 dated September 1984 indicates that none of the allegations were found to be sustained against Officers Byrne, Grunhard, Dignan, Bosco, or Gorman, and that no disciplinary action was taken against those officers arising from the allegations. Defendant City is without knowledge or information sufficient to form a belief as to the truth or falsity of any remaining allegations in paragraph 38.

39.     Prior to Plaintiff's criminal trial in 1984, the trial judge, relying on the police Defendants' and their co-conspirators' false and perjured testimony denying torture, denied Plaintiff's motion to suppress his coerced statement; this coerced and fabricated "confession" was presented by the prosecution as the only evidence against him at the 1984 trial and provided the basis for his conviction on an accountability theory for the murder of Darrin Ross. Absent the Defendants' coercion, torture and fabrication, Plaintiff would neither have been prosecuted for, nor convicted of, a crime he did not commit.

**ANSWER:**     Defendant City admits plaintiff provided a court-reported, signed statement to then-ASA Henry Simmons on November 2, 1983, regarding his involvement in the fatal shooting of Darrin Ross, wherein plaintiff stated he had been treated "all right" by police and that no one forced him or beat him into providing the statement. Defendant City admits plaintiff's motion to suppress was denied by the trial judge. *People v. Cannon*, 150 Ill. App. 3d 1009, 1015, 502 N.E.2d 345 (1st Dist. 1986). Defendant City further admits plaintiff was convicted by a jury of the murder of Darrin Ross, based on accountability. Defendant City is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in paragraph 39.

40.     In November of 1984 and February of 1985, OPS Director David Fogel, secretly provided summaries of numerous OPS cases of electric shock torture, including those of Plaintiff and Andrew Wilson, who was electric shocked, bagged and otherwise tortured by Defendant Burge, to Police Superintendent Fred Rice, who took no action. Rice, Fogel, and successive Superintendents and OPS Directors, including Defendants Martin and Shines, and the Defendant City and its lawyers, suppressed these summaries and most of the files themselves from the Plaintiff and all other criminal and civil litigants until they were discovered in boxes produced for inspection by the City in August of 2004.

**ANSWER:** Defendant City admits that former OPS Chief Administrator David Fogel prepared for former Superintendent Fred Rice a memorandum dated November 5, 1984, entitled "Alleged Use of Electrical Shocking Equipment During Arrests," and an updated memorandum with the same title dated February 25, 1985, and that both documents include references to plaintiff's allegations made in C.R. No. 134723. Defendant City denies that plaintiff's characterization and description of the documents are accurate or complete. Defendant City denies the remaining allegations contained in paragraph 40.

41. In 1987, Plaintiff filed a 42 U.S.C. § 1983 action alleging excessive use of force by Defendants Byrne, Dignan, and Grunhard for their torture and abuse on November 2, 1983. Solely and exclusively because the Defendants successfully suppressed, destroyed, and covered up their torture of Plaintiff, numerous other cases of torture, and the implements of torture, Plaintiff accepted a nuisance value settlement of $3000, a tiny fraction of what the claim was truly worth.

**ANSWER:** Defendant City admits that in 1986, plaintiff filed a §1983 action against defendants Byrne, Dignan, and Grunhard, in which he alleged use of excessive force. Defendant City further admits that in 1988, plaintiff, through counsel, after engaging in discovery, voluntarily and knowingly agreed to settle all of his claims for $3000.00, which agreement was reduced to a formal, written Stipulation and further incorporated into a judgment order entered in the 1986 action. Defendant City denies the remaining allegations contained in paragraph 41.

42. In 1990, after Plaintiff was convicted, and after the Plaintiff accepted the settlement, the OPS completed an investigation into allegations of torture of suspects, including Plaintiff, at Area 2. In a secret report which was approved by the Director of the OPS and forwarded to Defendant Superintendent Leroy Martin, the OPS found that from 1973 to 1985 there was a practice of systematic abuse of suspects held in custody at Area 2, including Plaintiff, and that certain Area 2 command personnel were aware of such abuse and condoned it. The OPS further found that this practice included psychological techniques and planned torture, and that Area 2 command personnel were aware of the systematic abuse and encouraged it either by actively participating in it or by failing to take any action to stop it. Command personnel at Area 2 during part or all of that time included Defendants Burge and Martin. This report also collected, identified, and detailed numerous cases of torture and abuse at Area 2.

**ANSWER:**    Defendant City admits that prior to 1990, plaintiff was convicted for the murder of Darrin Ross and that he had agreed to the stipulated settlement of his 1986 lawsuit.  Defendant City admits the existence of a document dated September 28, 1990, from OPS investigator Michael Goldston to the Chief Administrator of OPS, but denies that plaintiff's characterization and description of the document is accurate or complete.   Defendant City denies Goldston conducted any inquiry beyond the compilation of complaint register files, police reports, court transcripts, and other documents.  Defendant City states that Goldston attempted to summarize certain documents and create spreadsheets, indexes, and summaries from selected information contained in those documents.  Defendant City denies OPS made any "findings" by virtue of the so-called "Goldston report," and specifically denies the implication that OPS "found" plaintiff was physically abused at Area 2.  With respect to the allegation in paragraph 42 as to defendants Burge and Martin being "command personnel" at Area 2 during certain time periods, Defendant City adopts and restates its responses to paragraphs 4 and 7 as though fully set forth herein. Defendant City denies any remaining allegations contained in paragraph 42.

43.    In another section of this Report, the OPS also found that Burge and two other Area 2 detectives tortured Andrew Wilson, *inter alia*, with electric shock, and recommended that Burge and two of his men be fired.

**ANSWER:**    Defendant City admits the existence of a document dated October 26, 1990, from OPS investigator Francine Sanders, in which the investigator recommended "sustained" findings against Defendant Burge, John Yucaitis, and Patrick O'Hara for violations of certain departmental rules and regulations arising from their conduct concerning Andrew Wilson. Defendant City denies the Sanders report was part of the "Goldston report."  Defendant City denies any remaining allegations contained in paragraph 43.

44.    Defendant Superintendent Martin and other command personnel delayed, obstructed, and otherwise undermined the OPS investigation, report, findings and conclusions set forth above, *inter alia*, by suppressing the findings that Wilson was tortured and by refusing to

suspend, transfer or remove Burge either before, or for nearly a year after, the findings of the OPS were first made known to them in November of 1990.

**ANSWER:**    Defendant City denies the allegations contained in paragraph 44.

45.    Defendant Martin and other command personnel further delayed, obstructed, and otherwise undermined the OPS investigation, report, findings and conclusions set forth above, *inter alia*, by suppressing the findings that there was systematic abuse at Area 2, which implicated Defendants Martin, Burge, the Officer Defendants, and other Area 2 detectives. This suppression prevented Plaintiff from obtaining highly exculpatory evidence for use in his criminal proceedings and in civil litigation.

**ANSWER:**    Defendant City denies the allegations contained in paragraph 45.

46.    This report and its findings were ordered publicly released by Federal Court order in February of 1992, and Defendant Martin, together with Mayor Richard M. Daley, publicly attempted to discredit and undermine the report and its findings as "unsubstantiated rumors," and did not discipline Defendants Byrne, Dignan, and Grunhard for their role in this pattern and practice of torture, or otherwise act to implement the Report's findings.

**ANSWER:**    Defendant City admits that in 1992, Judge Milton Shadur revoked a protective order that had been applicable to the so-called "Goldston report." Defendant City denies OPS made any "findings" by virtue of the so-called "Goldston report," and it therefore denies the remaining allegations contained in paragraph 46 premised upon that improper characterization. To the extent there are any remaining allegations contained in paragraph 46, the City is unable to identify them, and states it is without knowledge or information sufficient to form a belief as to the truth or falsity of such allegations.

47.    As State's Attorney of Cook County from 1981 through 1988, Richard M. Daley had specific notice of a pattern and practice of torture and abuse at Area 2 by Burge, Byrne, Dignan, and others, (including Plaintiff's and more than 50 other cases) and refused to prosecute Burge, Byrne, Dignan or any other Area 2 detective, despite being presented with specific evidence of torture by Police Superintendent Richard Brzeczek well before Plaintiff was tortured.

**ANSWER:**    Defendant City admits Richard M. Daley was the Cook County State's Attorney for a period of time including 1981 through 1988. Defendant City admits the existence of a letter dated February 25, 1982, from Richard J. Brzeczek, then-Superintendent of the Chicago Police

Department, to then-State's Attorney Richard M. Daley, wherein Brzeczek refers to an enclosure that indicated Andrew Wilson sustained certain injuries subsequent to his arrest. Defendant City states the argumentative allegations in paragraph 47 as to "specific notice," "specific evidence," and "refused to prosecute" are so vague that it lacks knowledge or information sufficient to form a belief as to the truth or falsity of those allegations. Defendant City does state, on information and belief, that the State's Attorney's Office did not prosecute Burge, Byrne, Dignan, or other Area 2 detectives from 1981 through 1988. Defendant City denies any remaining allegations contained in paragraph 47.

48.     Additionally, Defendant Martin, Defendant OPS Director Shines, and other command personnel, in violation of police regulations, refused to investigate numerous other allegations of police torture which were brought to their attention, including allegations of electric shock and abuse made by electric shock victim Melvin Jones against Defendants Burge, and McWeeny, despite the findings made in the Goldston Report, and other specific requests to do so.

**ANSWER:**     Defendant City denies the allegations contained in paragraph 48.

49.     In January of 1992, Defendant Martin and the City judicially admitted before the Police Board that Burge and others under his command engaged in an "astounding pattern and plan" of torture, particularly including the use of electric shock.

**ANSWER:**     Defendant City admits it sought Defendant Burge's termination from the Chicago Police Department in proceedings before the Police Board of the City of Chicago, and that in 1993, Burge was separated from the Chicago Police Department by the Police Board for violations of departmental rules and regulations with respect to his conduct concerning Andrew Wilson. Paragraph 49 is vague and fails to identify the source of the alleged quotation, and the City is without knowledge or information sufficient to form a belief as to the truth or falsity of those allegations. Defendant City denies that any of its attorneys' arguments to the Police Board constituted "judicial admissions," and it denies the remaining allegations contained in paragraph 49.

50. In February of 1993, the Chicago Police Board fired Jon Burge for torturing Andrew Wilson, *inter alia*, with electric shock. These findings became final in December of 1995.

**ANSWER:** Defendant City admits it sought Defendant Burge's termination from the Chicago Police Department in proceedings before the Police Board of the City of Chicago, and that in 1993, Burge was separated from the Chicago Police Department by the Police Board for violations of departmental rules and regulations with respect to his conduct concerning Andrew Wilson. The Police Board found it was more likely than not that Wilson received injuries to his face, head, chest, and thigh while in the custody of certain Area 2 police officers, and that it believed Defendant Burge physically abused Wilson. Defendant City further admits the Illinois Appellate Court, First District, upheld the Police Board's findings in a decision issued on December 15, 1995. Defendant City denies any remaining allegations in paragraph 50 inconsistent with the foregoing.

51. In September of 1988, Defendant Devine, together with law partner William Kunkle, and their law firm, were retained by the Defendant City of Chicago to represent Defendant Jon Burge and several Area 2 detectives, including John Yucaitis and Patrick O'Hara, in the civil rights lawsuit brought against them and the City of Chicago by Area 2 torture victim Andrew Wilson.

**ANSWER:** Defendant City admits that Defendant Burge and other police officers, including John Yucaitis and Patrick O'Hara, requested, and the City authorized, the retention of William Kunkle and the law firm of Phelan, Pope & John to represent them in a civil rights lawsuit filed by Andrew Wilson. Defendant City is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations concerning Defendant Devine's involvement, if any, in the representation of Burge and the other officers in the *Wilson* lawsuit. Defendant City denies any remaining allegations contained in paragraph 51.

52. For the next eight years, Defendant Devine, Mr. Kunkle, and their law firm continued to represent Defendant Burge, John Yucaitis, Patrick O'Hara and the other Area 2 defendants in the *Wilson* civil cases, as well as in the Police Board Proceedings against Burge,

Yucaitis and O'Hara, having been retained by the Fraternal Order of Police (FOP). Additionally, Defendant Devine, Mr. Kunkle and their law firm were retained by the Defendant City of Chicago to represent Defendants Burge, Byrne and Dignan in several other civil rights torture cases where a pattern and practice of torture was alleged. As a result of this representation, Defendant Devine, Mr. Kunkle and their law firm received over one million dollars in attorney's fees from the City of Chicago and the FOP.

**ANSWER:** Defendant City admits that Defendant Burge and other police officers, including John Yucaitis and Patrick O'Hara, requested, and the City authorized, the retention of William Kunkle and the law firm of Phelan, Pope & John to represent them in a civil rights lawsuit filed by Andrew Wilson. Defendant City further states it paid Phelan, Pope & John for legal services rendered to Burge and the officers in the *Wilson* lawsuit pursuant to the City's contractual and legal obligations to do so. Defendant City admits William Kunkle and Phelan, Pope & John represented Burge, Yucaitis, and O'Hara in the Police Board proceedings against them, but it is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 52 regarding the details of the retention of Mr. Kunkle by the Fraternal Order of Police. The allegations as to the retention of counsel for Defendant Burge in unnamed civil actions are vague and indefinite, and therefore the City is without knowledge or information sufficient to form a belief as to the truth or falsity of those allegations. Defendant City admits it paid Phelan, Pope & John for its representation of Defendant Burge and the other police officers in the Andrew Wilson lawsuit. It is currently without knowledge or information sufficient to form a belief as to the total amount paid to Phelan, Pope & John for that representation. Defendant City further states it is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations concerning the attorney's fees of Phelan, Pope & John for representation related to the Police Board proceedings and the unnamed civil actions.

53.    From 1988 to 1996, Defendant Devine, Mr. Kunkle, and their law firm were informed of a wealth of compelling evidence that their clients, including Burge, Byrne and Dignan, were centrally involved in a pattern and practice of torturing suspects, including Plaintiff, at Area 2, and Devine, Kunkle, and their co-counsel, together with Defendants Burge,

Byrne, Dignan, and Area 2 detectives Yucaitis and O'Hara, made numerous litigation decisions designed to protect Burge, Yucaitis, and O'Hara from criminal, civil and administrative liability in the face of that evidence.

**ANSWER:**    Defendant City is without knowledge or information sufficient to form a belief as

to the truth of falsity of the allegations in paragraph 53.

54.    In 1997, Defendant Devine became the State's Attorney of Cook County. Acting with a clear conflict of interest and acting under the color of his authority of State's Attorney, Defendant Devine has continued, from 1997 to the present, to protect the interests of his Area 2 clients, particularly Defendant Burge, and to cover up their central role in the pattern and practice of torture, *inter alia*, by:

a.    making false public statements in which he discredited evidence of torture committed by his clients and other Area 2 Defendants, including evidence presented by Plaintiff and other Area 2 victims, whereby they sought suppression of their confessions, new suppression hearings, new trials, new sentences, pardons and/or clemency on the basis that false confessions were tortured from them;

b.    making false statements to public officials in which he discredited the evidence of torture committed by his clients and other Area 2 Defendants;

c.    refusing to investigate the allegations that his clients and other Area 2 and Area 3 detectives were central actors in a pattern and practice of torture and abuse which included the torture of Plaintiff, and obstructing all attempts to so investigate;

d.    suppressing evidence that further established that his clients, and other Area 2 and Area 3 detectives were central actors in the pattern and practice of torture which included Plaintiff's torture; and

e.    otherwise using his influence and decision-making power as State's Attorney of Cook County to continue the wrongful conviction and imprisonment of Plaintiff and other torture victims.

**ANSWER:**    Defendant City admits that Defendant Devine was elected Cook County State's

Attorney in 1996. Defendant City is without knowledge or information sufficient to form a

belief as to the truth or falsity of the remaining allegations contained in paragraph 54, including

subparagraphs (a) through (e), inclusive.

55.    In 1993, the OPS reopened investigations into approximately 10 Area 2 torture cases, including Plaintiff's. After an exhaustive re-investigation, which uncovered substantial new evidence in support of the allegations, the OPS investigator sustained numerous allegations that Byrne, Dignan and Grunhard racially abused and tortured Plaintiff with the cattle prod at the

torture site, and at the auto pound, and subjected him to a mock execution and suspension by his handcuffs.

**ANSWER:**   Defendant City admits that OPS reopened investigations of nine CR files, including CR No. 134723.  Defendant City denies that the reopened investigations resulted in a sustained finding by OPS in any of the nine files, including CR No. 134723.  Defendant City admits that the investigators in some of the reopened investigations, including CR No. 134723, made a recommendation that some, but not all, of the original findings be changed to sustained; however, an investigator's recommendation is a preliminary step in the OPS investigatory process and does not constitute a finding by OPS.  Defendant City denies the remaining allegations contained in paragraph 55.

56.    The OPS also entered sustained findings of torture and abuse against Byrne and Dignan in five other re-opened cases, including that of death row inmate Stanley Howard.

**ANSWER:**   Defendant City denies the allegations contained in paragraph 56.

57.    From 1993 until 1998, when she left office, Defendant OPS Director Gayle Shines suppressed these findings and the evidence which supported them by secreting the files in her personal office.

**ANSWER:**   Defendant City denies the allegations contained in paragraph 57.

58.    In 1998, Defendants Hillard and Needham, with full knowledge that Defendants Burge, Byrne and Dignan, the other Defendant Officers, and other Area 2 and Area 3 detectives participated in a pattern and practice of torture and abuse of suspects, including Plaintiff, violated police regulations and obstructed justice by overturning the OPS sustained findings in Plaintiff's and the other five re-opened cases; by refusing to investigate other torture victims' claims that they had been tortured; by refusing to investigate OPS Director Gayle Shines' suppression of evidence, and by suppressing these OPS files and findings from Plaintiff and other criminal defendants.

**ANSWER:**   Defendant City denies the allegations contained in paragraph 58.

59.    In 1997, the Illinois Appellate Court ordered that Plaintiff receive a new motion to suppress hearing at which he be permitted to present all the newly discovered evidence of torture and abuse which had been uncovered since his 1984 motion to suppress hearing.

**ANSWER:**    Defendant City admits that the Illinois Appellate Court remanded plaintiff's criminal case for a new hearing on his motion to suppress his confession. *People v. Cannon*, 293 Ill.App.3d 634, 688 N.E.2d 693 (1st Dist. 1997).   Defendant City denies any remaining allegations contained in paragraph 59 that are inconsistent with the appellate court's written decision.

60.    At this remand hearing, which commenced in 1999, the Plaintiff presented a wealth of newly discovered evidence of torture and abuse.  The State's Attorneys' Office, rather than to again elicit the knowingly false and perjured testimony of the Defendant Officers, dismissed Plaintiff's case on April 14, 2004.

**ANSWER:**    Defendant City admits that on April 14, 2004, an order was entered dismissing the criminal case against plaintiff pursuant to the State's motion to *nolle prosequi*.  Defendant City is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 60.

61.    On January 10, 2003, Illinois Governor George Ryan granted four Illinois death row inmates pardons on the basis of innocence.  In granting Burge death row torture victims Madison Hobley, Aaron Patterson, Leroy Orange, and Stanley Howard innocence pardons, the Governor found that:

> The category of horrors was hard to believe.  If I hadn't reviewed the cases myself, I wouldn't believe it.  We have evidence from four men, who did not know each other, all getting beaten and tortured and convicted on the basis of the confessions they allegedly provided.  They are perfect examples of what is so terribly broken about our system.

**ANSWER:**    Defendant City admits that on or around January 10, 2003, former Governor Ryan granted pardons on the basis of innocence to Madison Hobley, Aaron Patterson, Leroy Orange, and Stanley Howard.  Defendant City further admits that former Governor Ryan made numerous statements concerning the pardons at that time and thereafter.  Defendant City is without knowledge or information sufficient to form a belief as to the truth or falsity or correctness of any of the statements made by former Governor Ryan concerning the pardons.  Further, Defendant City is without knowledge or information sufficient to form a belief as to whether

former Governor Ryan made any "findings" to support his decision to grant the pardons, and it therefore neither admits nor denies those allegations. Defendant City is without knowledge or information sufficient to form a belief as to the basis or possible motivation for former Governor Ryan's pardons. Defendant City is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 61.

62.    In August and September of 2004, Defendants Burge, Byrne, Dignan, Bosco, McWeeny and Madigan invoked the Fifth Amendment as to all questions concerning the torture of Plaintiff, the coercion, construction and manufacture of Plaintiff's false confession, the coercion of Tyrone McChristian, and the torture of numerous other victims as a part of a pattern and practice of torture and abuse.

**ANSWER:**    Defendant City admits defendants Burge, Byrne, Dignan, McWeeny, and Madigan were deposed in other litigation in the August-October 2004 time frame, and that at those depositions, they testified they were reluctant at that time to answer questions concerning Darrell Cannon and other criminal suspects, pursuant to their Fifth Amendment rights. Defendant City further admits defendant Bosco asserted his Fifth Amendment rights during plaintiff's parole revocation hearing before the Illinois Prisoner Review Board. Defendant City denies any remaining allegations of paragraph 62 inconsistent with the foregoing.

63.    Plaintiff spent twenty one years in prison for a crime he did not commit. This time was emotionally, physically, and psychologically grueling and Plaintiff suffered from constant fear and anxiety, deep depression, despair, rage, boredom and loneliness. Plaintiff suffered from the loss of sustained contact with his children. He continues to live under the effect of his isolation, incarceration, and depression. Additionally, Plaintiff suffered and continues to suffer, egregious pain and suffering, humiliation, constant fear, anxiety, deep depression, despair, rage, and post traumatic stress disorder from his torture and abuse.

**ANSWER:**    Defendant City denies the allegations contained in the first sentence of paragraph 63, and states: plaintiff has been incarcerated since August 7, 1984, for a violation of his parole related to the 1971 murder of Emanuel Lazar; plaintiff provided a court-reported, signed statement to then-ASA Henry Simmons on November 2, 1983, regarding his involvement in the fatal shooting of Darrin Ross; and, on January 19, 2001, plaintiff pleaded guilty to the charges of

armed violence and conspiracy to commit murder in connection with the Darrin Ross homicide. Defendant City further states that the Illinois Prisoner Review Board revoked plaintiff's parole related to the Lazar murder based on its express finding that plaintiff committed the crime of murder in the killing of Darrin Ross. Defendant City denies any liability to plaintiff for any damages alleged. Defendant City is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in paragraph 63.

64.     Defendants Burge, Byrne, Dignan, Grunhard, McWeeny, Bosco, Binkowski Madigan, Martin, Devine, Shines, Hillard, and Needham, acting jointly and with other police and prosecutorial investigative, supervisory, and command personnel, together and under color of law, reached an understanding, engaged in a course of conduct, engaged in a joint action and otherwise conspired among and between themselves to deprive Plaintiff of his constitutional rights, and did deprive Plaintiff of those rights, including his right to be free from unreasonable arrest and seizure, from wrongful confinement and imprisonment, from involuntary incrimination, from interrogation techniques which "shock the conscience," and his right to access to the Courts and to a fair and impartial trial, as protected by the First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution. Because these actions were done with the knowledge and purpose of depriving Plaintiff, who is African-American, of the equal protection of the laws and/or of equal privileges and immunities under the law, and with racial animus toward the Plaintiff, they also deprived Plaintiff of his right to equal protection of the laws under the Fourteenth Amendment, and 42 U.S.C. §§ 1983 and 1985.

**<u>ANSWER:</u>**     To the extent the allegations of paragraph 64 are directed against defendants Martin, Shines, Hillard and Needham during their tenure with the Chicago Police Department in the supervisory positions as alleged, Defendant City denies the allegations. To the extent any of the allegations contained in paragraph 64 can be construed to be directed against Defendant City, those allegations are denied. Defendant City admits plaintiff is African-American. Defendant City is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 64.

65.     In furtherance of this conspiracy or conspiracies, Defendants Burge, Byrne, Dignan, Grunhard, McWeeny, Bosco, Binkowski, Madigan, Martin, Devine, Shines, Hillard, and Needham, together with their co-conspirators, each committed one or more of overt acts set forth above, including, but not limited to: the wrongful arrest, imprisonment, charging and prosecution of Plaintiff and other torture victims; the fabrication and coercion of false and totally unreliable inculpatory evidence against Plaintiff and other torture victims; the coercion and manufacture of

false and totally unreliable evidence from Plaintiff; the failure to stop the coercive interrogations of Plaintiff, despite having knowledge that he was being tortured and abused; the unconstitutional torture and coercion of Plaintiff and other torture victims in order to compel them to make false inculpatory statements against themselves and/or others; the coercion of a false statement from Tyrone McChristian; the repeated deception of prosecuting attorneys and judges, by, *inter alia*, making knowing misstatements and the presentation of this knowingly false and incomplete evidence to prosecutors and judges; the giving of false testimony and the filing of false and incomplete statements and reports; the suppression of favorable, exculpatory evidence; the failure to come forward with a truthful account of the events; the refusal to investigate and the subversion and quashing of good faith investigations and findings; the abuse of public office and the exploitation of a blatant conflict of interest to cover-up the acts of torture and abuse; and the other acts set forth above.

**ANSWER:**    To the extent the allegations of paragraph 65 are directed against defendants Martin, Shines, Hillard and Needham during their tenure with the Chicago Police Department in the supervisory positions as alleged, Defendant City denies the allegations.  To the extent any of the allegations contained in paragraph 65 can be construed to be directed against Defendant City, those allegations are denied.  Defendant City admits plaintiff provided a court-reported, signed statement to then-ASA Henry Simmons on November 2, 1983, regarding his involvement in the fatal shooting of Darrin Ross, wherein plaintiff stated he had been treated "all right" by police and that no one forced him or beat him into providing the statement.  Defendant City is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 65.

66.    This conspiracy or conspiracies, joint actions and overt acts continue to this date. They have caused and continue to cause Plaintiff's constitutional rights to be violated and the injuries, pain, suffering, fear, mental anguish, detention, imprisonment, humiliation, and loss of freedom and companionship, as set forth more fully above and below.

**ANSWER:**    To the extent the allegations of paragraph 66 are directed against defendants Martin, Shines, Hillard and Needham during their tenure with the Chicago Police Department in the supervisory positions as alleged, Defendant City denies the allegations.  To the extent any of the allegations contained in paragraph 66 can be construed to be directed against Defendant City,

those allegations are denied. Defendant City is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 66.

## COUNT I
### (42 U.S.C. §1983 Claim for Deprivation of Right to Fair Trial and for Wrongful Conviction)

The City of Chicago is not a party defendant from which plaintiff seeks relief in Count I. The City therefore does not answer or respond to the allegations in this count except to the extent plaintiff realleges and incorporates certain paragraphs in later counts against the City.

67.     Plaintiff re-alleges paragraphs 1 through 66.

**ANSWER:**     Defendant City adopts and restates its answers and responses to paragraphs 1 through 66 as and for its answer and response to paragraph 67 of Count I as though fully set forth herein.

68.     Defendants Burge, Burge [sic], Byrne, Dignan, Grunhard, McWeeny, Bosco, Binkowski, Madigan, and Martin, individually, jointly, and in conspiracy, caused the wrongful charging, prosecution, and conviction of Plaintiff. These same Defendants, together with Defendants Martin, Devine, Shines, Hillard, and Needham, individually, jointly, and in conspiracy, caused the continuation of that wrongful conviction, by coercing, constructing and/or fabricating the false and totally unreliable statements which formed the basis for Plaintiff's charging, prosecution and conviction; by withholding from the prosecutors, judges and defense attorneys involved in Plaintiff's prosecution the fact that these admissions were false, totally unreliable, constructed, and coerced; by suppressing additional exculpatory and exonerating torture findings and evidence, as well as other exculpatory evidence; by giving a false and incomplete version of events to prosecutors; by writing false reports and giving false testimony; by improperly influencing the judges hearing Plaintiff's case, *inter alia*, by obstructing investigations which would have led to discovery of further exculpatory evidence; and by the additional wrongdoing set forth above, thereby unconstitutionally depriving Plaintiff of his liberty and violating his right to a fair and impartial trial and not to be wrongfully convicted, as guaranteed by the Fourteenth Amendment to the U.S. Constitution.

**ANSWER:**     Defendant City states that paragraph 68 as worded is confusing and improperly mixes numerous legal theories and allegations of misconduct against all of the defendants and does not assert the specific conduct alleged against specific individual defendants. As such, the paragraph cannot be meaningfully admitted or denied by any single defendant. To the extent

paragraph 68 adopts or restates allegations previously made in the first amended complaint, Defendant City adopts and restates its prior answers and responses thereto. To the extent paragraph 68 includes allegations against Defendant City not asserted elsewhere, these allegations cannot be identified and the City is without knowledge or information sufficient to form a belief as to the truth or falsity of any such allegations. Defendant City denies having knowledge or information that any judges hearing plaintiff's case were "improperly influenced" as alleged in paragraph 68.

69. *Additionally and/or alternatively, all the Defendants named above failed to intervene to stop Plaintiff's wrongful prosecution and conviction and resultant imprisonment despite having the opportunity and duty to do so.*

**ANSWER:** Paragraph 69 of the first amended complaint should be stricken for its failure to comply with this Court's directives in the Memorandum Opinion and Order of August 8, 2007 (Dkt. #227), in that this paragraph fails to provide fair notice to each defendant of what is plaintiff's claim and the grounds upon which it rests. To the extent a response is required: Defendant City states that paragraph 69 as worded is confusing and improperly mixes numerous legal theories and allegations of misconduct against all of the defendants and does not assert the specific conduct alleged against specific individual defendants. As such, the paragraph cannot be meaningfully admitted or denied by any single defendant. To the extent the allegations of paragraph 69 are directed against defendants Martin, Shines, Hillard and Needham during their tenure with the Chicago Police Department in the supervisory positions as alleged, Defendant City denies the allegations. To the extent any of the allegations contained in paragraph 69 can be construed to be directed against Defendant City, those allegations are denied. Defendant City is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 69.

70.     The actions of Defendants Burge, Byrne, Dignan, Binkowski, McWeeny, Bosco, Madigan, Grunhard, Martin, Devine, Shines, Hillard, and Needham, in depriving Plaintiff of his right to a fair trial and not to be wrongfully convicted and imprisoned, and, additionally and/or alternatively, in failing to intervene to stop said violations, were the direct and proximate cause of the injuries to Plaintiff which are set forth above.

**ANSWER:**     Defendant City states that paragraph 70 as worded is confusing and improperly mixes numerous legal theories and allegations of misconduct against all of the defendants and does not assert the specific conduct alleged against specific individual defendants.  As such, the paragraph cannot be meaningfully admitted or denied by any single defendant.  To the extent paragraph 70 adopts or restates allegations previously made in the first amended complaint, Defendant City adopts and restates its prior answers and responses thereto.  To the extent paragraph 70 includes allegations against Defendant City not asserted elsewhere, these allegations cannot be identified and the City is without knowledge or information sufficient to form a belief as to the truth or falsity of any such allegations.

## COUNT II
### (42 U.S.C. § 1983 Claim for False Arrest and Imprisonment)

The City of Chicago is not a party defendant from which plaintiff seeks relief in Count II. The City therefore does not answer or respond to the allegations in this count except to the extent plaintiff realleges and incorporates certain paragraphs in later counts against the City.

71.     Plaintiff re-alleges paragraphs 1 through 70.

**ANSWER:**     Defendant City adopts and restates its answers and responses to paragraphs 1 through 70 as and for its answer and response to paragraph 71 of Count II as though fully set forth herein.

72.     The actions of Defendants Burge, Byrne, Dignan, Grunhard, McWeeny, Bosco, Binkowski, Madigan, and Martin, individually, jointly, and in conspiracy, in falsely arresting and imprisoning Plaintiff, and of these same Defendants, together with Defendants Devine, Shines, Hillard, and Needham, individually, jointly, and in conspiracy, in continuing Plaintiff's imprisonment for twenty-one years, without probable cause, violated Plaintiff's Fourth and

Fourteenth Amendment rights to be free from unreasonable seizures, and deprived Plaintiff of liberty without due process of law.

**ANSWER:** To the extent the allegations of paragraph 72 are directed against defendants Martin, Shines, Hillard and Needham during their tenure with the Chicago Police Department in the supervisory positions as alleged, Defendant City denies the allegations. To the extent any of the allegations contained in paragraph 72 can be construed to be directed against Defendant City, those allegations are denied. Defendant City is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 72.

73. *Additionally Defendants, Devine, Martin, Burge, Dignan, Binkowski, McWeeny, Bosco, Madigan, and Grunhard failed to prevent Plaintiff's wrongful arrest and resultant imprisonment despite having the opportunity and duty to do so.*

**ANSWER:** To the extent the allegations of paragraph 73 are directed against Defendant Martin during his tenure with the Chicago Police Department in the supervisory positions as alleged, Defendant City denies the allegations. To the extent any of the allegations contained in paragraph 73 can be construed to be directed against Defendant City, those allegations are denied. Defendant City is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 73.

74. The actions of the Defendants in falsely imprisoning Plaintiff, continuing said false imprisonment, covering up their own misconduct, *and/or failing to prevent said undlawful arrest and imprisonment,* were the direct and proximate cause of Plaintiff's injuries and damages as more fully set forth above.

**ANSWER:** Defendant City makes no answer or response to the allegations contained in paragraph 74 to the extent they are directed against the Defendant Officers or the Cook County defendants. To the extent paragraph 74 refers to or relies upon allegations made in previous paragraphs, Defendant City adopts and restates its prior answers and responses thereto. To the extent there are remaining allegations in paragraph 74 directed against defendants Martin, Shines, Hillard and Needham during their tenure with the Chicago Police Department in the

supervisory positions as alleged, Defendant City denies the allegations. To the extent any remaining allegations contained in paragraph 74 can be construed to be directed against Defendant City, those allegations are denied.

## COUNT III
### (42 U.S.C. § 1983 Claim for Torture and Physical Abuse)

The City of Chicago is not a party defendant from which plaintiff seeks relief in Count III. The City therefore does not answer or respond to the allegations in this count except to the extent plaintiff realleges and incorporates certain paragraphs in later counts against the City.

75. Plaintiff re-alleges paragraphs 1 through 74.

**ANSWER:** Defendant City adopts and restates its answers and responses to paragraphs 1 through 74 as and for its answer and response to paragraph 75 of Count III as though fully set forth herein.

76. The actions of Defendants Burge, Byrne, Dignan, Grunhard, McWeeny, Bosco, and Binkowski, in torturing and physically abusing Plaintiff, and in threatening him with additional torture and physical abuse, individually, jointly and in conspiracy violated Plaintiff's Fourth and Fourteenth Amendment rights to be free from unreasonable seizures.

**ANSWER:** Defendant City admits plaintiff provided a court-reported, signed statement to then-ASA Henry Simmons on November 2, 1983, regarding his involvement in the fatal shooting of Darrin Ross, wherein plaintiff stated he had been treated "all right" by police and that no one forced him or beat him into providing the statement. Defendant City is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 76. Defendant City denies any liability to plaintiff for the violations alleged.

77. Defendants Burge, Byrne, Dignan, Grunhard, McWeeny, Bosco, Binkowski, and Martin were aware of the torture and physical abuse of the Plaintiff, and participated in it by allowing the torture and abuse to continue while having the obligation and duty to stop it, and by failing to report the abuse to superiors in the Police Department and the State's Attorney's Office.

35

**ANSWER:**    Defendant City admits plaintiff provided a court-reported, signed statement to then-ASA Henry Simmons on November 2, 1983, regarding his involvement in the fatal shooting of Darrin Ross, wherein plaintiff stated he had been treated "all right" by police and that no one forced him or beat him into providing the statement.  Defendant City is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 77.  Defendant City denies any liability to plaintiff for the violations alleged.

78.    The actions of the Defendants, individually, jointly and in conspiracy, in torturing and physically abusing the Plaintiff, threatening to inflict further torture and physical abuse, and/or failing to stop the torture and abuse while having the opportunity and duty to do so, were the direct and proximate cause of Plaintiff's injuries and damages as more fully set forth above.

**ANSWER:**    Defendant City makes no answer or response to the allegations contained in paragraph 78 to the extent they are directed against the Defendant Officers or the Cook County defendants.  To the extent paragraph 78 refers to or relies upon allegations made in previous paragraphs, Defendant City adopts and restates its prior answers and responses thereto.  To the extent there are remaining allegations in paragraph 78 directed against Defendant Martin during his tenure with the Chicago Police Department in the supervisory positions as alleged, Defendant City denies the allegations.  To the extent any remaining allegations contained in paragraph 78 can be construed to be directed against Defendant City, those allegations are denied.

79.    *Additionally, Defendants Devine, Martin, Burge, Byrne, Dignan, Grunhard, McWeeny, Bosco, Binkowski, and Madigan and co-conspirators Mayor and former State's Attorney Richard M. Daley and former Mayor Jane Byrne failed to intervene to stop Defendant Burge and his Area 2 co-conspirators from continuing their coercive interrogations and torture tactics, inter alia, by prosecuting and otherwise disciplining them when they first learned of their criminal conduct in 1982, despite having the opportunity and duty to do so.*

**ANSWER:**    Defendant City makes no answer or response to the allegations contained in paragraph 79 to the extent they are directed against the Defendant Officers or the Cook County defendants.  To the extent paragraph 79 refers to or relies upon allegations made in previous

paragraphs, Defendant City adopts and restates its prior answers and responses thereto. To the extent there are remaining allegations in paragraph 79 directed against Defendant Martin during his tenure with the Chicago Police Department in the supervisory positions as alleged, Defendant City denies the allegations. To the extent the remaining allegations contained in paragraph 79 can be construed to be directed against Defendant City, those allegations are denied.

80.     The actions of the Defendants, individually, jointly and in conspiracy, in torturing and physically abusing the Plaintiff, threatening to inflict further torture and physical abuse, and/or failing to stop *or prevent* the torture and abuse while having the opportunity and duty to do so, were the direct and proximate cause of Plaintiff's injuries and damages as more fully set forth above.

**ANSWER:**     Defendant City makes no answer or response to the allegations contained in paragraph 80 to the extent they are directed against the Defendant Officers or the Cook County defendants. To the extent paragraph 80 refers to or relies upon allegations made in previous paragraphs, Defendant City adopts and restates its prior answers and responses thereto. To the extent there are remaining allegations in paragraph 80 directed against Defendant Martin during his tenure with the Chicago Police Department in the supervisory positions as alleged, Defendant City denies the allegations. To the extent the remaining allegations contained in paragraph 80 can be construed to be directed against Defendant City, those allegations are denied.

### COUNT IV
### (42 U.S.C. § 1983 Claim for Coercive Interrogation)

The City of Chicago is not a party defendant from which plaintiff seeks relief in Count IV. The City therefore does not answer or respond to the allegations in this count except to the extent plaintiff realleges and incorporates certain paragraphs in later counts against the City.

81.     Plaintiff re-alleges paragraphs 1 through 80.

**ANSWER:**    Defendant City adopts and restates its answers and responses to paragraphs 1 through 80 as and for its answer and response to paragraph 81 of Count IV as though fully set forth herein.

82.    The actions of Defendants Burge, Byrne, Dignan, Grunhard, McWeeny, Bosco, and Binkowski, individually, jointly, and in conspiracy, in coercively interrogating Plaintiff, and in using torture techniques that "shock the conscience" during those interrogations, resulted in false, coerced, and fabricated admissions, and violated Plaintiff's Fifth and Fourteenth Amendment rights to be free from compulsory self-incrimination and deprivation of liberty without due process of law.

**ANSWER:**    Defendant City admits plaintiff provided a court-reported, signed statement to then-ASA Henry Simmons on November 2, 1983, regarding his involvement in the fatal shooting of Darrin Ross, wherein plaintiff stated he had been treated "all right" by police and that no one forced him or beat him into providing the statement.  Defendant City is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 82.  Defendant City denies any liability to plaintiff for the violations alleged.

83.    The actions of these Defendants in using torture and other coercive techniques to interrogate Plaintiff, and/or condoning and permitting the use of those techniques, were the direct and proximate cause of Plaintiff's injuries and damages as more fully set forth above.

**ANSWER:**    Defendant City makes no answer or response to the allegations contained in paragraph 83 to the extent they are directed against the Defendant Officers or the Cook County defendants.  To the extent paragraph 83 refers to or relies upon allegations made in previous paragraphs, Defendant City adopts and restates its prior answers and responses thereto.  To the extent there are remaining allegations in paragraph 83 directed against Defendant Martin during his tenure with the Chicago Police Department in the supervisory positions as alleged, Defendant City denies the allegations.  To the extent any remaining allegations contained in paragraph 83 can be construed to be directed against Defendant City, those allegations are denied.

84.    *Additionally, the failure of Defendants Devine, Martin, Burge, Byrne, Dignan, Grunhard, McWeeny, Bosco, Binkowski, and Madigan and co-conspirators Mayor and former State's Attorney Richard M. Daley and former Mayor Jane Byrne to intervene to stop Defendant Burge and his Area 2 co-conspirators from continuing their coercive interrogations and torture tactics, inter alia, by prosecuting and otherwise disciplining them when they first learned of their criminal conduct in 1982, despite having the opportunity and duty to do so, proximately caused Plaintiff's coercive interrogation by torture and his resultant injuries and damages as more fully set forth above.*

**ANSWER:**    Defendant City makes no answer or response to the allegations contained in paragraph 84 to the extent they are directed against the Defendant Officers or the Cook County defendants.  To the extent paragraph 84 refers to or relies upon allegations made in previous paragraphs, Defendant City adopts and restates its prior answers and responses thereto.  To the extent the allegations in paragraph 84 are directed against Defendant Martin during his tenure with the Chicago Police Department in the supervisory positions as alleged, Defendant City denies the allegations.  To the extent the remaining allegations contained in paragraph 84 can be construed to be directed against Defendant City, those allegations are denied.

## COUNT VI[1]
### (42 U.S.C. § 1983 *Monell* Policy Claim Against City of Chicago)

85.    Plaintiff re-alleges paragraphs 1 through 84.

**ANSWER:**    Defendant City adopts and restates its answers and responses to paragraphs 1 through 84 as and for its answer and response to paragraph 85 of Count VI as though fully set forth herein.

86.    The actions of Defendants Burge, Byrne, Dignan, Grunhard, McWeeny, Bosco, Binkowski, Madigan, Martin, Devine, Shines, Hillard, and Needham, as alleged above, were done pursuant to one or more interrelated *de facto* policies, practices and/or customs of the Defendant City of Chicago, its Police Department, its OPS and Internal Affairs Division (IAD), its Personnel Division, and/or its Superintendents, as well as its Police Board, the Mayor and his Office, and the Corporation Counsel and her Office.

**ANSWER:**    Defendant City denies the allegations contained within paragraph 86.

---

[1] Count 5 was dismissed by order of the Court dated February 2, 2006.

87. At all times material to this complaint, Defendant City of Chicago and its Police Department, Superintendents, OPS, IAD, Personnel Division, and/or Detective Division, as well as the Mayor and his Office, the Corporation Counsel and her Office, and/or Police Board had interrelated *de facto* policies, practices, and customs which included, *inter alia*:

a) conducting physically, psychologically or otherwise illegally or improperly coercive interrogations of witnesses, suspects and arrestees in order to obtain confessions and wrongful convictions, particularly the use of torture techniques under the command and supervision of Defendant Burge at Area 2, and later at Area 3;

b) the filing of false reports, and giving false statements and testimony about said interrogations and confessions and fabricating or constructing parts or all of said confessions, suppressing evidence concerning said interrogations and confessions, pursuing and obtaining wrongful prosecutions and false imprisonments on the basis of confessions obtained during said interrogations, denying suspects their right to full and fair access to the courts, and otherwise covering up the true nature of said interrogations and confessions particularly in circumstances where torture techniques were used by Area 2 and Area 3 detectives under the command and supervision, and with the active participation of, Defendant Burge;

c) the failure to videotape the interrogation or questioning of suspects, arrestees, and witnesses, particularly in the circumstances set forth in a-b above;

d) the failure to properly train, supervise, discipline, transfer, monitor, counsel and/or otherwise control police officers, particularly those who are repeatedly accused of torture and related abuse of suspects; of false arrests, wrongful imprisonments, malicious prosecutions and wrongful convictions; of making false reports and statements; and/or of physically, psychologically or otherwise illegally or improperly coercive questioning or interrogation of witnesses, suspects and arrestees, particularly persons who were tortured and or physically and/or psychologically abused during questioning. This failure to properly train, supervise, discipline, transfer, monitor, counsel and/or otherwise control includes the "repeater" Defendants Burge, Burge, [sic] Byrne, Dignan, Grunhard, McWeeny, Bosco, Binkowski, Madigan, and all the other Area 2 and 3 detectives who were repeatedly accused of torturing and physically abusing suspects at Area 2 and Area 3;

e) the police code of silence, specifically in cases where officers engaged in the violations articulated in paragraphs a-d above (i.e., police torture and other unconstitutional and coercive interrogations at Area 2 and Area 3 under the command and supervision of Defendant Burge) whereby police officers refused to report or otherwise covered-up instances of police misconduct, and/or fabricated suppressed and destroyed evidence of which they were aware, despite their obligation under the law and police regulations to report. Said code of silence also includes police officers either remaining silent or giving false and misleading information during official investigations in order to protect themselves or fellow

40

officers from internal discipline, civil liability, or criminal charges, and perjuring themselves in criminal cases where they and their fellow officers have tortured or otherwise coercively or otherwise unconstitutionally interrogated a suspect, arrestee or witness, or falsely arrested, imprisoned and prosecuted a criminal defendant, particularly in cases where torture techniques under the command and supervision of Defendant Burge at Area 2, and later at Area 3, have been employed; and

f)    covering up and suppressing evidence and findings, refusing to properly investigate, arrest and charge, continuing to finance Defendant Burge's defense and otherwise attempting to both publicly and judicially defend his actions long after repeatedly acknowledging that he had committed repeated acts of torture, and otherwise obstructing justice in police torture cases, particularly those that arose at Area 2 and Area 3 under the supervision, and with the participation of, Defendant Burge.

**ANSWER:**    Defendant City is unable to identify any specific allegations of wrongdoing in the complaint against the Corporation Counsel, the Office of Corporation Counsel, or the Police Board; thus, the allegations that the City is "responsible for" those persons and/or entities are so vague that the City lacks knowledge or information sufficient to form a belief as to the truth of those allegations.    In further answer, Defendant City denies the allegations contained within subparagraphs (a), (b), (d), (e), and (f) of paragraph 87.    With respect to subparagraph (c), Defendant City admits that in 1983, it was not the practice of the Chicago Police Department to videotape interrogations of suspects, arrestees, or witnesses.    Defendant City denies the remaining allegations contained in subparagraph (c) of paragraph 87.

88.    The pattern and practice of torture and abuse at Area 2, the cover-up of that abuse and the wrongful prosecutions and convictions which resulted therefrom, were well known within Area 2 both well before and after Plaintiff was tortured and wrongfully convicted, including by the command officers at Area 2, which included Defendants Burge and Martin, and Burge's successor, Phil Cline, as well as to the successive Police Superintendents, including Defendants Martin, Hillard, and Cline, and to the successive Directors of OPS, including Defendant Shines, the Chiefs of Detectives, including Defendant Hillard, and to other policy making, command, and supervisory City and police personnel, who participated in the cover-up and suppression of evidence, the wrongful prosecution and conviction of the Plaintiff and other torture victims, and the denial of their full and fair access to the courts *inter alia*, in the manner set forth in this complaint.

**ANSWER:**    Defendant City denies the allegations contained within paragraph 88.

89.    Said interrelated policies, practices and customs, as set forth above, both individually and together, were maintained and implemented with deliberate indifference; encouraged, *inter alia*, the coercing of statements from suspects, witnesses and arrestees, by torture and related abusive tactics and techniques, the construction and fabrication of confessions and other evidence, the suppression of evidence of torture and other exculpatory evidence, the intimidation of witnesses, the making of false statements and reports, the giving of false testimony, and the pursuit and continuation of wrongful convictions and false arrests and imprisonments; and were, separately and together, a direct and proximate cause of the unconstitutional acts and perjury committed by the named Defendants and their co-conspirators, and the injuries suffered by the Plaintiff.

**ANSWER:**    Defendant City denies the allegations contained within paragraph 89.

90.    Additionally, the City of Chicago's said failure to properly train, discipline, monitor, control, assign, transfer, supervise, and counsel Defendants Burge, Byrne, Dignan, Grunhard, McWeeny, Bosco, Binkowski, Madigan, Martin, Devine, Shines, Hillard, and Needham was also done with deliberate indifference and likewise acted as a direct and proximate cause of the injuries to Plaintiff.

**ANSWER:**    Defendant City denies the allegations contained within paragraph 90.

91.    Additionally, and/or alternatively, the involvement in, and ratification of, the unconstitutional actions set forth above by Chicago police policymakers, including, but not limited to, Mayor Richard M. Daley, Defendants Leroy Martin and Terry Hillard, and their direct subordinates, including, but not limited to, Defendants Shines and Needham, establish that said constitutional violations were directly and proximately caused by the City of Chicago and its Police Department.

**ANSWER:**    Defendant City denies the allegations contained within paragraph 91.

WHEREFORE, Defendant, City of Chicago, denies that plaintiff is entitled to any judgment whatsoever as against it, and it requests that this Court enter judgment in its favor and against plaintiff on Count VI, and for its costs and such further relief as this Court deems just.

## COUNT VII
### (State Law Claim for False Arrest and Imprisonment)

The City of Chicago is not a party defendant from which plaintiff seeks relief in Count VII. The City therefore does not answer or respond to the allegations in this count except to the extent plaintiff realleges and incorporates certain paragraphs in later counts against the City.

92.    Plaintiff re-alleges paragraphs 1 through 91.

**ANSWER:** Defendant City adopts and restates its answers and responses to paragraphs 1 through 91 as and for its answer and response to paragraph 92 of Count VII as though fully set forth herein.

93. The arrest and imprisonment of Plaintiff, without probable cause, individually, jointly, and in conspiracy by Defendants Burge, Byrne, Dignan, Grunhard, McWeeny, Bosco, Binkowski, Madigan, and Martin, and its continuation by these Defendants, together with Defendants Devine, Shines, Hillard, and Needham, individually, jointly, and in conspiracy, constituted the torts of false arrest and imprisonment under Illinois law.

**ANSWER:** To the extent the allegations of paragraph 93 are directed against defendants Martin, Shines, Hillard and Needham during their tenure with the Chicago Police Department in the supervisory positions as alleged, Defendant City denies the allegations. To the extent any of the allegations contained in paragraph 93 can be construed to be directed against Defendant City, those allegations are denied. Defendant City is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 93.

94. Defendants' actions in arresting and imprisoning Plaintiff were willful and wanton.

**ANSWER:** To the extent the allegations of paragraph 94 are directed against defendants Martin, Shines, Hillard and Needham during their tenure with the Chicago Police Department in the supervisory positions as alleged, Defendant City denies the allegations. To the extent any of the allegations contained in paragraph 94 can be construed to be directed against Defendant City, those allegations are denied. Defendant City is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 94.

## COUNT VIII
### (State Law Claim for Malicious Prosecution)

The City of Chicago is not a party defendant from which plaintiff seeks relief in Count VIII. The City therefore does not answer or respond to the allegations in this count except to the extent plaintiff realleges and incorporates certain paragraphs in later counts against the City.

95.     Plaintiff re-alleges paragraphs 1 through 94.

**ANSWER:**     Defendant City adopts and restates its answers and responses to paragraphs 1

through 94 as and for its answer and response to paragraph 95 of Count VIII as though fully set

forth herein.

96.     Defendants Burge, Byrne, Dignan, Grunhard, McWeeny, Bosco, Binkowski,
Madigan, and Martin, individually, jointly, and in conspiracy initiated a malicious prosecution
without probable cause against Plaintiff, and these same Defendants, together with Defendants
Devine, Shines, Hillard, and Needham, individually, jointly, and in conspiracy, continued said
prosecution, again without probable cause. Said prosecution was ultimately terminated in
Plaintiffs favor. The Defendants' actions were done in a willful and wanton manner, and directly
and proximately caused the injury and damage to Plaintiff set forth above.

**ANSWER:**     To the extent the allegations of paragraph 96 are directed against defendants

Martin, Shines, Hillard and Needham during their tenure with the Chicago Police Department in

the supervisory positions as alleged, Defendant City denies the allegations. To the extent any of

the allegations contained in paragraph 96 can be construed to be directed against Defendant City,

those allegations are denied. Defendant City is without knowledge or information sufficient to

form a belief as to the truth or falsity of the remaining allegations contained in paragraph 96.

### COUNT IX
### (State Law Claim for Intentional Infliction of Emotional Distress)

The City of Chicago is not a party defendant from which plaintiff seeks relief in Count

IX. The City therefore does not answer or respond to the allegations in this count except to the

extent plaintiff realleges and incorporates certain paragraphs in later counts against the City.

97.     Plaintiff re-alleges paragraphs 1 through 96.

**ANSWER:**     Defendant City adopts and restates its answers and responses to paragraphs 1

through 96 as and for its answer and response to paragraph 97 of Count IX as though fully set

forth herein.

98.     Defendants Burge, Byrne, Dignan, Grunhard, McWeeny, Bosco, Binkowski,
Madigan, Martin, Devine, Shines, Hillard, and Needham, individually, jointly, and in conspiracy,

by, *inter alia*, torturing a false confession from Plaintiff and/or by failing to stop said torture, by constructing and fabricating the details of said confession, and by procuring Plaintiff's prosecution, conviction, and life sentence for a murder he did not commit by means of said false confession, engaged in extreme and outrageous conduct. Additionally these same Defendants, together with Defendants Devine, Hillard, Shines, Martin and Needham, individually, jointly, and in conspiracy, by fabricating, coercing, and suppressing other evidence, by continuing Plaintiff's false imprisonment after procuring his wrongful conviction, by refusing to investigate, and by otherwise abusing Plaintiff, engaged in additional extreme and outrageous conduct.

**ANSWER:** To the extent the allegations of paragraph 98 are directed against defendants Martin, Shines, Hillard and Needham during their tenure with the Chicago Police Department in the supervisory positions as alleged, Defendant City denies the allegations. To the extent any of the allegations contained in paragraph 98 can be construed to be directed against Defendant City, those allegations are denied. Defendant City is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 98.

99. Defendants Burge, Byrne, Dignan, Grunhard, McWeeny, Bosco, Binkowski, Madigan, Martin, Devine, Shines, Hillard, and Needham intended, by subjecting Plaintiff to such humiliating, degrading conduct, to inflict severe emotional distress on Plaintiff, and knew that their conduct would cause Plaintiff and his family severe emotional distress.

**ANSWER:** To the extent the allegations of paragraph 99 are directed against defendants Martin, Shines, Hillard and Needham during their tenure with the Chicago Police Department in the supervisory positions as alleged, Defendant City denies the allegations. To the extent any of the allegations contained in paragraph 99 can be construed to be directed against Defendant City, those allegations are denied. Defendant City is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 99.

100. As a direct and proximate result of Defendants' outrageous conduct, Plaintiff was injured, and has experienced, and continues to experience, severe emotional distress, including nightmares, sleep disruption, symptoms of post traumatic stress disorder, anxiety, depression, and inability to focus or concentrate.

**ANSWER:** To the extent the allegations of paragraph 100 are directed against defendants Martin, Shines, Hillard and Needham during their tenure with the Chicago Police Department in

the supervisory positions as alleged, Defendant City denies the allegations. To the extent any of the allegations contained in paragraph 100 can be construed to be directed against Defendant City, those allegations are denied. Defendant City is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 100.

## COUNT X
### (State Claim for Conspiracy)

The City of Chicago is not a party defendant from which plaintiff seeks relief in Count X. The City therefore does not answer or respond to the allegations in this count except to the extent plaintiff realleges and incorporates certain paragraphs in later counts against the City.

101.     Plaintiff re-alleges paragraphs 1 through 100.

**ANSWER:**     Defendant City adopts and restates its answers and responses to paragraphs 1 through 100 as and for its answer and response to paragraph 101 of Count X as though fully set forth herein.

102.     Defendants Burge, Byrne, Dignan, Grunhard, McWeeny, Bosco, Binkowski, Madigan, Martin, Devine, Shines, Hillard, and Needham, with other unsued co-conspirators, including police and prosecutorial investigative, supervisory, and command personnel, together reached an understanding, engaged in a course of conduct, and otherwise jointly acted and/or conspired among and between themselves to falsely imprison and/or to continue said imprisonment, to maliciously prosecute and/or continue said prosecution, and to intentionally inflict severe emotional distress on Plaintiff.

**ANSWER:**     To the extent the allegations of paragraph 102 are directed against defendants Martin, Shines, Hillard and Needham during their tenure with the Chicago Police Department in the supervisory positions as alleged, Defendant City denies the allegations. To the extent any of the allegations contained in paragraph 102 can be construed to be directed against Defendant City, those allegations are denied. Defendant City is without knowledge or information

sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 102.

103.    In furtherance of this conspiracy or conspiracies, the Defendants named above, together with their unsued co-conspirators, committed the overt acts set forth above, including, but not limited to, those set forth in paragraph 65 above.

**ANSWER:**    To the extent the allegations of paragraph 103 are directed against defendants Martin, Shines, Hillard and Needham during their tenure with the Chicago Police Department in the supervisory positions as alleged, Defendant City denies the allegations.  To the extent any of the allegations contained in paragraph 103 can be construed to be directed against Defendant City, those allegations are denied.  To the extent this paragraph re-alleges paragraph 65, Defendant City adopts and restates its answer and response to paragraphs 65 as though fully set forth herein.  Defendant City is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 103.

104.    Said conspirac(ies) and overt acts were and are continuing in nature.

**ANSWER:**    To the extent the allegations of paragraph 104 are directed against defendants Martin, Shines, Hillard and Needham during their tenure with the Chicago Police Department in the supervisory positions as alleged, Defendant City denies the allegations.  To the extent any of the allegations contained in paragraph 104 can be construed to be directed against Defendant City, those allegations are denied.  Defendant City is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 104.

105.    Defendants' and their co-conspirators' overt acts, as set forth above, which were committed jointly and/or while conspiring together to falsely imprison, maliciously prosecute, and intentionally inflict emotional distress on the Plaintiff, constitute the tort of conspiracy as set forth above.

**ANSWER:**    To the extent the allegations of paragraph 105 are directed against defendants Martin, Shines, Hillard and Needham during their tenure with the Chicago Police Department in the supervisory positions as alleged, Defendant City denies the allegations.  To the extent any of the allegations contained in paragraph 105 can be construed to be directed against Defendant City, those allegations are denied.  Defendant City is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 105.

### COUNT XI
**(State Law *Respondeat Superior* Claim)**

106.    Plaintiff re-alleges paragraphs 1-105.

**ANSWER:**    Defendant City adopts and restates its answers and responses to paragraphs 1 through 105 as and for its answer and response to paragraph 106 of Count XI as though fully set forth herein.

107.    Defendants Burge, Byrne, Dignan, Grunhard, McWeeny, Bosco, Binkowski, Madigan, Martin, Shines, Hillard, and Needham, were, at all times material to this complaint, employees of the Defendant City of Chicago, were acting within the scope of their employment, and their acts which violated state law are directly chargeable to the Defendant City under state law pursuant to *respondeat superior*.

**ANSWER:**    Defendant City admits that, at various times alleged in the first amended complaint, Defendants Burge, Byrne, Dignan, Grunhard, McWeeny, Bosco, Binkowski, Madigan, Martin, Shines, Hillard, and Needham were employees of the Chicago Police Department.  Defendant City denies each of these individual defendants acted as employees "at all times material to" events alleged in the first amended complaint.  Moreover, the blanket assertion that the individual defendant police officers were acting within the scope of their employment "at all times material to this complaint" is vague and confusing, and intermixes several legal theories and different allegations of conduct against all of the Defendant Officers

without asserting specific conduct against specific individuals. Some aspects of the alleged "acts" of the individual police officers may have been within the scope of their employment (*e.g.*, the arrest of plaintiff). On the other hand, if the alleged conduct solely was motivated by "racial animus toward the Plaintiff" (as alleged in paragraph 64), such misconduct would not be within the scope of a police officer's employment. The United States Court of Appeals, Seventh Circuit, has determined that a Chicago police officer, while engaged on police business, is "acting squarely within the scope of his employment" unless he "commits a wrong designed to advance his purely private interests." *Wilson v. City of Chicago*, 120 F.3d 681, 685 (7th Cir. 1997). To the extent the conduct alleged against Defendants Burge, Byrne, Dignan, Grunhard, McWeeny, Bosco, Binkowski, and Madigan in plaintiff's first amended complaint is the same as or closely similar to the conduct at issue in *Wilson*, then the City admits such conduct would be deemed under *Wilson* to be within the officers' scope of employment. Defendant City is without knowledge or information sufficient to form a belief as to the truth or falsity of the alleged conduct attributed to these defendant police officers in the first amended complaint. Defendant City admits that Defendants Martin, Shines, Hillard, and Needham generally would have been acting within the scope of their employment in fulfilling their duties and obligations in their respective positions with the Chicago Police Department, but Defendant City is without knowledge or information sufficient to form a belief as to the meaning or truth of the phrase "at all times material to this complaint" as it applies to these defendants. Defendant City denies State's Attorney Devine was its employee or that he was acting within the course and scope of employment for the City at the times alleged in the first amended complaint. Defendant City is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 107.

108.    *Additionally, Defendant City of Chicago was the employer of Defendant Devine at the times so specified in this complaint; he also committed the acts alleged above under color of law and, during said employment with the City, in the scope of their employment as employees of the City of Chicago.*

**ANSWER:**    Defendant City denies the allegations contained in paragraph 108.

WHEREFORE, Defendant, City of Chicago, denies that plaintiff is entitled to any judgment whatsoever as against it, and it requests that this Court enter judgment in its favor and against plaintiff on Count XI of the first amended complaint, and for its costs and such further relief as this Court deems just.

## COUNT XII
### (745 ILCS 10/9-102 and Common Law Claims Against the City and County)

109.    Plaintiff re-alleges paragraphs 1 through 108.

**ANSWER:**    Defendant City adopts and restates its answers and responses to paragraphs 1 through 108 as and for its answer and response to paragraph 109 of Count XII as though fully set forth herein.

110.    Defendant City of Chicago was the employer of Defendants Burge, Byrne, Dignan, Grunhard, McWeeny, Bosco, Binkowski, Madigan, Martin, Shines, Hillard, and Needham at all times relevant and material to this complaint.

**ANSWER:**    Defendant City admits that, at various times alleged in the first amended complaint, Defendants Burge, Byrne, Dignan, Grunhard, McWeeny, Bosco, Binkowski, Madigan, Martin, Shines, Hillard, and Needham were employees of the Chicago Police Department.  Defendant City denies each of these individual defendants acted as employees "at all times relevant and material to this complaint."  Defendant City denies any remaining allegations contained in paragraph 110.

111.    These Defendants committed the acts alleged above under color of law and in the scope of their employment as employees of the City of Chicago.

**ANSWER:**    Defendant City admits that, at various times alleged in the first amended complaint, Defendants Burge, Byrne, Dignan, Grunhard, McWeeny, Bosco, Binkowski, Madigan, Martin, Shines, Hillard, and Needham were employees of the Chicago Police Department, and they would have been acting under color of law as employees of the Chicago Police Department in the performance of the duties of their offices.  Defendant City denies each of the individual defendants acted as employees and/or under color of law during the entire time period contemplated by the first amended complaint.  The United States Court of Appeals, Seventh Circuit, has determined that a Chicago police officer, while engaged on police business, is "acting squarely within the scope of his employment" unless he "commits a wrong designed to advance his purely private interests."  *Wilson v. City of Chicago*, 120 F.3d 681, 685 (7th Cir. 1997).  To the extent the conduct alleged against Defendants Burge, Byrne, Dignan, Grunhard, McWeeny, Bosco, Binkowski, and Madigan in plaintiff's first amended complaint is the same as or closely similar to the conduct at issue in *Wilson*, then the City admits such conduct would be deemed under *Wilson* to be within the officers' scope of employment.  Defendant City is without knowledge or information sufficient to form a belief as to the truth or falsity of the alleged conduct attributed to these defendant police officers in the first amended complaint.  To the extent any acts alleged against the defendant officers occurred after the time of their employment with the Chicago Police Department, the allegations of this paragraph are denied.  Defendant City admits that Defendants Martin, Shines, Hillard, and Needham generally would have been acting within the scope of their employment in fulfilling their duties and obligations in their respective positions with the Chicago Police Department, but Defendant City is without knowledge or information sufficient to form a belief as to the meaning or truth of the vague phrase "acts alleged above" as applied to these defendants.  Defendant City denies State's

Attorney Devine was its employee or that he was acting within the course and scope of employment for the City at the times alleged in the first amended complaint. Defendant City is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 111.

112.    *Additionally, Defendant City of Chicago was the employer of Defendant Devine at the times so specified in this complaint; he also committed the acts alleged above under color of law and, during said employment with the City, in the scope of their employment as employees of the City of Chicago.*

**ANSWER:**    Defendant City denies the allegations contained in paragraph 112.

113.    Defendant Cook County and its State's Attorneys' Office was the employer of Defendant Devine at all times relevant and material to this complaint; additionally and/or alternatively, said County is responsible for any judgment entered against Defendant Devine, and is therefore a necessary party hereto.

**ANSWER:**    Defendant City is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 113.

114.    Defendant Devine committed the acts alleged above under color of law and in the scope of their employment as an employee of Cook County and its State's Attorneys' Office.

**ANSWER:**    Defendant City is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 114.

WHEREFORE, Defendant, City of Chicago, denies that plaintiff is entitled to any judgment whatsoever as against it, and it requests that this Court enter judgment in its favor and against plaintiff on Count XII of the first amended complaint, and for its costs and such further relief as this Court deems just.

## AFFIRMATIVE DEFENSES

Defendant, City of Chicago, without prejudice to its denials and all other statements in its answer and elsewhere, for its affirmative defenses to plaintiff's first amended complaint, states as follows:

1.      To the extent any individual defendants/employees of the City of Chicago are not liable as alleged in the first amended complaint, the City would not be liable.

2.      Defendant City is not liable for the claims alleged under state law because a public employee is not liable for his or her acts or omissions in the execution or enforcement of any law unless such acts or omissions constitute willful and wanton conduct.  745 ILCS 10/2-202.

3.      Under the Illinois Tort Immunity Act, defendants are not liable under state law for any injury caused by the act or omission of another person.  745 ILCS 10/2-204.

4.      Plaintiff's claims in the first amended complaint are barred by the applicable statutes of limitations.

5.      Plaintiff's claims in the first amended complaint are barred by the doctrines of *res judicata* and collateral estoppel.

6.      Plaintiff's claims in the first amended complaint are barred by the prior settlement of his claims in Case No. 86 C 7231, in the United States District Court, Northern District of Illinois, as set forth in a Stipulation agreed to by plaintiff and executed on his behalf in 1988, which Stipulation further was incorporated into a judgment order entered by Judge William T. Hart on February 8, 1988.

7.      The City of Chicago is immune from the imposition of punitive damages under both state and federal law.  Moreover, under Illinois law, the City cannot be required to indemnify an employee for punitive damages, nor may it pay a judgment for punitive damages on behalf of an employee.

8.      To the extent any injuries or damages claimed by plaintiff were proximately caused, in whole or in part, by negligent, willful, wanton and/or other wrongful conduct on the

part of plaintiff as reflected in the public record, including but not limited to, police reports, certified statements of conviction, court records, published court opinions, and decisions of the Illinois Prisoner Review Board, any verdict or judgment obtained by plaintiff must be reduced by an amount commensurate with the degree of fault attributed to plaintiff by the jury in this case.

9.     To the extent plaintiff failed to mitigate any of his claimed injuries or damages, any verdict or judgment obtained by plaintiff must be reduced by application of the principle that a plaintiff has a duty to mitigate his or her damages.

10.     To the extent plaintiff seeks damages related to his incarceration, such claims for damages are barred, in whole or in part, by the fact that plaintiff has been incarcerated pursuant to a felony conviction unrelated to the present claim.

## **JURY DEMAND**

Defendant City of Chicago respectfully requests a trial by jury.


Date:  October 26, 2010                                     Respectfully submitted,


                                                       By: /s/ Paul A. Michalik_____
                                                            One of the Attorneys for Defendant,
                                                            THE CITY OF CHICAGO

Terrence M. Burns
Harry N. Arger
Paul A. Michalik
Daniel M. Noland
Dykema Gossett PLLC
10 South Wacker Drive
Suite 2300
Chicago, IL 60606
(312)876-1700

## CERTIFICATE OF SERVICE

I hereby certify that on October 26, 2010, I electronically filed the foregoing **Defendant City of Chicago's Answer Plaintiff's First Amended Complaint** with the Clerk of the Court using the ECF system, which sent electronic notification of the filing on the same day to:

**Attorneys for Darrell Cannon**
G. Flint Taylor
Joey L. Mogul
Benjamin H. Elson
People's Law Office
1180 N. Milwaukee
Chicago, Illinois 60622
Phone: 773.235.0070
Fax: 773.235.6699


Locke E. Bowman III
MacArthur Justice Center
Northwestern University School of Law
357 East Chicago Avenue
Chicago, Illinois 60611
Phone: 312.503.0844
Fax: 312.503.1272


**Attorneys for Richard Devine, Cook County, Cook County State's Attorney's Office**
Patrick T. Driscoll, Jr.
Stephen L. Garcia
John P. Heil, Jr.
Paul A. Castiglione
Office of the Cook County State's Attorney
500 Richard J. Daley Center
Chicago, Illinois 60602
Phone: 312.603.6461
Fax: 312.603.5735


**Attorneys for Leroy Martin and Gayle Shines**
Eileen M. Letts
Kenya A. Jenkins
Allen P. Walker
Martin P. Greene
Kevin T. Lee
Greene & Letts
111 West Washington - Suite 1650
Chicago, Illinois 60602
Phone: 312.346.1100
Fax: 312.346.4571


**Attorneys for Individual Police Officers**
James G. Sotos
Elizabeth A. Ekl
James G. Sotos & Associates, Ltd.
550 East Devon Avenue, Suite 150
Itasca, Illinois 60143
Phone: 630.735.3300
Fax: 630.773.0980


s/ Paul A. Michalik
Paul A. Michalik